UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

DR. LEIGH M. JOHNSON,

    Plaintiff,

v.                                                                                              Case No. _____

CHRISTIAN BROTHERS UNIVERSITY,

    Defendant.

---

# COMPLAINT

### (Jury Trial Demanded)

---

## I. PRELIMINARY STATEMENT

1. Plaintiff Dr. Leigh M. Johnson ("Plaintiff") brings this action to redress unlawful sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and to recover damages for Defendant's breach of Plaintiff's tenured-faculty employment contract.

2. All acts occurred in Shelby County, Tennessee.

## II. JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

4. The Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim arises out of the same nucleus of operative facts as the Title VII claims.

5. Venue is proper in this District and Division under 42 U.S.C. § 2000e-5(f)(3) because the alleged discriminatory and retaliatory acts occurred at Defendant's Memphis, Tennessee campus, and Defendant transacts substantial business within this Division.

## III. PARTIES

6. Plaintiff is a female citizen of the United States and, at all relevant times, resided in Memphis, Tennessee.

7. Defendant Christian Brothers University ("CBU" or "Defendant") is a private university incorporated under the laws of Tennessee with its principal place of business at **650 East Parkway South, Memphis, Tennessee 38104.**

8. At all relevant times Defendant has employed in excess of fifteen employees and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## IV. FACTUAL ALLEGATIONS

9. Plaintiff was hired by CBU in August 2007 as a tenure-track Assistant Professor of Philosophy and, after earning tenure and promotion in 2018, served as an Associate Professor of Philosophy through May 11, 2024.

10. Plaintiff's appointment was governed by an annual written contract with Defendant, which explicitly articulated that the "terms and conditions" detailed in CBU's Faculty Handbook "must be observed and are hereby incorporated by reference and made a part of [Plaintiff's] contract." (Exhibit A.)

11. CBU's Faculty Handbook ("Handbook") guarantees tenured faculty one-year advance notice, or equivalent severance pay and rights to a peer-review appeal, *prior to termination*, absent cause or bona fide financial exigency. (Exhibit B.)

12. On December 7, 2023, then-President David Archer informed Plaintiff in her termination meeting that her position was eliminated effective May 11, 2024 due to "financial exigency."

13. Plaintiff audio-recorded the termination meeting; the recording captures President Archer conditioning receipt of contractually secured benefits on Plaintiff's agreement to forfeit her rights to pursue discrimination claims as set forth in a severance agreement.

14. In the same audio-recorded meeting, President Archer conceded that terminating Plaintiff's *specific* position was not required to relieve "financial exigency."

15. At the time of Plaintiff's termination, Defendant retained three male faculty members within the same department whose tenure status, qualifications, or teaching loads were equal to or inferior to Plaintiff's.

16. Plaintiff learned on December 8, 2023 that **the following three male comparators'** positions were retained (listed below). All three retained lines draw salary from the same departmental budget and report to the same Dean, meeting 'similarly-situated' criteria.:

    a. **Rev. Dr. R. Bruce Cinquegrani**, untenured Visiting Associate Professor of Religion, seven years' service, with a 4/4 teaching load (i.e., four courses per semester) in 2023-2024, generating significantly less student credit hour (SCH) production year-to-year than Plaintiff for the previous five years;

    b. **Dr. Philip J. Maloney,** tenured Professor of Religion, twenty-two years' service, with a 4/4 teaching load in 2023-2024, producing less SCH year-to-year than Plaintiff for the previous fifteen years;

    c. **Dr. Paul Haught,** at the time, Vice-President of Academic Affairs and the only other tenured Philosophy professor employed by CBU, who had not taught a "full" contract course load since 2016.

        (i.) Plaintiff was notified in December 2023 by Dr. James Wallace (Chairperson, Religion and Philosophy Department) that at least one of her courses was already being re-assigned to Dr. Haught, at the express direction of Dean Tawny Tullia and in violation of Handbook provisions for tenured faculty (emails to be produced in discovery);

        (ii.) Dr. Haught's re-assignment to a tenured teaching line in the Department of Religion and Philosophy, as part of Defendant's "administrative downsizing" efforts, amounted to *replacing* Plaintiff's tenured faculty line;

    (iii.) Defendant's repositioning of Haught to a "similarly-situated position" explicitly violated Plaintiff's contract. (Exhibit B, Appendix G.3.g.5)

17. For the previous nine years (2014–2023), Plaintiff out-performed her similarly-situated male colleagues in terms of merit, versatility, and productivity by:

  a. teaching a five-course-per-semester (5/5 load), in addition to between two and four additional courses each summer, every year from 2014-2023 (i.e., twenty- to fifty-percent greater than CBU's standard contractual obligations);

  b. generating more SCH year-to-year than 90% of CBU faculty;

  c. servicing more of CBU's "general education" requirements than 95% of CBU faculty;

  d. ranking among CBU's top two or three revenue-generating faculty, and

  e. forwarding the matriculation of more non-majors than any of her similarly-situated colleagues inside or outside of her department. (Specific metrics available in discovery.)

