IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DR. LEIGH M. JOHNSON,
    *Plaintiff,*

v.

CHRISTIAN BROTHERS UNIVERSITY,
    *Defendant.*

Case No. 2:25-cv-02618-MSN-atc

LIST OF EXHIBITS
TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Exhibits A through G were filed with Plaintiff's original Complaint and are part of the record at ECF 2-2. Exhibits H and I are new exhibits submitted with the First Amended Complaint.

| Exhibit | Description |
|---------|-------------|
| A | 2023–2024 Faculty Appointment Contract |
| B | Faculty Handbook (relevant sections) |
| C | News article re: President Englert "in the black" statement |
| D | AAUP Letter to President Englert, July 30, 2024 |
| E | EEOC Charge of Discrimination, May 10, 2024 (Charge No. 490-2024-02322) |
| F | Amended EEOC Charge of Discrimination, October 25, 2024 |
| G | EEOC Notice of Right to Sue, March 21, 2025 |
| **H** | **Presidential Charge to Chairs and Deans, October 31, 2023** [NEW — filed herewith] |
| **I** | **AAUP Letter to President Englert, September 30, 2024** [NEW — filed herewith] |



**Office of the President**
650 East Parkway South
Memphis, Tennessee 38104
(901) 321-3552
**www.cbu.edu**

October 31, 2023

PRESIDENTIAL CHARGE TO CHAIRS AND DEANS

Per Appendix G of the Faculty Handbook, the Retrenchment Committee determines the number of faculty positions to be terminated University-wide to relieve the state of exigency. The Retrenchment Committee then meets with the Academic Council to establish the number to be released in each School. This has occurred. The Retrenchment Committee has recommended the following to me thus far:

- Number of faculty positions to be eliminated in the School of Arts: 15
- Number of faculty positions to be eliminated in the School of Business: 2.5
- Number of faculty positions to be eliminated in the School of Engineering: 3.5
- Number of faculty positions to be eliminated in the School of Sciences: 5

We are working to follow the Faculty Handbook in every aspect of this process. However, there are ambiguous charges of Appendix G, and yours is one of them. I am writing to provide reasonable direction on how to proceed given these ambiguities.

To explain, Paragraph (3)(d) of Appendix G states that: Each Dean of the School should meet with the Department Heads to determine **which faculty members are recommended for termination.** Paragraph (3)(e) states that: Each Department Head, acting with the advice and consent of the Dean of the School and the VPA, **shall recommend which faculty members are to be retained,** using the following criteria in order:

1. Tenure and Status as a Christian Brother
2. Merit, versatility, seniority
3. The goals of the University regarding numbers of women, women religious, and members of minority races

As an initial matter, criteria 3 is not applicable, as the University does not have "goals" with respect to these categories. While diversity is a strong value of our institution and Lasallian principles, the University follows applicable law in this regard and does not have such targets for faculty or staff hiring. For this reason, recommendations relating to faculty retention should be made irrespective of gender and race.

A second ambiguity is that while Paragraph (3)(d) provides that Deans, following a meeting with the Department Heads, should provide recommendations for faculty members to be terminated, Paragraph (3)(e), on the other hand, provides that Department Heads, with the advice and consent of

**CHRISTIAN BROTHERS UNIVERSITY**
650 East Parkway South | Memphis, Tennessee 38104
cbu.edu



the Dean and VPA, shall provide recommendations as to which faculty members are to be retained. To give meaning to both provisions and resolve this ambiguity, I am charging you with providing both the recommendations prescribed in in Paragraph 3(d) and 3(e).

I ask that these recommendations be provided to me **directly,** in the aggregate, by School. Recommendations relating to *retentions* should include only the most essential retentions critical for advancing the University's mission, in the order of recommended retention, and should include a brief explanation for the need for the retention. Further, these recommendations should be based on the advice and consent of the Dean and VPA, and take into consideration the two criteria above. Recommendations relating to *terminations* should take into consideration the initial recommendations of the Retrenchment Committee, as well as the fact that the Retrenchment Committee has not yet identified a large enough number of positions to be eliminated to reach the Board charge for reductions in salaries, wages and benefits. For that reason, you may wish to identify additional positions for recommended termination in your report.

