**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

DR. LEIGH M. JOHNSON,

    Plaintiff,

v.

CHRISTIAN BROTHERS UNIVERSITY,

    Defendant.

Case No. 2:25-cv-02618-BCL-atc

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**
**DISCOVERY AND DETERMINE SUFFICIENCY OF RFA ANSWERS**

## I.  INTRODUCTION

Plaintiff moves under Rule 37(a) to compel Defendant to cure deficiencies in its April 24, 2026 production (CBU-058–218), and under Rule 36(a)(6) to determine the sufficiency of several RFA Answers. The disputed discovery concerns Handbook compliance, Defendant's stated non-discriminatory rationale, Title VII pretext, and Plaintiff's Faculty Review Committee Appeal. Targeted relief requiring complete supplemental production, adequate search/custodian disclosures, and sufficient RFA Answers is necessary.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on June 17, 2025 (ECF 1), and the Amended Complaint (ECF 33) is operative under ECF 43. Defendant answered on May 13, 2026 (ECF 47).

Plaintiff served her First RFPs and RFAs on March 25, 2026 (Exs. A, B). Defendant responded on April 24, 2026 (Exs. H, I), producing CBU-058–218 (Ex. J): 161 pages, 141 (88%) of which are static images with no extractable text. Plaintiff sent Rule 37 conferral letters on April 27 and 28 (Exs. D, E), requesting cure by May 8.

1

Defendant's May 8 response (Ex. G) did not cure the issues raised here. Defendant also invoked an unentered protective order to defer supplementation, but the parties have since submitted an agreed Joint Proposed Bilateral Protective Order (ECF 45). The relief sought here does not turn on confidentiality designations. The parties' Rule 26(f) Report (ECF 26 § III.h) sets out the ESI/native-format protocol Defendant invoked in its May 8 response.

### III.  SUBSTANTIVE PRODUCTION DEFICIENCIES

**A.  Responses contradicted by documents in Defendant's production.**

**1.  Application of Faculty Handbook Appendix G.3.e criterion (3) (RFA 1, RFA 2).** In the "Presidential Charge to Chairs and Deans," dated October 31, 2023 (ECF 33-1, PageID 186–87), former President Archer states both that "criteria 3 is not applicable" and that "[f]or this reason, recommendations relating to faculty retention should be made irrespective of gender and race." Plaintiff's RFA Nos. 1 and 2 quoted the Presidential Charge verbatim, yet Defendant denied both. (Ex. I, Ans. to RFA Nos. 1 and 2.) Defendant's denials cannot stand against the document, which on its face says both things. According to Fed. R. Civ. P. 36(a)(4), a denial "must fairly respond to the substance of the matter." Defendant's denials of verbatim quotations from its own document fail that standard. Under Fed. R. Civ. P. 36(a)(6), the Court should determine the sufficiency of Defendant's Answers to RFA Nos. 1 and 2 and order that the matters are admitted or, in the alternative, that amended answers be served.

**2.  Reassignment of Plaintiff's Spring 2024 course to Dr. Paul Haught (RFA 18–20; RFP 27–28).**  Defendant's May 8, 2026 written response states that "all documents related to Dr. Haught's employment are completely irrelevant" because Haught "resigned before any classes were ever assigned to him." (Ex. G, May 8 Letter, at 2.) That position is contradicted in four

2

independent locations by Defendant's own production in its RFA Answers and RFP Responses, as follows:

(a) **Defendant's Answer to RFA No. 18** states that "for a brief time, Dr. Paul Haught was scheduled to teach a philosophy course in the spring of 2024." (Ex. I, Ans. to RFA No. 18.) A scheduled course is an assignment. Defendant's May 8 representation that no class was "ever assigned to him" cannot be reconciled with that admission. (b) **Defendant's Answer to RFA No. 19** admits that the reassignment described in Request No. 18 was made at the direction of Dean Tawny Tullia. That admission is unqualified. (Ex. I, Ans. to RFA No. 19.) (c) **Defendant's Response to RFP No. 28**, which sought "all documents concerning the reassignment of any Spring 2024 course from Plaintiff to Paul Haught," objects on the ground that the request misstates the facts as no class was reassigned from Plaintiff to Paul Haught, and then states that "documents responsive to this request are included in CBU-058–076." (Ex. H, Resp. to RFP No. 28.) The production at CBU-058–076 is itself an acknowledgment that the reassignment occurred and that responsive documents exist. (Ex. J at CBU-058–076.) (d) **Defendant's Answer to RFA No. 20** affirmatively asserts that "Dr. Haught's contract provided that after he left his administrative position, he was to return to his tenured teaching position in the religion and philosophy department." (Ex. I, Ans. to RFA No. 20.) Defendant has invoked the terms of Dr. Haught's contract to defend its retention rationale while refusing to produce the contract itself on relevance grounds. The reliance and the refusal are incompatible.

