# EXHIBIT C

Plaintiff's Litigation Hold Notice email to defense counsel, March 13, 2026

**Dr. Leigh M. Johnson**
Plaintiff, Pro Se
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com

March 13, 2026

Stephen W. Vescovo, Esq.
Jamie M. Gibber, Esq.
Lewis Thomason, P.C.
40 S. Main Street, Suite 2900
Memphis, Tennessee 38103
svescovo@lewisthomason.com
jgibber@lewisthomason.com

**Re:  Litigation Hold Notice — Johnson v. Christian Brothers University**, No. 2:25-cv-02618-MSN-atc (W.D. Tenn.)

Dear Mr. Vescovo and Ms. Gibber:

## I. PURPOSE AND LEGAL BASIS FOR THIS NOTICE

I write to place Christian Brothers University ("CBU") on formal, written notice of its obligation to identify, locate, and preserve all documents, electronically stored information ("ESI"), and tangible things that are reasonably anticipated to be relevant to the above-captioned litigation. This obligation arose no later than May 10, 2024, when Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 490-2024-02322), and has been continuously in effect since that date. The filing of Plaintiff's Complaint in this Court on or about March 10, 2025 further confirmed and extended that obligation.

The duty to preserve relevant evidence is well established. Once a party reasonably anticipates litigation, it must suspend any routine document destruction or alteration procedures that would result in the destruction of potentially relevant materials. Failure to fulfill this obligation can result in serious sanctions, including adverse inference instructions, preclusion of evidence, monetary penalties, and, in cases of willful destruction, default judgment. This letter is intended to ensure that CBU and its counsel are fully aware of the scope and immediacy of these obligations.

This notice is issued now because Plaintiff has recently learned that several individuals who are likely to possess discoverable information material to this case may be offered "early retirement" packages from CBU. Plaintiff is informed that a number of these individuals will no longer be employed by CBU after the conclusion of the Spring 2026 academic semester. The departure of these individuals from CBU's employ does not extinguish CBU's obligation to preserve their records, files, correspondence, and any other materials within CBU's possession, custody, or

control that relate to the claims and defenses in this action. CBU must take affirmative steps to preserve these materials before any such departures occur.

## II. CLAIMS AND DEFENSES IN THIS ACTION

This action arises from CBU's termination of Plaintiff's tenured faculty position in the Department of Religion and Philosophy, effective May 11, 2024, purportedly pursuant to a declaration of financial exigency. Plaintiff's Amended Complaint (ECF 33) asserts the following claims:

- **Count I: Title VII Sex Discrimination.** CBU eliminated Plaintiff's tenured position while retaining the tenured position of her male colleague in the same department and discipline, and retained a less-senior, untenured male instructor over Plaintiff, in violation of 42 U.S.C. § 2000e-2.

- **Count II: Title VII Retaliation.** CBU subjected Plaintiff to a series of adverse employment actions following her internal opposition to discriminatory conduct and her filing of an EEOC charge, including removal from the classroom on April 26, 2024, exclusion from departmental and faculty governance activities, and silencing of her participation in Faculty Assembly proceedings, in violation of 42 U.S.C. § 2000e-3.

- **Count III: Breach of Contract.** CBU failed to follow the mandatory procedures established in its own Faculty Handbook, which was incorporated by reference into Plaintiff's Faculty Appointment Contract, including the criteria for selection of faculty positions for elimination, the notice and hearing requirements applicable to tenured faculty, the financial exigency declaration prerequisites, and the Faculty Review Committee appeal process.

CBU has preserved defenses including that the retrenchment was conducted pursuant to a genuine financial exigency and that decisions were made in accordance with the Faculty Handbook and applicable law. Documents bearing on both the claims and these defenses are subject to this preservation notice.

## III. CATEGORIES OF MATERIALS TO BE PRESERVED

CBU is required to preserve all documents, ESI, and tangible items — in whatever format maintained, whether paper, electronic, or otherwise — that are reasonably related to the claims or defenses in this action, including but not limited to the following categories:

### A. Financial Exigency Declaration and Basis
- All board of trustees resolutions, minutes, votes, and materials relating to CBU's declaration of financial exigency in or around September–October 2023;
- All financial statements, audited and unaudited, budgets, projections, deficit analyses, and financial forecasts for fiscal years 2020 through 2025;
- All documents concerning the origin, derivation, or justification of any dollar target (including but not limited to any $3 million or $4 million reduction figure) attributed to the board of trustees or any other body in connection with the retrenchment process;
- All documents concerning CBU's probationary status with the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC), including all correspondence with SACSCOC, all reports submitted to SACSCOC, and all internal

communications concerning that probationary status and its relationship to the retrenchment;

