UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

# EXHIBIT G

Letter from Vescovo to Plaintiff responding to Plaintiff's April 27 and April 28 conferral letters, May 8, 2026

Johnson v. Christian Brothers University
Case No. 2:25-cv-02618-BCL-atc



Suite 2900, One Commerce Square
40 S. Main Street
Memphis, TN 38103
T: (901) 525-8721 F: (901) 525-6722

**Steve W. Vescovo**
DL: (901) 577-6138
SVescovo@LewisThomason.com



May 8, 2026

*VIA EMAIL* *drleighmjohnson@gmail.com*

Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010

> **Re:**    ***Dr. Leigh M. Johnson v. Christian Brothers University***
> **District Court for the Western District of Tennessee (Case No. 2:25-cv-02618-BCL-atc)**
> **Our file # UTI01.10003**

---

Dear Dr. Johnson:

I am writing in response to your April 27, 2026 Letter and your April 28, 2026 supplemental correspondence regarding CBU's discovery responses and production (collectively, your "Letters"). At the outset, we dispute the characterization of CBU's discovery responses as deficient or non-compliant. CBU conducted a reasonable search, produced responsive, non-privileged and non-protected documents within its possession, and asserted objections expressly permitted by the Federal Rules of Civil Procedure. Nothing in your letter identifies sanctionable conduct, Rule 26(g) violations, or any basis for extraordinary relief. Nonetheless, we remain willing to engage in good-faith conferral and supplement our discovery responses where warranted. As highlighted in CBU's responses, many of your requests were overbroad, unduly burdensome, and not proportional to the needs of the case. If we could meet and confer on some of the items you raise concerns with, I am confident we can come to an agreement about narrowing the requests in a way that is proportional to the needs of the case and is not unduly burdensome on CBU.

To that end, I have made repeated efforts to confer in good faith on this case and you have refused to discuss anything with us via telephone or video conference. While CBU is willing to respond in writing where appropriate, the meet-and-confer process contemplated by Federal Rules of Civil Procedure 37 and Local Rule 7.2(a)(1)(B) is intended to be a practical, interactive exchange aimed at narrowing disputes, not an escalating series of lengthy position papers. The time and expense involved in reading through your 20+ page Letters and preparing this response could have been significantly minimized. Your Letters and refusal to participate in a telephone or video conference has rendered the meet-and-confer process inefficient and materially impedes the

Dr. Leigh M. Johnson
Page 2

parties' ability to narrow or resolve discovery disputes in a reasonable manner.  Oftentimes, things can be misunderstood or misinterpreted in writing, that can easily be explained or discussed through a conversation.

I again invite and urge you to confer with us by telephone or videoconference at a mutually convenient time.  If you continue to decline real-time conferral and instead insist on litigating discovery – or other disputes – exclusively through extensive written correspondence, we may be required to seek guidance from the Court regarding the adequacy of your meet-and-confer efforts and the appropriate procedure for addressing any disputes moving forward.  I remain willing to meet and confer in good faith and hope that Court intervention will not be necessary.

To address the points in your letter, as to Section I:  the documents requested would be subject to the protective order that we have yet to enter with the Court.  You cite to Rule 34(b)(2) for the proposition that we need to "identify the categories and approximate volume of withheld materials," but, respectfully, the Rule does not require that.  We will supplement our responses to those requests once the Court enters a protective order in this case.

As to Section II, CBU has asserted attorney-client privilege and work-product protection in a limited manner.  Rule 26(b)(5)(ii) requires a description of the nature of the documents, communications, or tangible things not produced or disclosed.  As part of the retrenchment process, CBU retained counsel (Husch Blackwell) for instructions and guidance on the process. The documents that would be protected under the privileges asserted are emails and memoranda provided by counsel.

As to Section III, you allege that there are several "internal contradictions" in the responses. CBU disputes this assertion.  The responses to the requests for admission appropriately admit, deny, or explain matters as framed by your requests.  The responses to the requests for production accurately identify responsive documents or provide objections.  Rule 34 does not require CBU to create documents, compile summaries, or generate records that do not exist in the ordinary course of business.  Many of your requests seek documents that are irrelevant to Plaintiff's claims.  For example, all documents related to Dr. Haught's employment are completely irrelevant.  Dr. Haught resigned before any classes were ever assigned to him.  Again – if you would like to discuss this issue and how it is relevant to your claims, we would be happy to do so.

Additionally, your characterization of the Appendix G.3.e criterion and its applicability or inapplicability is flawed and incorrect.  CBU has tried to explain that in more substantive responses, but if you would like to discuss this further, we would be happy to do so.

Regarding the attendees at Plaintiff's termination meeting, we will search for the additional records you identified in your Letters – calendar invitations, scheduling correspondence, and follow-up summaries – to ascertain whether any exist and supplement the response to RFP No. 26 accordingly.

Regarding your issues with CBU's response to RFA No. 24, we will supplement our response to clarify.  For your understanding, though, the Faculty Review Committee is a University Committee and its members had the right and obligation to keep members of the Academic VP

www.lewisthomason.com                                              |Knoxville     |Memphis     |Nashville

Dr. Leigh M. Johnson
Page 3

Office, including Dr. Lydia Rosencrants, in the loop about what was going on.  There was no requirement that members of the Faculty Review Committee communicate only with members of said committee.

