# EXHIBIT I

Defendant's Answers to Plaintiff's First Requests for Admission (served April 24, 2026)

**A IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

DR. LEIGH M. JOHNSON,

     Plaintiff,

v.                                                      Civil Action No.: 2:25-cv-02618-BCL-atc

CHRISTIAN BROTHERS UNIVERSITY,

     Defendant.

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION

Pursuant to the Federal Rules of Civil Procedure, Defendant Christian Brothers University ("CBU"), by and through undersigned counsel, objects to and answers Plaintiff's First Requests for Admission.

Unless a matter is specifically admitted, the matters below are specifically denied. Additionally, unless indicated otherwise, CBU denies all of the requests below to the extent the requests seek admissions regarding the truth of any matters not specifically admitted as CBU lacks information or knowledge, despite making reasonable inquiry, and that the information known or readily obtainable by her is insufficient to enable it to admit or deny beyond that what is specifically admitted below.

CBU's answers are based upon information available at this time and are subject to revisions if additional information becomes available. Plaintiff's requests do not appear to seek admissions regarding the completeness or accuracy of the content of the documents and things referenced in Plaintiff's First Set of Requests for Admission, and, accordingly, in answering the

requests, CBU does not admit the accuracy or completeness of any documents and things referenced.

## GENERAL OBJECTIONS

All responses are made for purposes of this litigation only and are subject to later objections based on competence, relevance, materiality, propriety, admissibility, attorney-client privilege, the work product doctrine, and any other appropriate objection. CBU answers Plaintiff's requests subject to and without waiving these general objections.

## ANSWERS TO REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:**    Admit that President Archer's October 31, 2023, Presidential Charge to Chairs and Deans declared that Appendix G.3.e criterion (3) of the Faculty Handbook was "not applicable" to the retrenchment process.

> **ANSWER:**    **Denied.  For further response, Plaintiff's Request misstates President's Archer's October 31, 2023, Presidential Charge to Chairs and Deans.  Plaintiff has already filed a copy of that correspondence at ECF No. 331-1, PageID 186–87, and CBU references and incorporates that correspondence as if fully stated herein.**

**REQUEST NO. 2:**    Admit that President Archer's October 31, 2023, Presidential Charge directed that faculty retention recommendations should be made irrespective of gender and race.

> **ANSWER:**    **Denied.  For further response, Plaintiff's Request misstates President's Archer's October 31, 2023, Presidential Charge to Chairs and Deans.  Plaintiff has already filed a copy of that correspondence at ECF No. 331-1, PageID 186–87, and CBU references and incorporates that correspondence as if fully stated herein.**

**REQUEST NO. 3:**    Admit that Appendix G.3.e criterion (3) of the Faculty Handbook - "the goals of the University regarding numbers of women, women religious, and members of

2

minority group" – was the only one of the three criteria in Appendix G.3.e that expressly addressed the representation of women in faculty.

**ANSWER:**    **Admitted.**

**REQUEST NO. 4:**    Admit that President Archer did not obtain Faculty Assembly approval before declaring Appendix G.3.e criterion (3) inapplicable in the October 31, 2023, Presidential Charge.

**ANSWER:**    Denied as stated.  Answering further, Defendant would state criteria number 3 under Appendix G.3.e was not "declared" inapplicable by then President Archer after the Defendant declared "financial exigency."  In addition, Defendant did not need approval of the Faculty Assembly to declare "financial exigency."

**REQUEST NO. 5:**    Admit that the Faculty Handbook is incorporated by reference into Plaintiff's annual faculty appointment contracts.

**ANSWER:**    **Admitted.**

**REQUEST NO. 6:**    Admit that the Faculty Handbook does not state that a terminated faculty member must release legal claims in order to receive severance salary commensurate with past and potential service.

**ANSWER:    Admitted.  For further answer, the Faculty Handbook does not require the Defendant to offer a severance or separation package to faculty members and Defendant has the right to offer a separation package in exchange for the faculty member/employee executing an approved release.  Plaintiff was free to decline to executed the Separation and Transition Agreement.**

3

**REQUEST NO. 7:**    Admit that CBU President Br. Chris Englert publicly stated in or around July 2024 that CBU ended the 2023 – 2024 academic year with no debt and operating in the black.

> **ANSWER:**    **Admitted that the Daily Memphian published an article on July 20, 2024 quoting President Englert that the school has no debt and ended the 2023-2024 school year "in the black."  Plaintiff attached a copy of that article to her Complaint at ECF No. 2-2, PageID 36-39.  For context on how that was made possible, the article goes on to state that, "Previous CBU President Dave Archer had already enacted $4 million in budget cuts in the fall of 2023 including cutting 28 faculty positions, several tenured and eliminating some courses."  (ECF No. 2-2, at PageID 37.)**

**REQUEST NO. 8:**    Admit that Bruce Cinquegrani held the rank of Visiting Assistant Professor and was not tenured at the time of the December 2023, retrenchment decisions.