18. Plaintiff was the only female tenured professor of Philosophy.

19. Plaintiff appealed her termination to the Faculty Review Committee ("FRC") on December 15, 2023, pursuant to Handbook guidelines. (Exhibit B)

20. Defendant delayed Plaintiff's termination appeal hearing until fewer than twenty-four business hours before the forced severance-signature deadline on January 22 2024 (emails to be produced in discovery), thereby depriving Plaintiff of her contractually obligated right to a fair and timely hearing;

21. On information and belief, a voting member of the Faculty Review Committee (FRC), whose identity Plaintiff is prepared to disclose in discovery, informed Plaintiff that FRC Chairperson Dr. Scott Geis reported to the committee that the delay of Plaintiff's appeal hearing was imposed following his consultation with "outside sources."

   a. The aforementioned FRC member took contemporaneous notes during committee meetings—documented via email and Zoom—which reflect both the influence of these "outside sources" and the objections raised by committee members to such interference.

   b. Vice-Provost Lydia Rosencrants, as the administrator directly charged with overseeing the FRC process, was responsible for ensuring that the appeal proceeded in accordance with institutional policy and contractually stipulated procedures.

   c. Plaintiff made a direct appeal to Vice-Provost Rosencrants requesting a fair and timely hearing of her case but received no response.

   d. On information and belief, President David Archer was dismissed between March and April 2024 for reasons that were not publicly disclosed at the time, but which were later revealed to involve "inappropriate relations" with Vice-Provost Rosencrants.

   e. Plaintiff is prepared to produce the FRC-related emails, contemporaneous meeting notes, and sworn testimony of the aforementioned FRC member during discovery.

22. The actions described in ¶ 20-21 violated Plaintiff's contractual right to an impartial review of her appeal.

23. Authorized CBU representatives (President Chris Englert and Board of Trustees Chairperson Emily Greer) publicly stated to local Memphis media outlets, *inter alia,* that the University

ended its 2023-2024 academic year "with no debt" and "in the black," contradicting its prior claims of "financial exigency." (Exhibit C)

24. Plaintiff signed CBU's severance agreement under protest and timely revoked her signature within seven days.

25. Between December 7 and May 11, 2024, Defendant engaged in acts of retaliation, including but not limited to:

> a. delay of Plaintiff's termination appeal hearing (See ¶ 20-21);
>
> b. removal of Plaintiff from her final class by Dean Tawny Tullia, in coordination with then "acting" CBU President Ron Brandon, in front of Plaintiff's students and with the aid of an **armed Memphis police officer**, for **unsubstantiated allegations** that Plaintiff constituted a "threat to campus safety," resulting in public humiliation, reputational damage, and intimidation intended to chill Plaintiff's resolve to pursue her legal discrimination and contractual violation of rights claims;
>
> c. denial (by Faculty Assembly President, Dr. Phillip J. Maloney) of Plaintiff's rights and privileges as a tenured and voting member to speak in Spring 2024 Faculty Assembly meetings (e-mails to be produced in discovery);
>
> d. aggressive and intimidating interference by Campus Safety officers on the last day of Plaintiff's employment, May 11, 2024, delaying Plaintiff's attempt to collect her personal belongings from her office;
>
> e. rescission of Defendant's previously agreed-upon extension of Plaintiff's "official" termination date to August 2024—confirmed in a conversation between Defendant's

counsel (Steve Vescovo) and Plaintiff's attorney at the time, Bryce Ashby—resulting in Plaintiff's inability to discharge her student loan debts (correspondence records between Plaintiff's attorney and CBU counsel to be produced in discovery).

26. Plaintiff has been unemployed since her May 11, 2024 termination date, despite diligent efforts (in excess of fifty applications), and has received no salary or benefits since CBU's illegal termination of her position as a tenured faculty member.

27. Plaintiff is scheduled to begin a new position in August 2025 in Washington, DC, at a lower rank, without tenure, and a 'comparable salary' (in nominal dollars), not accounting for the **42% salary differential** in real, cost-of-living-adjusted terms.

28. Plaintiff timely filed an EEOC Charge on May 10, 2024, amended it on October 25, 2024 to add retaliation, received a Notice of Right-to-Sue on March 21, 2025, and is filing this action within ninety (90) days of that notice. Accordingly, **all conditions precedent to suit under Title VII have been satisfied.** (Exhibits E, F and G)

## V. CAUSES OF ACTION

### COUNT I – SEX DISCRIMINATION (Title VII)

29. Plaintiff realleges paragraphs 1 through 28.

30. Plaintiff is a female and therefore a member of a protected class.

31. The duties of a Philosophy professor at CBU are secular and do not include liturgical or faith-formation responsibilities.