All recommendations should take into consideration rational factors derived from the Handbook, such as: (a) the present and future needs of each School and Department; and (b) what is possible, equitable, and the least damaging to the mission of the University. These recommendations should be provided to me directly and treated as confidential. Additionally, I note that the Handbook does not speak to Deans' and Department Heads' recommendations relating to their own faculty positions and programs. I encourage you to consider your own positions and programs in as objective a manner as possible.

This approach is compatible with the charge to Deans and Department Heads to provide me with recommendations which I will consider in my final decision-making; it is consistent with the charge that each level of determination is subject to approval of the President; and practically, will be most useful in making informed and reasoned decisions relating to faculty retention and retrenchment necessary to relieve the state of exigency.

Deans, please provide the requested recommendations for each department in your school to me by November 10. Also, please provide **only** the recommended **number of positions** to be terminated in your school to the Retrenchment Committee by November 10.



555 New Jersey Ave., NW, Suite 600, Washington, DC 20001
PHONE: 202.737.5900 • www.aaup.org

September 30, 2024

VIA ELECTRONIC MAIL

Brother Chris Englert, FSC
Interim President
Christian Brothers University
650 East Parkway South
Memphis, Tennessee  38104

Dear President Englert:

Thank you for your letter of August 19, 2024, responding to our July 30 letter addressing the termination of Professor Leigh M. Johnson's tenure appointment for reasons of financial exigency (a copy of our original letter is enclosed for your reference). Regrettably, your response does not allay our Association's concerns.

You suggest that the AAUP's recommended standards concerning financial exigency are "important guidelines" that are "clearly designed to be adapted to meet the unique needs of each institution." You also state that Christian Brothers University's financial exigency "policies and procedures adequately capture the spirit of the AAUP's recommendations." Neither of these statements is correct.

The enclosed *Recommended Institutional Regulations on Academic Freedom and Tenure* are designed to be implemented with only minor alterations (for example, inserting the names of appropriate faculty committees) at any college or university. Substantive departures from its provisions put academic freedom and tenure in serious jeopardy. The AAUP is therefore keenly interested when any administration acts in disregard of these procedures and standards, whether or not they are incorporated into an institution's regulations.

The key elements—the "spirit," if you like—of AAUP-recommended standards regarding termination of faculty appointments for financial exigency require that

(1) the financial circumstances constitute bona fide exigency (a crisis that "fundamentally compromises the academic integrity of the institution");
(2) an elected faculty committee has an appropriate role in the deciding whether conditions of exigency exist, and then the faculty or an elected faculty body plays the primary role in decisions about where the academic program cuts are to be made; and
(3) effected individual faculty members receive appropriate due process and consideration.

President Englert
September 30, 2024
Page 2

The CBU administration's actions in this case appear not to adhere to any of these three elements.

With regard to (1), we reiterate that CBU's threshold for declaring financial exigency—essentially, failure to balance the university's budget—is far weaker than the AAUP standard. It is difficult to reconcile claims of bona fide financial exigency with your public remarks, cited in our July 30 letter, indicating that the university had ended the academic year "in the black."

Regarding (2), you respond that the board and administration's decision to declare financial exigency was made following consultation with the "Academic Council, President's Cabinet, and the Planning Committee." You further note that the Retrenchment Committee "made recommendations that included program cuts and teaching position eliminations." However, it is our understanding that none of the bodies you mention is an elected committee of faculty representatives and that no such body was afforded the opportunity to participate in the process and offer the faculty's independent voice on matters within its primary responsibility.

As to (3), you state that you cannot comment on individual faculty members' situations but assure us that the administration has "meticulously followed all policies and procedures outlined in the CBU Faculty Handbook." Professor Johnson, however, reports that no effort was made to find her a suitable alternative position and that she was not provided a year's notice or severance salary. Most important, she also reports that she was not afforded a prior hearing before a faculty committee in which she could contest the various elements of the termination of her appointment. All of these are crucial components not only of AAUP-recommended standards but of CBU's own regulations.

We therefore continue to urge you to reinstate Professor Johnson to her tenured appointment and to adhere to the standards outlined above in any future action addressing the university's financial difficulties.

Sincerely,

Mark Criley
Senior Program Officer
Department of Academic Freedom, Tenure, and Governance

Enclosures by email attachment

Cc:   Dr. Lydia Rosencrants, Provost and Vice President for Academics
      Dr. Tawny LeBouef Tullia, Dean, Rosa Deal School of Arts
      Dr. James Buchanan Wallace, Chair, Religion and Philosophy
      Professor Leigh M. Johnson