Fed. R. Civ. P. 26(b)(1) limits discovery to matters "relevant to any party's claim or defense." Defendant's production of Bates pages CBU-058 through CBU-076 in response to RFPs 27 and 28 confirms that Defendant itself treated those materials as responsive to the requests. The Haught reassignment occurred in the same decisional window as Plaintiff's

3

termination. Defendant cannot wall it off as "irrelevant" where the documentary record places the two decisions in immediate temporal and structural proximity.

Defendant's Answer to RFA No. 18 separately warrants Rule 36(a)(6) relief on independent grounds. The request asked whether Wallace "informed Plaintiff by email" between October and December 2023 that "at least one of her Spring 2024 courses had been reassigned to Paul Haught." Defendant's answer does not address whether Wallace sent such an email, but pivots instead to Dr. Haught's December 31, 2023 resignation date, a fact distinct from, and irrelevant to, what Wallace communicated to Plaintiff via email in November or December 2023. (Ex. I, Ans. to RFA No. 18.) The answer is non-responsive to the request as written.

Plaintiff requests that the Court (a) under Fed. R. Civ. P. 36(a)(6), determine the sufficiency of Defendant's Answer to RFA No. 18 and order that the matter is admitted or, in the alternative, that an amended answer be served; and (b) under Fed. R. Civ. P. 37(a), order Defendant to produce all nonprivileged documents responsive to RFP Nos. 27 and 28, including Dr. Haught's faculty employment contract, contemporaneous communications between or among Tullia, Wallace, Archer, Rosencrants, and Haught concerning Dr. Haught's reassignment to Plaintiff's Spring 2024 course or courses, and any documents reflecting Defendant's consideration (or non-consideration) of reinstating Plaintiff to teach those courses after Dr. Haught's December 31, 2023 resignation.

**3. Cancellation of Dr. Leib's December 7, 2023 termination meeting (RFA 13).**
Defendant's Answer to RFA No. 13 does not address the request as written. The request asked whether Dr. Leib's December 7, 2023 termination meeting was scheduled and then canceled before it took place — a fact contrary to Defendant's affirmative argument in its May 13 Answer to Plaintiff's Amended Complaint at ECF 47 ¶ 46. (Ex. I, Ans. to RFA No. 13.) If Leib was

4

scheduled for a termination meeting on December 7, as reported by Leib to Plaintiff, Defendant is obligated to produce all documents relevant to Dr. Leib's December 7, 2023 scheduled termination meeting and why it was canceled less than 24 hours before it took place.

Dr. Leib was a faculty member in the same retrenchment decision-unit as Plaintiff. Defendant asserts that Dr. Leib's position was retained because "the accrediting agency, SACS, requires a qualified history professor in order for the school to maintain its accreditation," though it provides no documentation demonstrating such. (ECF 47 ¶ 46.) If Defendant relies on accreditation to justify Leib's retention, Plaintiff is entitled to the documents supporting that rationale and explaining any scheduled-but-canceled termination meeting.

Plaintiff requests that the Court (a) determine the sufficiency of Defendant's Answer to RFA No. 13 and order that the matter is admitted or, in the alternative, that an amended answer be served, under Fed. R. Civ. P. 36(a)(6); and (b) order Defendant to produce all nonprivileged documents responsive to RFP Nos. 17, 18, 20, and 22.

**4. Emily Holmes resignation (RFP 19).** Defendant objects that Holmes's resignation came "after all retrenchment decisions were made." (Ex. H, Resp. to RFP No. 19.) That claim is contradicted by Defendant's own production. CBU-058 references, and CBU-067 produces, Dr. Holmes's email to President Archer and Vice-Provost Rosencrants stating, "I will not be continuing here after May." (Ex. J at CBU-058, CBU-067.) Plaintiff's termination meeting occurred later on the same day Holmes's resignation was submitted (December 7, 2023) and *after* Defendant's senior administration had already received it.