- All documents reflecting compliance with, or noncompliance with, the prerequisites to a financial exigency declaration set forth in Appendix G of the CBU Faculty Handbook, including measures considered or implemented before the declaration was made;

**B. Presidential Charge and Retrenchment Committee Process**

- All drafts, versions, and final copies of President David Archer's October 31, 2023 "Presidential Charge" to the Retrenchment Committee, together with all communications relating to the drafting, revision, or issuance of that document;

- All Retrenchment Committee agendas, meeting minutes, deliberative materials, votes, work product, drafts, and final reports, including the November 16, 2023 report;

- All communications between President Archer, Provost Lydia Rosencrants, Dean Tulia, and any member of the Retrenchment Committee regarding the scope, criteria, or methodology of the retrenchment process;

- All documents concerning the decision to declare Faculty Handbook Appendix G.3, criterion (3) — the gender-based retention factor — "not applicable" or otherwise inapplicable to the retrenchment process;

- All documents concerning whether, and in what form, the Faculty Assembly approved or was asked to approve any modification to the retention criteria set forth in Appendix G.3 of the Faculty Handbook;

- All documents concerning the resignation of faculty member Holmes and CBU's awareness of that resignation prior to or during the December 7, 2023 termination meetings;

**C. Comparator Faculty: Dr. Maloney, Fr. Cinquegrani, Dr. Leib, and Dr. Haught**

- The complete personnel files of Dr. Philip J. Maloney, including appointment contracts, salary records, evaluations, course loads, student credit hours generated, and all documents reflecting any comparison between Dr. Maloney and Plaintiff in connection with the retrenchment;

- The complete personnel files of Fr. Bruce Cinquegrani, including all documents reflecting his tenure status, date of hire, and any comparison between Fr. Cinquegrani and Plaintiff in connection with the retrenchment;

- All documents and communications relating to the cancellation of the December 7, 2023 termination meeting that had been scheduled for Dr. Karl Leib, including the identity of the person(s) who authorized the cancellation and the reasons therefor;

- All documents relating to the assignment of courses previously taught by Plaintiff to Dr. Paul Haught, including all communications among Dean Tulia, Dr. James Wallace, and any other CBU administrator or faculty member regarding that assignment;

- All documents reflecting any position opened, posted, filled, or reassigned in the Department of Religion and Philosophy from December 2023 through the present, including temporary, adjunct, visiting, and full-time positions;

**D. Plaintiff's Termination: Notice, Meeting, and Severance**

- All documents relating to the December 7, 2023 meeting with Plaintiff, including any agenda, notes, or instructions provided to CBU's representatives;

- All drafts and final versions of the severance agreement offered to Plaintiff, and all communications relating to the negotiation, revision, execution, or revocation of that agreement;

- All communications relating to CBU's agreement to designate August 2024 as Plaintiff's termination date in connection with the severance agreement, and all communications following Plaintiff's revocation of the severance agreement relating to the reinstatement of the May 11, 2024 termination date;

- All communications relating to CBU's decision not to offer Plaintiff reinstatement following Dr. Paul Haught's departure from CBU;

## E. Faculty Review Committee Appeal

- All documents relating to Plaintiff's December 18, 2023 appeal to the Faculty Review Committee ("FRC"), including all FRC agendas, meeting minutes, correspondence, and deliberative materials;

- All communications between FRC Chair Dr. Scott Geis and any CBU administrator — including but not limited to President Archer, Provost Rosencrants, Dean Tulia, and Ron Brandon — regarding Plaintiff's appeal, whether or not such communications were disclosed to or known by other FRC members;

- All documents reflecting the basis for, and any communications relating to, Dr. Geis's statement that the FRC would not evaluate whether CBU's exigency procedures were defective, including the "Pandora's Box" characterization reflected in the January 31, 2024 Jordan email;

- All documents reflecting why no FRC hearing of Plaintiff's appeal was ever convened, and all communications following Plaintiff's revocation of the severance agreement relating to whether a hearing would be rescheduled;

## F. Retaliation: Spring 2024 Adverse Actions

- All documents and communications relating to the April 26, 2024 incident in which Plaintiff was removed from her classroom, including all internal reports, email communications, and any Memphis Police Department contact or reports;

- All documents and communications relating to the incident on May 11, 2024 — Plaintiff's last day of employment — in which CBU Campus Security refused Plaintiff entrance to her office to retrieve her personal belongings, including all instructions given to Campus Security personnel, all communications among CBU administrators authorizing or directing that refusal, and any incident reports generated in connection with that event;