Regarding Section IV, your interpretation of CBU's responses is incorrect.  As noted in CBU's objections, CBU is withholding responsive documents that are subject to the protective order we are waiting on the Court to enter.  As to your concern about CBU's responses to RFP Nos. 13 and 14, we will supplement the responses to correct the request number referenced in those responses.  We did not intend to reference Request No. 12 and recognize they are asking for different things.  The Rules do not require an explanation of search methodology, as you request repeatedly throughout your Letters.  The Rules certainly do not require a sworn declaration explaining search methodology.  Again, there are several documents that you are requesting that are protected under confidentiality.  Once we enter a protective order, we will produce those documents.  Your speculation regarding what documents "must exist" does not override CBU's representations made under Rule 26(g), especially when not all responsive documents have been produced pursuant to CBU's valid objections – most importantly, the lack of a protective order.

Regarding Section V, Exhibit B must have been inadvertently left off of our previous production.  We are attaching it with this letter and will formally supplement our responses as well once the protective order is entered and we are supplementing with those additional documents.  The documents requested in Section V, Paragraph D, would be covered under the protective order and responsive documents will be produced at that time.  The remaining items (Paragraph B and C) are not relevant to Plaintiff's claims and CBU has objected on those grounds.  As to Dr. Haught's employment contract, he never returned to teaching, so any documents related to that are irrelevant.  Additionally, Dean Tullia's communications are not responsive to any of the Requests that you identified and are also unrelated to Plaintiff's claims in this lawsuit.

Regarding Section VI, to be clear, you asked questions about Dr. Leib.  CBU does not maintain that his retention is related to yours whatsoever.  Dr. Leib was not in your department and, accordingly, was not a "comparator" for purposes of retainment.  His retainment or non-retainment had no impact on your department, and your retainment or non-retainment had no impact on his.

Regarding VII, your Letter states "Rule 26 permits discovery into preservation steps without a predicate allegation of destruction, particularly where, as here, multiple custodians with material knowledge have left the institution."  Respectfully, Rule 26 does no such thing.  Additionally, CBU has access to all e-mail accounts of all employees, regardless of current employment status.  That is the case regardless of any litigation hold.  We have already confirmed preservation repeatedly.

Regarding VIII, as raised in CBU's responses to your requests, these requests are overly broad, unduly burdensome, and not proportional to the needs of the case.  In your Letters you identify at least seven (7) e-mail addresses that you would like searched.  CBU is happy to search these e-mail accounts and produce responsive, non-privileged documents.  In order to do so an a way that is not overly burdensome and proportional to the needs of the case, we need further clarification on both the timeline and search terms you believe are reasonable.  This is where having a discussion is essential to the meet-and-confer process.

www.lewisthomason.com                                            |Knoxville    |Memphis    |Nashville

Dr. Leigh M. Johnson
Page 4

Regarding Section IX, you seek supplementation of several "deficient" responses, but responses and documents were provided. Again, your speculation regarding what documents "must exist" does not override CBU's representations made under Rule 26(g), especially when not all responsive documents have been produced given the lack of protective order. If unprotected documents were not produced, they were not located at this time or are subject to one of CBU's other objections (most relevant, the overly burdensome nature of the requests and the requests not being proportional to the needs of the case). We are having IT search for the communications you reference in Paragraph D and E. Once we receive those, we will review and produce any responsive, non-privileged communications. Regarding Paragraph E, the incident report from the referenced incident is attached here. We are also having IT search for emails from that day, but at this point, we do not have any additional responsive documents. You have not issued any formal request regarding any CBU policies that would be implicated by a social media post, so no response to that informal request is warranted. We are searching for responsive documents to Paragraph G and H and will supplement if any are located. In Paragraph I, you state that CBU's objections are not sufficient because "Former President David Archer is a central decisionmaker in this case." Respectfully, that does not make his resignation or separation from CBU relevant to the issues in this case. Your Letters do not state anything that would establish otherwise.

You also repeatedly request that CBU produce spreadsheets and similar materials in native format. We would direct you to the Parties' Rule 26(f) Report filed with the Court, specifically Section III, Paragraph h. As set forth therein, CBU was entitled to disclose and produce ESI in hardcopy or static form. It goes on to state that a party may request disclosure of metadata or native files for particular documents "**where good cause has been demonstrated** (e.g., when the original creation date of a document is an issue and disputed) or when a static image is not reasonably usable[.]" Your Letters do not satisfy that standard. If you would like to renew that request with supplemental information, we would be happy to consider that at any point.

Finally, your April 28 Letter advances speculative accusations regarding "non-original-source" documents, "ad hoc forwarding," and supposed flaws in CBU's collections process. These accusations are unfounded and inappropriate. The native-format request has already been addressed above. It is unclear what records you are requesting related to the webpages that we have previously produced or why those are necessary in light of what has already been produced. Regarding Paragraph D of that Letter, we have already advised that many documents have not been produced given that we are waiting for the entry of a protective order. Additionally, we have identified several materials within this letter that we are continuing to search for. Regarding the remainder of your issues raised, respectfully, you are not entitled to a detailed roadmap of CBU's internal collection processes, custodians, or search terms at this stage. We are willing to continue working with you to identify and produce any relevant, responsive, non-privileged documents.

Again – CBU denies that its discovery responses are deficient or sanctionable. However, consistent with Rule 26(e), CBU will supplement its responses if and when additional discoverable, non-privileged materials are identified. Obviously, CBU will also supplement its responses after the Court resolves the pending protective-order issue. We remain willing to confer further in good faith, but urge you to reconsider your refusal to communicate verbally – as that will

www.lewisthomason.com                                    |Knoxville    |Memphis    |Nashville

Dr. Leigh M. Johnson
Page 5

likely expedite things and help both sides clearly communicate regarding the discovery needs in this case.  Please advise if you will reconsider.

Respectfully,

**LEWIS THOMASON, P.C.**


Stephen W. Vescovo

Enclosures

Cc:     Jamie Gibbber

www.lewisthomason.com                                    |Knoxville    |Memphis    |Nashville