> **ANSWER:**    **Admitted.  For further response, Father Bruce,  the only Catholic priest on campus, is also CBU's chaplain and conducts mass on campus, in addition to teaching class as a Visiting Professor of Religion.  As a visiting professor he operates under a year-to-year contract.**

**REQUEST NO. 9:**    Admit that Plaintiff's tenured position was eliminated while Bruce Cinquegrani's non-tenured position was retained.

> **ANSWER:**    **Admitted, but Defendant denies that Plaintiff and Father Bruce were similarly situated.  As mentioned above, Father Bruce, a Catholic priest, is also CBU's chaplain and conducts mass on campus, in addition to teaching class as a Visiting Professor of Religion.  Plaintiff was not qualified to teach religion courses, nor obviously, conduct mass.**

**REQUEST NO. 10:**    Admit that Philip Maloney held a tenured faculty position in the Department of Religion and Philosophy at CBU and was retained in that position following the 2023 retrenchment.

> **ANSWER:**    **Admitted.**

4

**REQUEST NO. 11:** Admit that both Philip Maloney's and Plaintiff's academic training is in philosophy and that both hold PhDs in Philosophy.

> **ANSWER:** **Admitted. For further response, at the time of the December 2023, retrenchment decisions, Dr. Maloney had been teaching at CBU for over 22 years and had been tenured since 2007, long before Plaintiff was hired at CBU.**

**REQUEST NO. 12:** Admit that following the December 2023 retrenchment decisions, the only faculty members retained in the Department of Religion and Philosophy were male.

> **ANSWER:** **Denied.**

**REQUEST NO. 13:** Admit that a termination meeting scheduled for December 7, 2023, with Professor Karl Leib was canceled before it took place.

**ANSWER:** Admitted that Dr. Leib, a history and political science professor in the Department of History and Political Science, was considered for termination by the retrenchment committee, but a decision was made to retain his position. CBU no longer offers a history major, but prior to ending the history major, CBU had to retain at least one full-time faculty member in the department for accreditation. There were no females in the department and Dr. Lieb had seniority over the other 2 male department members.

**REQUEST NO. 14:** Admit that Professor Karl Leib was a tenured Professor of Political Science whose position was not eliminated in the 2023 retrenchment.

**ANSWER:** Admitted.

**REQUEST NO. 15:** Admit that the Political Science major was discontinued as part of the 2023 retrenchment process.

5

**ANSWER:    Denied.  Political Science was only a minor, not a major.  Political Science and History classes are still taught at CBU.**

**REQUEST NO. 16:**  Admit that, at Plaintiff's December 7, 2023, termination meeting, President Archer stated that Plaintiff's position was being terminated because the Philosophy major was being eliminated and because Plaintiff had the least seniority.

**ANSWER:    Denied as stated.  President Archer advised that the school followed the Faculty Handbook's guidance on the retrenchment process, took into account recommendations by chairs and deans, and then made a decision based on the factors set forth in the Handbook.  Among those considerations were the fact that CBU was eliminating the philosophy degree and that, from the standpoint of seniority in philosophy, Plaintiff would have the least seniority.**

**REQUEST NO. 17:**  Admit that no representative of CBU's Human Resources office attended Plaintiff's December 7, 2023, termination meeting.

**ANSWER:    Admitted**.

**REQUEST NO. 18:**   Admit that between October and December 2023, Department Chair James Wallace informed Plaintiff by email that at least one of her Spring 2024 courses had been reassigned to Paul Haught.

**ANSWER:    Defendant admits that for a brief time, Dr. Paul Haught was scheduled to teach a philosophy  course in the spring of 2024.  However, he resigned effective December 31, 2023, and therefore never taught any course in 2024 at CBU.**

**REQUEST NO. 19:**  Admit that the reassignment described in Request No. 18 was made at the direction of Dean Tawny Tullia.

**ANSWER:**    **Admitted.**

**REQUEST NO. 20:**  Admit that, at the time Plaintiff's course was reassigned to Paul Haught, Paul Haught had not been assigned regular faculty teaching duties at CBU within the preceding five years.

**ANSWER:**    **While Admitting that Dr. Haught had not been teaching any courses in the prior 5 years while he served as the Academic Vice-President for the Defendant, Defendant would state that Dr. Haught's contract provided that after he left his administrative position, he was to return to his tenured teaching position in the religion and philosophy department.**

**REQUEST NO. 21:**  Admit that Plaintiff was not offered reinstatement to her tenured position at any point following the resignation of Paul Haught.