32. Plaintiff suffered an adverse employment action when Defendant terminated her on May 11, 2024.

33. Defendant treated similarly-situated male faculty more favorably by retaining their positions under identical financial conditions. (See ¶ 16 above)

34. Defendant's asserted reason for Plaintiff's termination—financial exigency—was pretextual as shown by:

> a. President Archer's statements in Plaintiff's audio-recorded December 7, 2023 termination meeting. (Unedited audio file submitted and made available to Defendant in EEOC complaint proceedings, without objection; transcript available in discovery);
>
> b. Defendant's July 2024 public announcement that it ended the academic year "with no debt" and "in the black." (See ¶ 20 and Exhibit C);
>
> c. The American Association of University Professors' (AAUP's) July 30, 2024 letter petitioning for Plaintiff's immediate reinstatement, after a thorough investigation, and detailing their objection to CBU's claim of bona fide "financial exigency." (Exhibit D)

35. Defendant intentionally discriminated against Plaintiff on the basis of sex in violation of 42 U.S.C. § 2000e-2(a)(1).

36.. As a direct and foreseeable consequence of Defendant's discriminatory termination, Plaintiff was forced to accept a materially less-prestigious, non-tenure-track role, resulting in diminished professional standing, job security, and future earning potential.

**COUNT II – RETALIATION (Title VII)**

37. Plaintiff realleges paragraphs 1 through 28.

38. Plaintiff engaged in protected activity when she

    a. challenged her termination via the Handbook appeals process;

    b. refused to waive her right to discrimination claims;

    c. rescinded her coerced severance signature, and

    d. filed EEOC charges on May 10, 2024.

39. Defendant thereafter subjected Plaintiff to adverse actions, including but not limited to retaliatory acts listed in ¶ 22.

40. These actions would dissuade a reasonable employee from engaging in protected activity.

41. The temporal proximity between Plaintiff's protected activity and the adverse actions, together with other circumstantial evidence, establishes a causal connection.

42. Defendant's conduct violates 42 U.S.C. § 2000e-3(a).

43. Plaintiff has suffered damages as stated above.

## COUNT III – BREACH OF CONTRACT (State Law)

44. Plaintiff realleges paragraphs 1 through 43.

45. Plaintiff's annual contract and the incorporated Handbook terms and conditions constitute a valid contract between Plaintiff and Defendant. (Exhibits A and B)

46. Plaintiff's contract required one-year advance notice, severance pay, and a timely peer-review appeal, absent any documented cause or bona fide financial exigency.

47. Defendant terminated Plaintiff without providing the required notice, severance, or timely appeal.

48. Defendant's stated condition of "financial exigency" was not met according to contractual/Handbook definitions and independent external review. (see Exhibits B and D)

49. Defendant's failure to comply with contractual procedures constitutes a material breach. (Exhibits A and B)

50. Plaintiff has suffered damages including lost salary, benefits, tenure status, and future earnings.

## VI. PRAYER FOR RELIEF

51. Plaintiff respectfully prays that the Court:

>   A. In lieu of reinstatement—which Plaintiff believes is impracticable—award back pay and front pay, including
>
>   >   (i) amounts necessary to offset Plaintiff's loss of tenure, rank, and retirement benefits resulting from her material demotion, and
>   >
>   >   (ii) an upward cost-of-living differential reflecting relocation from Memphis, Tennessee, to the Washington, DC, metropolitan area;
>
>   B. Award punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

C. Award compensatory damages for emotional pain and suffering, mental anguish, and loss of professional reputation pursuant to 42 U.S.C. § 1981a(b)(3);

D. Award contract damages for unpaid salary, severance, and associated benefits;

E. Award pre-judgment and post-judgment interest;

F. Award taxable costs and—if counsel subsequently appears—reasonable attorneys' fees under 42 U.S.C. § 2000e-5(k);

G. Order expungement of adverse personnel records and direct Defendant to provide Plaintiff with a neutral employment reference;

H. Award a tax gross-up sufficient to leave Plaintiff whole after all federal, District of Columbia, state, local, and employee FICA/Medicare taxes are withheld or paid on any wage or non-wage damages, such gross-up to be calculated using Plaintiff's marginal tax rates in effect at the time payment is made;

I. Require Defendant to conduct a neutral third-party investigation into the discriminatory and retaliatory conduct set forth herein and to take appropriate corrective action;

J. Order Defendant to implement comprehensive anti-discrimination and anti-retaliation training for all administrators, supervisors, and employees, with particular emphasis on Title VII compliance;

K. Direct Defendant to review and revise its internal policies and enforcement mechanisms to ensure future compliance with federal and state anti-discrimination laws; and

L. Grant such further legal or equitable relief as the Court deems just and proper.

## VII. JURY DEMAND

52. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

SIGNATURE: _____

DATED: 6/17/25

Dr. Leigh M. Johnson

Plaintiff Pro Se

Memphis, TN 38104

(901) 679-5937

drleighmjohnson@gmail.com