Defendant did not identify CBU-067 as responsive to RFP No. 19 and did not address the timing contradiction its produced documents create on their face. Plaintiff requests that the Court, under Fed. R. Civ. P. 37(a), order Defendant to supplement its Response to RFP No. 19

5

with all nonprivileged responsive documents concerning Dr. Holmes's December 7, 2023 communication of resignation intent, including any communications between Holmes and Defendant's administration between that date and her April 10, 2024 formal resignation letter.

**5.  May 11, 2024 office-access-denial incident records (RFP Nos. 42, 43; RFA No. 30).**  Defendant responded "none" to RFP No. 42 (documents concerning Plaintiff's May 11, 2024 denial of retrieval of personal belongings from her office) and "none" to RFP No. 43 (documents concerning any instruction to campus safety regarding Plaintiff's office access denial in May 2024). (Ex. H, Resps. to RFP Nos. 42 and 43.) Plaintiff contends she was denied access by Campus Safety personnel at her May 11, 2024 attempt to retrieve her personal belongings from her office. (ECF 33 ¶ K.76, PageID 171.) Defendant's Answer to RFA No. 30 admits the latter fact: "[s]he was escorted into her office with campus safety to retrieve her belongings." (Ex. I, Ans. to RFA No. 30.) A campus-safety escort of a tenured faculty member into her office, conducted pursuant to institutional direction, does not occur on a documentary blank slate. At minimum, internal communication authorizing or instructing the escort exists or did exist. Defendant's blanket "none" responses to RFPs 42 and 43 cannot be reconciled with its admission that the escort occurred, without custodial account of campus safety records normally maintained by universities.

Defendant's Answer to RFA No. 30 — "Denied as stated," followed by an admission of the substance — also fails Rule 36(a)(4)'s requirement that a denial "fairly respond to the substance of the matter," and separately warrants Rule 36(a)(6) relief. Plaintiff requests that the Court order Defendant to (a) supplement RFP Nos. 42 and 43 with all nonprivileged responsive documents to or from campus safety personnel concerning Plaintiff's May 11, 2024 office access; and (b) under Fed. R. Civ. P. 36(a)(6), determine the sufficiency of Defendant's Answer

to RFA No. 30, or order that the matter is admitted or, in the alternative, that an amended answer be served.

**6.  Non-responsive Answer to RFA No. 24 (Geis communications outside the FRC).**

RFA No. 24 asked whether Geis "communicated with individuals outside the Faculty Review Committee regarding Plaintiff's appeal during the pendency of that appeal." Defendant's Answer pivots to communications *within* the FRC and limits the topic to scheduling. (Ex. I, Ans. to RFA No. 24.) Defendant's May 8 letter further asserts that FRC members had a "right and obligation" to keep the Academic VP Office (including Rosencrants) "in the loop" — without citing any Faculty Handbook provision permitting an appeal committee to report to the administrative unit whose decision is on appeal. (Ex. G, May 8 Letter, at 2.) Defendant's own Answer to RFA No. 25 admits that Rosencrants communicated with Geis during the appeal (Ex. I, Ans. to RFA No. 25), confirming the Answer to RFA No. 24 was incomplete as served. Plaintiff requests that the Court, under Fed. R. Civ. P. 36(a)(6), determine the sufficiency of Defendant's Answer to RFA No. 24 and order that the matter is admitted or, in the alternative, that an amended answer be served.

**B.  Additional "No documents" representations against the materials a university ordinarily keeps.**

**1.  Defendant's irreconcilable accounts of preservation and refusal of preservation discovery (RFP Nos. 44–47).**  On March 13, 2026, Plaintiff transmitted via email a Litigation Hold Notice to defense counsel and requested confirmation of receipt and terms within ten days (Ex. C). Defendant did not confirm receipt of Plaintiff's Notice or address its terms within the requested ten days.

Defendant has since offered two contradictory written accounts of when its preservation duties attached. On March 30, 2026, defense counsel Jamie Gibber wrote in an email to Plaintiff

that CBU is "complying with their preservation duties, **as they have been since [Plaintiff] filed [her] EEOC claim**." (Ex. F (emphasis added).) Less than thirty days later, Defendant's Responses to RFP Nos. 45, 46, and 47 each represent in substantially identical terms that "Counsel has already confirmed that the litigation hold was communicated and upheld by CBU *after* **[being] received from [the] Plaintiff**." (Ex. H, Resps. to RFP Nos. 45–47 (emphasis added).) These statements may be reconcilable, but they do not identify when preservation instructions were issued, who received them, what custodians or repositories were preserved, or whether ordinary deletion, account-deactivation, or offboarding processes were suspended.