- All documents relating to any complaint made about a social media post by Plaintiff, including the identity of the complainant(s) and any investigation conducted by CBU;

- All documents relating to Plaintiff's exclusion from departmental meetings or Faculty Assembly activities during Spring 2024;

## G. Plaintiff's Personnel Records and Compensation

- Plaintiff's complete personnel file, including all appointment contracts, salary records, performance evaluations, course assignments, and benefits records;

- All W-2 and payroll records for Plaintiff for the years 2020 through 2024;

- All documents reflecting CBU's contributions to any retirement account, benefit plan, or pension program on behalf of Plaintiff;

### H. Communications Among Decision-Makers

- All email, text message, voicemail, memoranda, and other communications among David Archer, Dr. Lydia Rosencrants, Ron Brandon, Dean Tulia, Dr. Scott Geis, Dr. James Wallace, Dr. Philip J. Maloney, and any member of the Retrenchment Committee, Board of Trustees, or Faculty Review Committee, relating to Plaintiff, the retrenchment process, or the financial exigency declaration, from January 2023 through the present;

## IV. DEPARTING EMPLOYEES: SPECIFIC PRESERVATION OBLIGATIONS

Plaintiff is specifically concerned that CBU may allow the records of departing employees to be destroyed, deleted, returned to the employee, or otherwise lost in connection with the "early retirement" process. CBU is hereby placed on explicit notice that the following obligations apply to any employee who separates from CBU during the pendency of this litigation:

- **Preservation before departure.** CBU must preserve all email accounts, network files, shared drives, and any other institutional records belonging to any departing employee who may have knowledge of facts relevant to this case before that employee's separation date. Institutional email accounts must not be deleted or deactivated without a complete archive being retained.

- **No destruction as part of offboarding.** CBU must ensure that no departing employee is instructed or permitted to delete, destroy, return, or take possession of any CBU records — including personal files, notes, emails, or electronic documents — that may be relevant to this litigation.

- **Preservation of separation agreements.** To the extent CBU enters into separation agreements with departing employees, CBU must preserve all such agreements and produce them in discovery to the extent they contain terms relating to cooperation in litigation, confidentiality, or nondisparagement that may be relevant to the testimony of those witnesses.

- **Named individuals of concern.** The following individuals, among others, are believed to possess knowledge material to this case, and their records must be preserved in their entirety regardless of their employment status: David Archer, Lydia Rosencrants, Dr. Scott Geis, Dean Tulia, Ron Brandon, and all members of the Retrenchment Committee and Faculty Review Committee identified in CBU's Rule 26(a)(1) Initial Disclosures.

## V. SCOPE OF PRESERVATION: ESI AND PAPER RECORDS

CBU's preservation obligation extends to all potentially relevant materials regardless of format, including:

- Email and email attachments on all servers, backup systems, and individual devices used by CBU employees, whether through CBU's institutional system or personal email accounts used for CBU business;

- Text messages, instant messages, and any other electronic communications sent or received on personal or institutional devices in connection with CBU business;

- Word processing documents, spreadsheets, presentations, PDFs, and any other electronic documents stored on CBU servers, shared drives, individual computers, laptops, or external storage devices;

- Voicemail recordings and any other audio or video recordings;

- Paper documents, correspondence, notes, agendas, and printed materials in the possession of CBU or any of its current or former employees;

- Any materials stored in cloud-based systems, including Google Workspace, Microsoft 365, or any other platform used by CBU or its employees.

CBU is directed to suspend any document retention policies or automated deletion schedules that would result in the destruction of any potentially relevant materials for the duration of this litigation.

## VI. REQUEST FOR CONFIRMATION

Plaintiff requests that CBU confirm in writing, within ten (10) days of receipt of this letter, that it has: (1) issued a litigation hold to all relevant custodians identified above; (2) taken steps to preserve the electronic and paper records described herein; (3) suspended any automated deletion or document destruction processes that may affect relevant materials; and (4) taken specific steps to ensure that the records of any departing employee are preserved before that employee's separation date.

If CBU believes that any category of materials described in this letter is not subject to preservation, Plaintiff requests that CBU identify that category and state its position in writing so that the parties may, if necessary, seek the Court's guidance.

Plaintiff reserves all rights to seek sanctions, including adverse inference instructions, monetary penalties, and any other relief available under Federal Rule of Civil Procedure 37(e) and the Court's inherent authority, in the event that relevant materials are lost, destroyed, or materially altered after the date of this notice.

Respectfully,


**Dr. Leigh M. Johnson**
Plaintiff, Pro Se
drleighmjohnson@gmail.com
(901) 679-5937