**ANSWER:**    **Admitted.**

**REQUEST NO. 22:**  Admit that the severance and separation agreement offered to Plaintiff on December 7, 2023, required her to release all pending "complaints, grievances, charges or lawsuits" against CBU as a condition of receiving severance pay.

**ANSWER:**    **Admitted.**

**REQUEST NO. 23:**  Admit that on or about January 10, 2024, Faculty Review Committee Chair Scott Geis informed Plaintiff by email that the Faculty Review Committee's initial hearing of her appeal was scheduled for January 19, 2024.

**ANSWER:**    Denied as stated.  Plaintiff was notified on December 7, 2023, that her position was being terminated effective the end of the 2024 spring semester.   Plaintiff was presented a Transition and Separation Agreement at that time. Plaintiff then notified Defendant that she was appealing her termination to the Faculty Review Committee. Plaintiff requested her hearing take place on January 10, 2024, but the hearing was continued to January 19, 2024, due to the unavailability of some of the committee members. On January 18, 2024, the chairman of the Faculty Review Committee sent Plaintiff an e-mail advising that, due to an urgent Committee matter, her appeal hearing was being rescheduled to January 26, 2024.

Subsequently, Plaintiff executed and returned her Transition and Separation Agreement on January 23, 2024, leading Defendant to reasonably believe Plaintiff was dropping her appeal of her termination as was required pursuant to the Separation Agreement.   Plaintiff rescinded her Transition and Separation Agreement on January 30, 2024. Plaintiff never renewed her appeal to the Faculty Review Committee and no hearing on her appeal occurred.

**REQUEST NO. 24:** Admit that Faculty Review Committee Chair Scott Geis communicated with individuals outside the Faculty Review Committee regarding Plaintiff's appeal during the pendency of that appeal.

**ANSWER:**    Objection to the extent Plaintiff is referencing discussions Scott Geis had with Defendant's attorneys.  Defendant admits Chair Scott Geis communicated with certain members of the Faculty Review Committee regarding scheduling during the appeal.

8

**REQUEST NO. 25:**  Admit that Vice-Provost Lydia Rosencrants communicated with Faculty Review Committee Chair Scott Geis regarding Plaintiff's appeal during the pendency of the appeal.

**ANSWER:**    Admitted.

**REQUEST NO. 26:**  Admit that, after Plaintiff revoked the severance agreement, CBU did not pay Plaintiff severance.

**ANSWER:    Admitted, as the payment was conditioned on Plaintiff's acceptance of the separation agreement and no payment was owed, after Plaintiff revoked her acceptance of the separation agreement.**

**REQUEST NO. 27:**  Admit that Plaintiff's appeal to the Faculty Review Committee was never heard after Plaintiff revoked the severance agreement on January 29, 2024.

**ANSWER:    Admitted.**

**REQUEST NO. 28:**  Admit that on April 26, 2024, Dean Tawny Tullia removed Plaintiff from her classroom at the start of her 11:00 a.m. class and brought her to a meeting attended by Ron Brandon and a law-enforcement officer.

**ANSWER:    Admitted.  For further explanation, April 26, 2024, was Plaintiff's last day of class, and Defendant learned that Plaintiff posted on social media a dynamite/firecracker emoji with text saying she "planned to go out with a bang!"  Out of an abundance of caution, Defendant was removed from her classroom for a meeting with administrators to discuss their concerns with her posting.  After the discussion, she was allowed to return to her classroom.**

9

**REQUEST NO. 29:**  Admit that, after that meeting, CBU permitted Plaintiff to return to her classroom and complete her 11:00 a.m. class the same day.

**ANSWER:**  **Admitted.**

**REQUEST NO. 30:**  Admit that on May 11, 2024, campus safety officers refused Plaintiff entry to her office when she attempted to retrieve her personal belongings.

**ANSWER:**  **Denied as stated.  She was escorted into her office with campus safety to retrieve her belongings.**

Respectfully submitted,

**LEWIS THOMASON, P.C.**

By: ___*s/Stephen W. Vescovo*___
STEPHEN W. VESCOVO (7246)
JAMIE GIBBER (39552)
2900 One Commerce Square
40 S. Main St.
Memphis, TN  38103
(901) 525-8721
svescovo@lewisthomason.com
jgibber@lewisthomason.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2026, a copy of the foregoing pleading has been delivered to the following via email:

Dr. Leigh M. Johnson
701 South Barksdale Street
Memphis, TN 38104
drleighmjohnson@gmail.com
*Pro se Plaintiff*

*s/Stephen W. Vescovo*
STEPHEN W. VESCOVO

4935-6230-0068

11