Plaintiff has now requested that information three times in writing (March 13, April 27, and April 28, 2026). Defendant has refused to cure, asserting in its May 8 response that "Rule 26 does no such thing," i.e., does not authorize discovery into preservation steps. (Ex. G, May 8 Letter, at 3.)

Defendant's position is wrong. Preservation and search steps bear directly on production completeness, especially given the deadline-day custodian forwarding at CBU-074, the absence of email metadata, and the 88% static-image production. Rule 26(f)(2) and 26(f)(3)(C) expressly contemplate preservation as a discovery-plan topic, and Defendant's May 8 representation that CBU has access to all employee email accounts substantially undercuts any burden objection to identifying custodians and search steps.

**2. Retrenchment Committee working materials (RFP 4, 5).** CBU-215–218 reflect the Final Report of the Retrenchment Committee, the central decision-making body relevant to this case. (Ex. J at CBU-215–218.) A two-week (October 13 to October 26, 2023), thirteen-member University committee voting on nine motions would normally generate contemporaneous written materials beyond a Final Report, including (at least) agendas, meeting notes, drafts, data sets,

8

internal correspondence, and recordings. No working materials of the Retrenchment Committee have been produced or identified as nonexistent, despite the ordinary recordkeeping expected of a university committee performing this function.[1] (Ex. H, Resps. to RFP Nos. 4 and 5.) Supplementation of RFP Nos. 4 and 5 is warranted.

3. **Blanket "none" responses to other identifiable institutional events (RFP 8, 11, 26, 29, 30).** Defendant responds "none" to multiple requests concerning institutional decision-making documents. (Ex. H, Resps. to RFP Nos. 8, 11, 26, 29, and 30.) The blanket assertion that no email, memorandum, or note exists for any of these decisions appears implausible without Defendant's supplement or sworn declaration explaining what was searched and why nothing was located, given the assumed normal production of such documents in the course of regular university operations. Plaintiff respectfully requests that the Court order Defendant to supplement its Responses to RFP Nos. 8, 11, 26, 29, and 30, or affirmatively declare that no such documents exist.

4. **Retention rationale documents (RFP 6–15).** Defendant objects to Plaintiff's RFP requests for documentary evidence of its decision-making processes concerning retention or termination of faculty "on the grounds that [they are] overly broad and unduly burdensome" and/or are "disproportionate to the needs of the case." (Ex. H, Resps. to RFP Nos. 6–15.) The contents of such documents, to the extent they exist, are central to determining the merits this case, as Defendant has repeatedly and affirmatively asserted that it followed Faculty Handbook procedures in all of its retrenchment-related termination decisions. Plaintiff requested in RFP

---

[1] Defendant objects to RFP 4 on the basis that it is "overly broad, unduly burdensome, and disproportionate to the needs of the case," despite relying primarily on the Faculty Handbook-adherent operations of the Retrenchment Committee. (ECF 47) Defense objects to RFP 5 on identical grounds, and in both cases cites non-responsive productions at CBU-002-0056 and CBU-056-218, respectively. The Retrenchment Committee's operations and decisions are central to this case. Either Defendant possesses records of them, in which case they should be produced, or it does not, in which case the absence should be confirmed.

9

Nos. 6-15 documentary evidence of that compliance. Supplementation of RFP Nos. 6–15 is warranted.

5. **Karl Leib's retention rationale (RFA 13, RFP 17, 18, 20, and 22).**  Defendant affirmatively invoked specific rationales in RFA No. 13 and ECF 47 ¶ 46 to justify retention of named comparator Dr. Leib in decisions made within the same School of Arts decision-unit retrenchment process that terminated Plaintiff, including: (a) an asserted accreditation requirement, (b) Leib's seniority over "the other 2 male department members" in his department, and (c) the absence of any females in his department. (Ex. I, Ans. to RFA No. 13; ECF 47 ¶ 46.) If Defendant intends to rely on the rationales asserted in RFA No. 13 (repeated in its Answer to Amended Complaint at ECF 47 ¶ 46), Plaintiff is entitled to documents responsive to RFP Nos. 17, 18, 20, and 22, including (a) the asserted accreditation requirement (as explained in III.A.3 above); (b) identification of the "other 2 male members" of Dr. Leib's department and documenting their rank, tenure status, and seniority; and (c) whether and how departmental gender composition was considered in Leib's, or any other faculty's, retention/termination decisions, including Plaintiff's.

6. **Cinquegrani contracts (RFA 8, 9; RFP 16, 17, 18).**  Defendant's Answer to RFA No. 8 represents that Fr. Bruce Cinquegrani "operates under a year-to-year contract," and its Answers to RFA Nos. 8 and 9 both affirmatively assert his chaplain and ministerial duties as the basis for retaining him while terminating Plaintiff. (Ex. I, Ans. to RFA Nos. 8 and 9; see also ECF 47 ¶¶ 44, 53.) Plaintiff is entitled to Fr. Cinquegrani's faculty employment contracts for Academic Year 2018–19 through AY 2024–25 and any document reflecting whether Cinquegrani's retention was treated as a "faculty-retention decision" under the Faculty Handbook for retrenchment procedures or, alternatively, under some separate set of priorities

10

that did not apply to tenured faculty, including Plaintiff. Plaintiff respectfully asks the Court to order Defendant to supplement documents responsive to RFP Nos. 16–18.

**C.  Documents named in the production but not produced.**

   **1.  Tullia's "folio" referenced at CBU-061.**  In a December 29, 2023 email Defendant reproduced at CBU-061, Dean Tullia stated to Vice-Provost Rosencrants that, on January 2, 2024, she would "forward a folio with a larger sample of conversations" concerning Plaintiff and would copy Department Chair Wallace, accompanying a "formal request that the supervision of Dr. Leigh Johnson either be moved to my purview or to yours."[2] (Ex. J at CBU-061.) Both the folio and the "formal request [for supervision]" are responsive to RFP Nos. 4–5, 12, 18, and 38. Neither has been produced, and Defendant has not stated whether they exist, were preserved, or were searched for. Supplementation of Defendant's Responses to RFP Nos. 4–5, 12, 18, and 38 is warranted.

   **2.  Faculty Review Committee documents identified by Plaintiff but absent from the production.** In comparing Defendant's production to her own files, Plaintiff identified specific emails (on each of which she was a named recipient) that are responsive to RFP Nos. 33, 34, 35, and 36, which she identified in her April 27 conferral email (Ex. G) as absent from Defendant's production, including:

   (a) a chain of emails between FRC Chair Scott Geis and Plaintiff, with copies to one or more FRC members, dated December 20, 2023; January 3, 2024; January 10, 2024 (three emails); January 18, 2024; and January 23, 2024 (two emails), concerning the scheduling, postponement, rescheduling, and conditions of Plaintiff's FRC appeal hearing; and  (b) an exchange of three emails among FRC member Benjamin R. Jordan, Faculty Assembly President

---

[2] Tullia, Rosencrants, and Wallace are each named custodians in this case.

Philip Maloney, and Plaintiff, with copies to FRC members and to FRC Chair Geis, dated January 26, 29, and 31, 2024, all under the subject line "Re: Faculty Review Committee Hearing — January 26, 2024." Each of these emails was sent from and received at multiple @cbu.edu email accounts whose contents remain under Defendant's custody and control.[3]

Plaintiff respectfully asks the Court to order Defendant to produce additional documents responsive to RFP Nos. 33, 34, 35, and 36. Additionally, Defendant's Answer to RFA No. 23 — "Denied as stated" — pivots away from the question whether Geis emailed Plaintiff on or about January 10, 2024 about a January 19, 2024 initial hearing of her Appeal (Ex. I, Ans. to RFA No. 23), failing Rule 36(a)(4)'s requirement that a denial "fairly respond to the substance of the matter" and warranting Rule 36(a)(6) relief on the same terms. Plaintiff requests that the Court, under Fed. R. Civ. P. 36(a)(6), determine the sufficiency of Defendant's Answer to RFA No. 23, or order that the matter is admitted or, in the alternative, that an amended answer be served.

**D. Other independently deficient responses.**

**1. RFP No. 34 (no substantive response).** Defendant's response to RFP No. 34 (seeking communications between FRC members and any administrator, dean, chair, HR, board representative, faculty member, or counsel concerning Plaintiff's appeal) consists of an objection only, with no production and no statement whether responsive documents are being withheld. (Ex. H, Resp. to RFP No. 34.) That is independently deficient under Fed. R. Civ. P. 34(b)(2)(B)–(C). Read with Section III.C.2 above, identifying specific FRC communications absent from the production, Plaintiff respectfully asks the Court to order Defendant to serve a request-specific response identifying any documents withheld, identifying the basis for any privilege claim, and producing all nonprivileged responsive materials.

---

[3] Dr. Jordan's prior departure (Ex. H, Resp. to RFP No. 35) does not excuse a search of other custodians' accounts, nor does Plaintiff's possession of some responsive communications relieve Defendant of its Rule 26(g) search obligation.

**2. April 26, 2024 classroom-removal incident records.**  Defendant's initial April 24 production contained no campus-safety records concerning the April 26, 2024 incident in which Plaintiff was removed from her classroom, an action that Plaintiff maintains was retaliatory.[4] (ECF 33 ¶ K.74, PageID 171.) On May 8, 2026, Defendant produced an "incident report" that is facially incomplete and unreliable. It is unsigned and undated; appears authored by Campus Safety Director Lotrionte, who was not present for the events the report narrates; recounts a meeting at which only Plaintiff and two other named witnesses were present, with no first-person account from any of them; and contains an internal chronology (incident start 10:37 a.m., incident end 11:30 a.m.) that cannot be reconciled with the report's own description of a "second meeting" with Plaintiff after her class, which concluded at 12:50 p.m.

Plaintiff does not ask the Court to resolve the truth of Defendant's account of the April 26, 2024 incident at this stage. The problem is that Defendant has produced only an uncertified, limited incident-report excerpt that is factually inaccurate, with no underlying communications, witness statements, threat-assessment materials, campus-safety communications, or follow-up records sufficient to test the completeness and reliability of Defendant's account. Defendant should be ordered to supplement its production with all responsive, nonprivileged documents, or state after reasonable inquiry that no additional responsive documents exist.

**3. RFP No. 50 (limited Archer-transition records).** RFP No. 50 sought documents concerning any explanation communicated to faculty for the end of David Archer's tenure as President, including documents referring to Lydia Rosencrants or Ron Brandon or to any effect of Archer's departure on retrenchment-related responsibilities or decisions affecting Plaintiff. Defendant objected and stated that it has no responsive documents. (Ex. H, Resp. to RFP No.

---

[4] Defendant's only timely response to RFP Nos. 39–41 directed Plaintiff to CBU-166, an institutional media policy that does not pertain, and Defendant did not assert pertained, in this instance. (Ex. H, Resps. to RFP Nos. 39–41.)

50.) The limited relevance of RFP No. 50 is that Archer was the final decisionmaker for Plaintiff's termination, and his departure bears on custodial control, preservation, and whether CBU communicated internally about who assumed responsibility for retrenchment-related decisions affecting Plaintiff after Archer left. Defendant should be ordered either to produce any responsive, nonprivileged documents limited to those topics or to confirm after reasonable inquiry that no such documents exist.

**E.  Privilege assertion without a log; advice-of-counsel framing.**

Defendant's RFP Responses Nos. 7, 8, 9, 10, 31, 32, 45, 46, and 47 assert attorney-client privilege or work-product protection. (Ex. H, Resps. to RFP Nos. 7, 8, 9, 10, 31, 32, 45, 46, and 47.) Fed. R. Civ. P. 26(b)(5)(A) requires a party so withholding to "describe the nature of the documents, communications, or tangible things not produced or disclosed… in a manner that… will enable other parties to assess the claim." Defendant has not produced a privilege log. RFP Responses Nos. 8, 9, and 10 also represent that "CBU submits it followed the advice of its outside counsel to ensure it complied with applicable state and federal law." (Ex. H, Resps. to RFP Nos. 8, 9, and 10.) To the extent Defendant relies on advice of counsel to justify its treatment of Appendix G.3.e criterion (3) or any other aspect of the retrenchment process, that reliance may affect privilege scope. The Rule 26(b)(5)(A) log must permit Plaintiff to assess privilege over communications on which Defendant intends to rely.

### IV.  PRODUCTION-INTEGRITY DEFICIENCIES

Independent of the substantive deficiencies in Section III, Defendant's April 24, 2026 production exhibits structural defects implicating Fed. R. Civ. P. 26(g)(1) and 34(b)(2)(E), identified in Plaintiff's April 28, 2026 supplemental conferral letter.

14

**A. Custodian self-selection and/or forwarding on the production deadline (CBU-074).**

CBU-074 includes an email forwarding header from Dean Tawny LeBouef Tullia to Theresa P. Jacques, Defendant's Director of Human Resources, dated Friday, April 24, 2026, at 9:29 AM, subject "FW: Assigning Philosophy courses." (Ex. J at CBU-074.) No substantive body is included. April 24, 2026 was Defendant's production deadline. CBU-074 reflects a key fact custodian forwarding historical responsive material to Defendant's Human Resources representative on the morning of the deadline. This is not a counsel-directed search of an original custodial repository, and a reasonable inquiry under Fed. R. Civ. P. 26(g)(1)(B) into ESI held by a key fact custodian is not satisfied this way. Custodian self-selection is captured in the production itself. CBU-067 reflects a parallel pattern. The page includes a forwarding chain from Vice-Provost Lydia Rosencrants to defense counsel, dated April 24, 2026, at 10:50 AM (the production date), in which Rosencrants writes: "I am also going to forward you an email that shows that Emily did teach in Spring 2024. I am not sure why Jack is not seeing any courses for her." (Ex. J at CBU-067.) That statement reflects a Vice-Provost-level custodian assembling and verifying institutional facts in real time on the production deadline day, rather than producing from preserved institutional records consulted during a counsel-directed search.

**B. HR-routed FRC printouts.** CBU-206 through CBU-210 reproduce email correspondence concerning the Faculty Review Committee's handling of Plaintiff's January 2024 appeal. (Ex. J at CBU-206–210.) Each produced page is headed "Theresa P Jacques," consistent with the email having been printed from or forwarded through Ms. Jacques's Outlook account. Ms. Jacques, Defendant's Director of Human Resources, was not a member of the Faculty Review Committee, was not a participant in the FRC correspondence, and is not listed among the senders, recipients, or copy-recipients on any of the produced emails. This form of production deprives Plaintiff of

15

metadata, complete thread histories, and attachments available from original custodial sources. Email correspondence among committee members and Plaintiff is not "ordinarily maintained" in the Director of Human Resources' Outlook print queue. Fed. R. Civ. P. 34(b)(2)(E)(ii).

**C.  Post hoc website printout.**  CBU-211 through CBU-214 purport to be President Archer's October 25, 2023 "University Restructuring" announcement. In fact, they are a printout of a public CBU webpage, captured at 10:49 AM on April 24, 2026, the very day that Defendant's responses were due, rather than the contemporaneous institutional record of the October 25, 2023 announcement. (Ex. J at CBU-211–214.) Either Defendant possesses such a record and produced the public webpage instead, or it does not, in which case Plaintiff is entitled to written confirmation.

**D. Form-of-production defects throughout CBU-058–218.** Defendant's production is not reasonably usable. CBU-058–218 consists of 161 pages, 141 of which are static images with no extractable text, including materials that appear to have originated as ESI. Rule 34 and the parties' Rule 26(f) Report require ESI to be produced as ordinarily maintained, in native form where appropriate, or in a reasonably usable form. Defendant should be ordered to reproduce responsive ESI accordingly, including complete email families and attachments.

## V.  RULE 26(g) IMPLICATIONS AND RESERVATION OF RIGHTS

CBU-067 includes a forward email dated April 24, 2026 (the production date) from Lydia Rosencrants to defense counsel Jamie Gibber at 10:50 a.m., and a header email from Gibber to defense counsel Stephen Vescovo stating: "See email below. Let me know thoughts on producing." (Ex. J at CBU-067.) CBU-067 is distinct from the other production irregularities identified in this Motion as it reflects that defense counsel was aware, on the date of production, that materials being considered for production had been self-selected by a custodian. That

16

distinction matters because Rule 26(g) requires a reasonable inquiry before discovery responses

and objections are certified, and a custodian-curated production process raises questions about

the adequacy of Defendant's search, collection, and certification.

Plaintiff does not presently seek sanctions under Rule 26(g), Rule 37(b), or Rule 37(e).

Plaintiff identifies these provisions to preserve the issue and to make clear why targeted relief is

necessary now. Defendant's responses and objections were signed certifications under Rule

26(g), and incomplete or evasive discovery responses are treated as failures to respond under

Rule 37(a)(4). If Defendant's deficient responses, unsupported objections, failure to identify

withheld materials, failure to provide a privilege log, or production of unusable/static ESI

continue after an order compelling discovery, Plaintiff reserves the right to seek appropriate

relief.

## VI.  LEGAL STANDARD

This Motion is brought under Fed. R. Civ. P. 37(a) and 36(a)(6). Rule 37(a)(4) treats

evasive or incomplete responses as failures to respond; Rule 36(a)(6) authorizes the Court to

determine the sufficiency of RFA answers and order admission or amended answers. Plaintiff

has certified good-faith conferral. The applicable production and certification standards include

Fed. R. Civ. P. 26(g)(1), 26(b)(5)(A), and 34(b)(2)(B), (C), and (E)(i)–(ii).

## VII.  RELIEF REQUESTED

Plaintiff respectfully requests that the Court grant this Motion and enter an Order

requiring compliance with the relief set forth in subsections A through F within twenty-one (21)

days. Subsection G is a continuing reservation of rights.

**A. Supplemental Discovery Responses.** Pursuant to Fed. R. Civ. P. 37(a), Defendant should be

ordered to serve complete supplemental responses and produce all responsive, nonprivileged

documents for the RFPs addressed in Sections III–VI: RFP Nos. 4–6, 8, 11–20, 22, 27–30, 33–36, 38–43, and 50. Pursuant to Fed. R. Civ. P. 36(a)(6), Defendant should be ordered to serve amended answers to RFA Nos. 1, 2, 13, 18, 23, 24, and 30, or, in the alternative, the Court should order that the matters set forth in those RFAs are admitted.

**B. Production of Specifically Identified Documents**. Defendant should be ordered to produce the specific documents and complete email families identified in Sections III–VI of this Memorandum, including: (1) the "folio" referenced by Dean Tullia at CBU-061; (2) for each of Wallace, Maloney, Cinquegrani, Haught, Geis, Holmes, Fulmer, and Leib, documents sufficient to establish initial appointment, rank, tenure status, seniority, contract structure, and any year-to-year renewal or modification agreements for academic years 2018–19 through 2024–25, relative to Plaintiff during the retrenchment process and Defendant's stated retention rationales; (3) the contemporaneous institutional record corresponding to the October 25, 2023 "University Restructuring" announcement; and (4) FRC-related emails identified in Section III.C.2, with all email families, attachments, and complete thread histories, located in the custodial accounts of current or former CBU employees.

**C. Native/Usable ESI Production.** Defendant should be ordered to produce CBU-201–205 in Excel or comparable native format. Separately, Defendant should be ordered to reproduce email-based ESI in reasonably usable form, including complete email families, thread histories, and attachments.

**D.  Preservation/Search Disclosures.** Defendant should be ordered to supplement RFP Nos. 44–47 by producing nonprivileged documents sufficient to show preservation and search steps taken for relevant custodians and repositories, and by logging any responsive materials withheld on privilege or work-product grounds.

18

**E.  Privilege Log.**  Defendant shall serve a privilege log conforming to Fed. R. Civ. P. 26(b)(5)(A).

**F. Reservations.** Plaintiff reserves all rights, including Rule 26(g) relief based on any methodology or preservation disclosure ordered by the Court, and further relief warranted by Defendant's compliance or non-compliance.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant this Motion and enter the proposed Order.

Dated: May 18, 2026.

Respectfully submitted,

/s/ Dr. Leigh M. Johnson
Dr. Leigh M. Johnson
Plaintiff, pro se
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com

### CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.2(a)(1)(B), Plaintiff certifies that she made good-faith efforts to consult with Defendant before filing Plaintiff's Motion to Compel Discovery and Determine Sufficiency of RFA Answers, and that the parties were unable to reach an accord.

Plaintiff consulted in writing with defense counsel Stephen W. Vescovo and Jamie Gibber. Plaintiff sent written Rule 37 meet-and-confer letters on April 27, 2026 and April 28, 2026, identifying the discovery deficiencies raised in the Motion and requesting cure by May 8,

19

2026. Mr. Vescovo responded in writing on May 8, 2026. Defendant's response did not resolve the disputes raised in the Motion.

Because Plaintiff proceeds pro se and because the disputes concern written discovery responses and document production, Plaintiff conducted the consultation in writing to preserve an accurate record of the parties' positions.

/s/ Dr. Leigh M. Johnson

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I served a true and correct copy of the foregoing by electronic mail upon counsel of record, Stephen W. Vescovo (svescovo@lewisthomason.com) and Jamie M. Gibber (jgibber@lewisthomason.com).

/s/ Dr. Leigh M. Johnson

20