Collective Ex. A

**Gibber, Jamie**

---

| | |
|---|---|
| **From:** | Leigh Johnson <drleighmjohnson@gmail.com> |
| **Sent:** | Tuesday, May 12, 2026 3:18 PM |
| **To:** | Gibber, Jamie |
| **Cc:** | Vescovo, Steve W. |
| **Subject:** | Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026 |

Ms. Gibber,

Thank you. I will proceed with submitting the agreed Proposed Bilateral Protective Order to chambers, applying "/s/ Stephen W. Vescovo" notation in the signature block as set up in your redline.

Given today's deadline and the time required to finalize submissions before the clerk's office closes, I will not be sending a joint notice draft for review. I will instead file a brief unilateral notice with the Clerk's Office today reflecting Plaintiff's submission of the agreed order to chambers in compliance with ECF 43. CBU is, of course, free to file a separate notice if it wishes.

Regards,
Dr. Leigh M. Johnson


On Tue, May 12, 2026 at 3:04 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

I have no issue with you submitting the proposed order. There are two blocks for both of us noting that the order was submitted jointly. Nothing further is needed on that.

Before filing any notice as joint, I would need to see a draft. Please provide a draft for our review.

Best,
Jamie

Get Outlook for iOS

---

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Tuesday, May 12, 2026 2:00:25 PM
**To:** Gibber, Jamie <jgibber@lewisthomason.com>
**Cc:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026


Ms. Gibber,

I accept your proposed modification to Paragraph 14. The five additional words ("to the extent any said obligations exist") do not alter the bilateral structure of the provision. This concludes conferral.

Because I have drafted the operative integrated order and have coordinated written conferral throughout the period mandated by ECF 43, I will handle the submissions. This afternoon I will (1) submit the agreed Proposed Bilateral Protective Order to chambers at ECF_Judge_Christoff@tnwd.uscourts.gov per the Court's Practice Standards, and (2) file a brief joint notice with the Clerk's Office reflecting the parties' compliance with ECF 43. Both submissions will be transmitted from my email account and will reflect "/s/" notation for defense counsel under "AGREED AND APPROVED AS TO FORM AND SUBSTANCE."

Please respond by 3:30 p.m. Eastern today with express written authorization for me to apply "/s/ Stephen W. Vescovo" and "/s/ Jamie M. Gibber" notation in the agreed signature block. That authorization is the only confirmation required for me to proceed.

Regards,
Dr. Leigh M. Johnson

On Tue, May 12, 2026 at 2:46 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

Glad we could come to an agreement on the first two issues.  As to the last issue, I would be comfortable leaving your proposed revisions to Paragraph 14 with the additional language that I added in the attached redlined version.  We would not file the proposed protective order with the Court, we would submit it to the appropriate ECF inbox for the Judge's consideration per the local rules.  To the extent you want to file something with the Court notifying the Court that we have complied with the Court's order and submitted the agreed proposed protective order to the appropriate ECF inbox, please send us a copy of what you intend to file and perhaps we can file that jointly.

Best,

Jamie



**Jamie Gibber** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN| Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Tuesday, May 12, 2026 12:26 PM
**To:** Gibber, Jamie <jgibber@lewisthomason.com>

**Cc:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Ms. Gibber,

I accept the following two modifications you proposed:

**Issue 1.** The Paragraph 2 carve-out is narrowed to opponent-authored material (rather than opponent-authored or opponent-received material), subject to the five enumerated exceptions in my May 11 redline.

**Issue 2.** The Paragraph 5 trigger is set at 30 days, with the addition of your proposed language: "in the event the Court sets a hearing with shorter than 30-days notice, the parties will confer as soon as is practicable."

**Issue 3 is the only remaining point of disagreement.** CBU has acknowledged that the asymmetric retention provision has no practical impact on Plaintiff. The provision should accordingly apply bilaterally as drafted in my May 11 redline.

Please confirm by 3:00 p.m. EST today whether CBU agrees to entry of the protective order with (a) the two modifications above, and (b) the bilateral retention language in my May 11 redline at Paragraph 14. If CBU agrees, I will integrate the modifications and file the agreed order today with both signature blocks under "AGREED AND APPROVED AS TO FORM AND SUBSTANCE," using "/s/" notation for defense counsel as expressly authorized in CBU's written response. If CBU does not agree on Issue 3, I will file a notice of impasse limited to that single issue.

No further conferral will be possible after 3:00 p.m. EST.

Regards,
Dr. Leigh M. Johnson

On Tue, May 12, 2026 at 1:00 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

I can sympathize with your frustration on how long this conferral process has taken, but given that you continuously refuse to discuss things verbally – conferral takes significantly longer than necessary.  Regarding the three points below:

1. Again, I do not believe this provision is necessary or appropriate, quite frankly.  There is a means for the parties to challenge designations, in the event any were inappropriately made.  In an effort to try to get this finalized given today's deadline, we would be willing to include the provision but only as to opponent-authored

material.  The fact that an opponent received material, potentially by someone who did not have the authority to provide said material, should not exempt it from protected status, if it were indeed protected.

2.  If the issue with the 30-day timeframe is the "administrability for shorter-notice hearings," I would feel comfortable adding a clause after the 30-day period noting that in the event the Court sets a hearing with shorter than 30-days notice, the parties will confer as soon as is practicable.  Quite frankly, the Court may require more than 30-days.  Thirty days is more realistic given the parties' and the Court's schedules.  I hope that you will reconsider this position, with the added caveat if your concern is truly about the possibility (however unlikely) of the Court setting a hearing with less than 30-days notice.

3.  Respectfully, I would be curious to see examples of bilateral protective orders you have entered that have similar symmetric positions, as you noted.  I know of at least 5 cases where we have entered a bilateral protective order that reflects one party's heightened legal retention obligations when the other has none.  Practically, including the provision as you have suggested makes no difference as you have no legal retention obligations.  Our concern is that later down the line this will be seen as some sort of acknowledgement on our part of said rights, which we dispute.  Hopefully that explanation will help you reconsider your position, but please advise.

Best,

Jamie



**Jamie Gibber** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN| Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

---

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Tuesday, May 12, 2026 9:06 AM
**To:** Gibber, Jamie <jgibber@lewisthomason.com>
**Cc:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Ms. Gibber,

Responding to your three points:

1.  The provision is not circular. It prohibits designation of opponent-authored or opponent-received material, subject to five enumerated carve-outs for third-party privacy and proprietary information. The carve-outs limit the operation of this specific anti-overdesignation rule; they do not define what may otherwise be designated under the Order. My position on this revision is unchanged.

2. I will compromise at twenty-one (21) days. That accommodates pre-hearing and pre-trial lead time while preserving administrability for shorter-notice hearings.

3. The Order is bilateral; the retention-obligation carve-out follows. Symmetric provisions are the default in a bilateral protective order between parties, and the burden of justifying asymmetric treatment runs in the opposite direction. My position on this revision is unchanged.

Please send CBU's written response no later than 1:00 p.m. EST today. The response should state either:

(1) CBU's agreement to the protective order as set forth in my May 11 redline, modified to reflect the 21-day compromise in point 2 above, together with express written authorization for me to add the notation "/s/ Stephen W. Vescovo" (and/or "/s/ Jamie M. Gibber") beneath an "AGREED AND APPROVED AS TO FORM AND SUBSTANCE" line on the proposed protective order for filing with the Court and submission to chambers today; or

(2) CBU's disagreement, in which case I will file a notice of inability to agree.

I initiated conferral on April 28, the day ECF 43 was entered, and sent a compromise proposed protective order on May 1. Given today's deadline, no further conferral will be possible after 1:00 p.m. EST.

Regards,
Dr. Leigh M. Johnson

On Mon, May 11, 2026 at 11:17 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

Thank you for the redlines and your explanation.  As to each of your remaining edits:

1. Do you have some specific document or can you give an example of something that would be authored or received by the opposing party that could be designated as confidential and would not be subject to the express carve-outs you have delineated?  I guess what I am struggling with is that this sentence seems circular.  It essentially says:  the parties may not designate anything as CONFIDENTIAL unless it is CONFIDENTIAL, which is obvious.  Can you help me understand why this sentence is necessary?

2. The reason I extended your proposed meet-and-confer timeframe from 14 to 30 days is because 14 days does not allow enough time for us to exchange written communication (given that you refuse to discuss things via phone), assess whether we will be able to reach an agreement, and then file a motion with the court and obtain a setting ahead of whatever trial/hearing the protected information is anticipated to be used at.  As you can see from this one issue regarding the protective order, it has taken ten days of back and forth for us to even get to a place where there are three issues for us to attempt to resolve.  This is not our only case we are managing and a 14 day timeframe is simply impractical.  You may not have other cases, but I imagine you also have other things that take up your time as well.  Even if we were able to accomplish our meet and confer in a day's time, which seems unlikely, we would then have to prepare a motion to file with the Court, and try to obtain a status conference with the Court.  The Court certainly would not appreciate the parties approaching on an issue relating to trial or hearing with less than 14-days ahead of the trial.  Quite frankly,

thirty days may be unrealistic from the Court's perspective. Is there a reason why you are so insistent on a 14-day time frame? Please advise on the rationale there as well.

3. Again, what legal retention obligations do you have as a pro se litigant? Can you please explain why this revision is so important here? It seems like you are determined to make sure each and every provision applies equally to you, even when – as is the case for Paragraph 14 – the issues that are applicable to CBU, as an educational institution, are inapplicable to you as an individual. If you can identify what legal retention obligations you have that you want to make sure are protected, perhaps I can better understand why this would ever apply to you and would need to be applicable to both parties.

Please let me know and hopefully we can come to an agreement on these remaining issues before tomorrow's deadline. We will have until the end of the day to file something with the Court. My understanding of the Court's order is that if the parties reach an impasse, the Court will enter its own standard protective order, not pick one of the parties' proposed orders and/or analyze what the remaining issues are following the meet-and-confer. I have an appointment tomorrow morning, but I will be happy to review any comments you have on the points above and respond once I am back in the office. I don't know that that will be before 11:00 a.m. EST, so I would appreciate if you'd allow some more time for my response before filing anything with the Court.

Best,

Jamie



**Jamie Gibber** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN| Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

---

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Monday, May 11, 2026 5:15 PM
**To:** Gibber, Jamie <jgibber@lewisthomason.com>
**Cc:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Ms. Gibber:

Thank you for the May 11 redline. I accept the substance of CBU's edits to Paragraph 8.l (litigation-support persons) and the addition of a meet-and-confer procedure to Paragraph 5, subject to the timing adjustment described below. These changes substantially address two of my four May 8 points.

I note that the May 11 redline, like the May 7 transmission, reflects CBU's edits to its own proposed form rather than a response to my May 1 compromise proposed Bilateral Protective Order. In the interest of timely resolution under ECF 43, I have worked within CBU's framework and incorporated CBU's accepted edits, rather than reverting to the May 1 compromise as the operative base.

Attached are two files: a redline of CBU's May 11 version with my proposed edits shown as tracked changes for ease of review, and the same document in clean form, as it would be submitted to the Court if entered. The three remaining edits are as follows:

1. **Paragraph 2** — A new sentence at the end of the paragraph prohibits either party from designating as CONFIDENTIAL documents authored by, sent to, or received by the opposing party outside this litigation, subject to express carve-outs for (a) third-party personally identifying information, (b) FERPA-protected information, (c) third-party medical or health information, (d) Social Security numbers and financial account identifiers, and (e) bona fide third-party proprietary or trade secret information. CBU's May 11 email identified FERPA, third-party PII, and third-party proprietary content as the categories warranting confidential treatment; the carve-outs preserve CBU's stated ability to designate those categories.
2. **Paragraph 5** — The meet-and-confer trigger is restored to fourteen (14) days, consistent with Plaintiff's May 1 proposed compromise. CBU's May 7 cover email indicates that Paragraph 5 was drafted "based on Paragraph 14.3 of [Plaintiff's] proposed order" but extended the trigger to thirty (30) days. This edit restores Plaintiff's original drafting.
3. **Paragraph 14** — Two parallel changes replace the unilateral references to CBU's interests with bilateral language. "The routine business practices of CBU" is replaced with "the legal retention obligations applicable to either party," and the bolded final sentence refers to "either party" and "such party" in place of CBU. If, as CBU's May 11 email indicates, the operative concern is legal retention obligations, this language preserves CBU's stated interest while applying the same standard to both parties.

Please confirm CBU's agreement to entry of the attached order in writing by 11:00 a.m. Eastern on Tuesday, May 12, 2026. If CBU agrees, I will file the joint proposed protective order with the Court on May 12, in compliance with ECF 43. If CBU does not agree or does not respond by that time, I will file a notice of impasse on May 12 attaching both parties' proposed orders and identifying the remaining disputed provisions for the Court's resolution.

Regards,

Dr. Leigh M. Johnson
1492 Newton St. NW, Apt. A
Washington, DC 20010
901-679-5937

On Mon, May 11, 2026 at 3:38 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

7

Attached is an updated redlined version of the protective order.  Regarding each of your points below:

1. Respectfully, any such person would have been covered under Paragraph 8.l.  To ease your worries, we have included the additional language to specifically note that it includes up to two litigation-support persons.
2. Is there something specific that you have in mind?  It is difficult to imagine what material you may have authored or received that would be subject to this protective order.  As noted within the protective order, it is meant to cover documents that are private, confidential, or proprietary.  Of course, as your note suggests – if the material authored or received by you contained third-party PII, FERPA, medical information, identifiers, or bona fide proprietary information, then it could potentially be marked as confidential under this protective order, but to our knowledge no such document exists.  Certainly, the same would not go for CBU – there would definitely be CBU-authored material that could be confidential.  It is unclear if your requested inclusion would include CBU-authored material or not.
3. Again, this is drafted as a "CBU-only carve-out" because CBU is subject to laws regarding what documents it must retain that would be inapplicable to you.  What laws are you subject to that would require you to maintain any documents?
4. The proposed meet-and-confer language was added to Paragraph 5 based on Paragraph 14.3 of your proposed order.  It largely tracks the provision you drafted, but it gives 30 days for the meet-and-confer as opposed to 14.  With that in mind, I am not sure how this language is "overbroad."  This is the first time you are raising an issue of an "absence of any limitation on over-designation."  Respectfully, the protective order sets forth limitations on over-designations.  The protective order explicitly provides "[d]esignation may only be made after a good faith review by counsel of record and counsel making a designation shall comply with the standards set forth in Fed. R. Civ. P. 26(g) when designating information as CONFIDENTIAL."  Additionally, there is a very specific mechanism for you to challenge any designation under the protective order far in advance of any hearing or trial.

Please let us know if the redlines and comments above adequately address your concerns, and we can enter the order.

Best,

Jamie



**Jamie Gibber** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN| Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Friday, May 8, 2026 6:33 AM
**To:** Gibber, Jamie <jgibber@lewisthomason.com>

**Cc:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Ms. Gibber,

I will continue to confer in writing.

I have reviewed CBU's redline. Several edits track provisions reflected in Plaintiff's May 1, 2026 compromise proposed Limited Bilateral Protective Order, and I appreciate CBU's movement on those points: the single CONFIDENTIAL tier; the challenge procedure at Paragraph 2 with the burden remaining on the designating party; the deletion of CBU's prior automatic-sealing requirement (former Paragraph 17); the FRE 502 clawback at Paragraph 4; and the 30-day post-transcript designation window at Paragraph 3.

CBU's redline does not, however, address four substantive points from Plaintiff's May 1 compromise proposal, each of which is material to whether the parties can submit a joint proposed order under ECF 43:

1. Litigation-support persons for pro se Plaintiff. Plaintiff's compromise §§ 8.1(i) and 8.2 permit up to two named litigation-support persons, identified by name and general role, with Exhibit A acknowledgment, and preserve CBU's ability to seek relief from the Court if it has a good-faith concern about a specific individual. CBU's redline contains no equivalent provision.
2. No designation of opponent-authored or opponent-received material. Plaintiff's compromise § 4 limits each party's ability to designate as CONFIDENTIAL material authored or received by the opposing party outside discovery, with carve-outs for third-party PII, FERPA, medical information, identifiers, and bona fide proprietary information. CBU's redline contains no such limit.
3. Reciprocity at Paragraph 14. CBU's added language exempting CBU from the return-or-destroy obligation for documents it is "otherwise required by law to maintain" is reasonable in substance but is drafted as a CBU-only carve-out. The provision should apply to both parties.
4. Paragraph 5 advance-notice mechanism. The proposed 30-day meet-and-confer requirement before any hearing or trial at which Protected Material may be used is overbroad and, in combination with the absence of any limitation on over-designation, creates an incentive to over-designate and force serial motion practice on individual uses.

The operative working draft remains the May 1, 2026 compromise proposed order. If CBU is willing to accept that document as the structure for the joint proposed order, with CBU's already-stated edits incorporated, I will integrate those edits and circulate a joint draft for execution. If CBU is not willing to do so, the parties are at impasse on the four points above, and I will file a notice of inability to agree under ECF 43 on May 12, 2026, attaching both parties' proposed orders.

Please respond in writing by end of business Monday, May 11, 2026.

Regards,
Dr. Leigh M. Johnson

On Thu, May 7, 2026 at 9:30 PM Gibber, Jamie <jgibber@lewisthomason.com> wrote:

Dr. Johnson:

As Steve has said numerous times throughout this case, it would be much easier to get on a call to discuss these issues rather than communicate via lengthy emails and letters.  We are renewing our request to discuss these matters on the phone so we can hopefully accomplish something in a timely manner.

Regarding the protective order, it looks like you have incorporated many of the concerns we raised in our response to the motion for protective order in your updated version.  We appreciate that.  Your order still includes several provisions that go beyond what is necessary to protect legitimately confidential discovery material.  Your order also adds several Plaintiff-specific speech carve-outs and explanatory provisions that are not typical of discovery protective orders and risk turning the order itself into a vehicle for litigating disputes down the road.  Our proposed order is intentionally neutral, focusing solely on discovery management rather than creating commentary-driven provisions that could invite motion practice.  Additionally, your draft includes several procedurally redundant or unnecessary concepts that are already governed by the Rules of Civil Procedure and/or local rules.  Our proposal keeps the order streamlined and concise, leaving those issues to existing law rather than embedding them into the protective order itself.

In light of those concerns, we believe our proposed protective order is the cleaner, more court-appropriate framework.  We have made additional redlines taking into consideration some of the concerns highlighted in your proposed order.  Please let us know if this version is acceptable to you or provide redlines to that order so we can consider any further recommended changes.  Again – it would be far more productive and efficient to discuss these issues via phone discussion rather than through email.  Please let us know if you will reconsider your position to only communicate in writing.

Best,

Jamie



**Jamie Gibber** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN| Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Friday, May 1, 2026 12:27 PM
**To:** Vescovo, Steve W. <SVescovo@LewisThomason.com>
**Cc:** Gibber, Jamie <jgibber@lewisthomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Subject: Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 30, 2026

Mr. Vescovo,

Thank you for your reply.

As I have stated repeatedly throughout this litigation, I will conduct meet-and-confer communications in writing. Written conferral is consistent with my pro se status, preserves an accurate record of each party's position, and satisfies the good-faith conferral requirement of Rule 37(a)(1) when both sides engage substantively. Despite my repeated requests to confer in writing throughout this litigation, defense counsel has not offered any reason or justification for declining. I will not be available for a telephonic or video conference, and accordingly am not available on the dates you proposed in that format.

There are presently two distinct conferral tracks, and I would like to address both in writing.

**First, the Rule 37 conferral.** The appropriate next step is for CBU to respond in writing to the deficiencies identified in my April 27, 2026 letter and my April 28, 2026 supplemental letter regarding production-integrity issues. I have asked CBU to cure those deficiencies by May 8, 2026 at 5:00 p.m. Eastern. To the extent CBU disputes any of the issues raised, please state CBU's position in writing by that date so that I can evaluate whether further written conferral is needed before motion practice.

**Second, the court-ordered protective-order conferral.** As reflected in the Court's April 28, 2026 Order (ECF 43), the parties are ordered to confer and submit a joint proposed protective order, or a notice of inability to agree, on or before May 12, 2026. To move that conferral forward, I am attaching a proposed compromise Limited Bilateral Protective Order for CBU's review. The proposal is labeled a compromise and is intended to address the principal points of disagreement reflected in ECF 34 and ECF 37. Please respond in writing with redlines, edits, or a counter-proposal so that the parties can either submit a joint proposed order or document the points of disagreement before the May 12 deadline. Given the eleven-day window, I propose that CBU return its written response no later than May 7, 2026.

The attached proposal reflects compromise from Plaintiff's position in ECF 34 in several material respects. First, on the principal point of disagreement reflected in ECF 34 and ECF 37 — Plaintiff's access to litigation-support assistance — the proposal at § 8.2 limits litigation-support persons to two, requires each to sign the Exhibit A acknowledgment before receiving Protected Material, requires Plaintiff to identify them by name and general role, and preserves CBU's ability to seek relief from the Court if it has a specific, good-faith concern about a particular person. Second, the proposal adopts a single CONFIDENTIAL designation tier at § 2.7, with no AEO or counsel-only

designations absent agreement or further order. Third, the proposal incorporates a standard thirty-day post-transcript designation window for deposition testimony at § 6 and a Rule 502(d) clawback at § 11. Fourth, the proposal at § 13 requires the parties to confer about redaction or partial redaction before any motion to seal, rather than treating designation as triggering automatic sealing. The proposal is offered as a starting point for written conferral, and Plaintiff is prepared to consider redlines and counter-proposals from CBU.

Regarding my deposition: I am not available in Memphis. I do not anticipate traveling to Memphis prior to trial. I am willing to confer in writing about either (a) a mutually agreeable location in Washington, D.C., or (b) a remote deposition by Zoom or comparable videoconference. Apart from location, depositions in this matter should not proceed until two predicate issues are resolved: (1) a protective order should be entered before depositions, given that deposition testimony is likely to implicate material subject to confidentiality designations, and (2) depositions should follow CBU's cure of the production deficiencies identified in my April 27 and April 28 letters. Document production must be substantially complete before depositions, so that both parties can prepare and so that depositions need not be reopened to address belatedly produced material.

Finally, I note that the Court's April 28, 2026 Order (ECF 43) also designated ECF 33 as the operative Amended Complaint and set CBU's response deadline as May 12, 2026.

Please send CBU's substantive response to my April 27 and April 28 Rule 37 letters by the May 8 deadline already indicated in those letters, and CBU's written response to the attached proposed compromise protective order by May 7.

Regards,

Dr. Leigh M. Johnson

Attachment: Johnson_Proposed_Compromise_Limited_Bilateral_PO_2026-05-01

On Fri, May 1, 2026 at 11:26 AM Vescovo, Steve W. <SVescovo@lewisthomason.com> wrote:

Dr. Johnson, as much as I love D.C., you are the plaintiff in a case you filed in Memphis, TN.  Obviously, if this case goes to trial, you will be traveling to Memphis for the trial.  I am trying to accommodate your schedule by setting your deposition in the summer when you are out of school and by giving you plenty of notice of the deposition date.

As for the meet and confer, we are available next week on Monday at 11 a.m. central time or in the afternoon after 3.  We are also available all day on Wednesday, May 6 till 4:30 our time.  I may be available on Thursday but will not know until we have a conference call with a chancellor on Monday morning about another case.

Do any of these times work for you?   Please advise.   thanks



**Steve Vescovo** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN | P.O. Box | Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

---

**From:** Leigh Johnson <drleighmjohnson@gmail.com>
**Sent:** Monday, April 27, 2026 1:07 PM
**To:** Vescovo, Steve W. <SVescovo@LewisThomason.com>; Gibber, Jamie <jgibber@lewisthomason.com>
**Subject:** Re: Dr. Leigh Johnson -v- CBU UTI01.10003 Claim: 10401294 April 24, 2026


Mr. Vescovo,

Thank you for sending Defendant's discovery responses and production.

I have reviewed Defendant's responses and am separately sending a Rule 37 meet-and-confer letter regarding deficiencies I have identified. Before scheduling my deposition, I believe the parties should first address those discovery issues and obtain resolution or clarification of the pending issues concerning the protective order and amended complaint.

I reside in Washington, D.C. and will not be traveling to Memphis in the foreseeable future. To the extent a deposition is later scheduled, I am willing to confer regarding either a mutually agreeable location in Washington, D.C., or a remote deposition by Zoom or comparable videoconference platform.

Regards,

Dr. Leigh M. Johnson


On Fri, Apr 24, 2026 at 6:30 PM Vescovo, Steve W. <SVescovo@lewisthomason.com> wrote:

Dr. Johnson, enclosed is a copy of our responses to your request for production of documents and to your Requests for Admissions.  Attached are the documents that we have responsive to the request for production.

We are submitting discovery to you shortly, but I would like to go ahead and get your deposition scheduled.  When in June are you available for your deposition?  Is there a time you will be coming to Memphis?  Please advise.

Let me know if you have any questions.



**Steve Vescovo** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN | P.O. Box | Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

**Gibber, Jamie**

| | |
|---|---|
| **From:** | Vescovo, Steve W. |
| **Sent:** | Friday, May 8, 2026 2:05 PM |
| **To:** | Leigh Johnson |
| **Cc:** | Gibber, Jamie |
| **Subject:** | Johnson -v- CBU    UTI01.10003    Claim:10401294    response to deficiency letters |
| **Attachments:** | Ex B to Separation Agreement.pdf; Incident Report 4.26.2024.pdf; Johnson - Response to Deficiency Letters 4908-3620-2666 v.1.docx |
| **Categories:** | ND: Filed |

Dr. Johnson, enclosed is our response to your latest 20-page letter regarding our discovery responses.  Given the amount of time that is being spent on this case responding, in writing, to your many emails and letters, I think it might be best for us to request a status conference with Magistrate Christoff.

We are editing the protective order we previously sent you.  We will send the revised draft to you over the weekend or on Monday.

Let me know if you have any questions.



**Steve Vescovo** Lawyer
**Lewis Thomason, P.C.**
ONE COMMERCE SQUARE
29TH FLOOR
40 SOUTH MAIN | P.O. Box | Memphis, TN 38103
Tel: 901-525-8721 | Fax: 901-525-6722
Web Page | My Bio

1



Suite 2900, One Commerce Square
40 S. Main Street
Memphis, TN  38103
T:  (901) 525-8721 F:  (901) 525-6722

**Steve W. Vescovo**
DL:  (901) 577-6138
SVescovo@LewisThomason.com

May 8, 2026

*VIA EMAIL drleighmjohnson@gmail.com*

Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010

> **Re:**   ***Dr. Leigh M. Johnson v. Christian Brothers University***
> **District Court for the Western District of Tennessee (Case No. 2:25-cv-02618-BCL-atc)**
> **Our file # UTI01.10003**

Dear Dr. Johnson:

I am writing in response to your April 27, 2026 Letter and your April 28, 2026 supplemental correspondence regarding CBU's discovery responses and production (collectively, your "Letters").  At the outset, we dispute the characterization of CBU's discovery responses as deficient or non-compliant.  CBU conducted a reasonable search, produced responsive, non-privileged and non-protected documents within its possession, and asserted objections expressly permitted by the Federal Rules of Civil Procedure.  Nothing in your letter identifies sanctionable conduct, Rule 26(g) violations, or any basis for extraordinary relief.  Nonetheless, we remain willing to engage in good-faith conferral and supplement our discovery responses where warranted.  As highlighted in CBU's responses, many of your requests were overbroad, unduly burdensome, and not proportional to the needs of the case.  If we could meet and confer on some of the items you raise concerns with, I am confident we can come to an agreement about narrowing the requests in a way that is proportional to the needs of the case and is not unduly burdensome on CBU.

To that end, I have made repeated efforts to confer in good faith on this case and you have refused to discuss anything with us via telephone or video conference.  While CBU is willing to respond in writing where appropriate, the meet-and-confer process contemplated by Federal Rules of Civil Procedure 37 and Local Rule 7.2(a)(1)(B) is intended to be a practical, interactive exchange aimed at narrowing disputes, not an escalating series of lengthy position papers.  The time and expense involved in reading through your 20+ page Letters and preparing this response could have been significantly minimized.  Your Letters and refusal to participate in a telephone or video conference has rendered the meet-and-confer process inefficient and materially impedes the

Dr. Leigh M. Johnson
Page 2

parties' ability to narrow or resolve discovery disputes in a reasonable manner. Oftentimes, things can be misunderstood or misinterpreted in writing, that can easily be explained or discussed through a conversation.

I again invite and urge you to confer with us by telephone or videoconference at a mutually convenient time. If you continue to decline real-time conferral and instead insist on litigating discovery – or other disputes – exclusively through extensive written correspondence, we may be required to seek guidance from the Court regarding the adequacy of your meet-and-confer efforts and the appropriate procedure for addressing any disputes moving forward. I remain willing to meet and confer in good faith and hope that Court intervention will not be necessary.

To address the points in your letter, as to Section I: the documents requested would be subject to the protective order that we have yet to enter with the Court. You cite to Rule 34(b)(2) for the proposition that we need to "identify the categories and approximate volume of withheld materials," but, respectfully, the Rule does not require that. We will supplement our responses to those requests once the Court enters a protective order in this case.

As to Section II, CBU has asserted attorney-client privilege and work-product protection in a limited manner. Rule 26(b)(5)(ii) requires a description of the nature of the documents, communications, or tangible things not produced or disclosed. As part of the retrenchment process, CBU retained counsel (Husch Blackwell) for instructions and guidance on the process. The documents that would be protected under the privileges asserted are emails and memoranda provided by counsel.

As to Section III, you allege that there are several "internal contradictions" in the responses. CBU disputes this assertion. The responses to the requests for admission appropriately admit, deny, or explain matters as framed by your requests. The responses to the requests for production accurately identify responsive documents or provide objections. Rule 34 does not require CBU to create documents, compile summaries, or generate records that do not exist in the ordinary course of business. Many of your requests seek documents that are irrelevant to Plaintiff's claims. For example, all documents related to Dr. Haught's employment are completely irrelevant. Dr. Haught resigned before any classes were ever assigned to him. Again – if you would like to discuss this issue and how it is relevant to your claims, we would be happy to do so.

Additionally, your characterization of the Appendix G.3.e criterion and its applicability or inapplicability is flawed and incorrect. CBU has tried to explain that in more substantive responses, but if you would like to discuss this further, we would be happy to do so.

Regarding the attendees at Plaintiff's termination meeting, we will search for the additional records you identified in your Letters – calendar invitations, scheduling correspondence, and follow-up summaries – to ascertain whether any exist and supplement the response to RFP No. 26 accordingly.

Regarding your issues with CBU's response to RFA No. 24, we will supplement our response to clarify. For your understanding, though, the Faculty Review Committee is a University Committee and its members had the right and obligation to keep members of the Academic VP

www.lewisthomason.com                                        |Knoxville    |Memphis    |Nashville

Dr. Leigh M. Johnson
Page 3

Office, including Dr. Lydia Rosencrants, in the loop about what was going on. There was no requirement that members of the Faculty Review Committee communicate only with members of said committee.

Regarding Section IV, your interpretation of CBU's responses is incorrect. As noted in CBU's objections, CBU is withholding responsive documents that are subject to the protective order we are waiting on the Court to enter. As to your concern about CBU's responses to RFP Nos. 13 and 14, we will supplement the responses to correct the request number referenced in those responses. We did not intend to reference Request No. 12 and recognize they are asking for different things. The Rules do not require an explanation of search methodology, as you request repeatedly throughout your Letters. The Rules certainly do not require a sworn declaration explaining search methodology. Again, there are several documents that you are requesting that are protected under confidentiality. Once we enter a protective order, we will produce those documents. Your speculation regarding what documents "must exist" does not override CBU's representations made under Rule 26(g), especially when not all responsive documents have been produced pursuant to CBU's valid objections – most importantly, the lack of a protective order.

Regarding Section V, Exhibit B must have been inadvertently left off of our previous production. We are attaching it with this letter and will formally supplement our responses as well once the protective order is entered and we are supplementing with those additional documents. The documents requested in Section V, Paragraph D, would be covered under the protective order and responsive documents will be produced at that time. The remaining items (Paragraph B and C) are not relevant to Plaintiff's claims and CBU has objected on those grounds. As to Dr. Haught's employment contract, he never returned to teaching, so any documents related to that are irrelevant. Additionally, Dean Tullia's communications are not responsive to any of the Requests that you identified and are also unrelated to Plaintiff's claims in this lawsuit.

Regarding Section VI, to be clear, you asked questions about Dr. Leib. CBU does not maintain that his retention is related to yours whatsoever. Dr. Leib was not in your department and, accordingly, was not a "comparator" for purposes of retainment. His retainment or non-retainment had no impact on your department, and your retainment or non-retainment had no impact on his.

Regarding VII, your Letter states "Rule 26 permits discovery into preservation steps without a predicate allegation of destruction, particularly where, as here, multiple custodians with material knowledge have left the institution." Respectfully, Rule 26 does no such thing. Additionally, CBU has access to all e-mail accounts of all employees, regardless of current employment status. That is the case regardless of any litigation hold. We have already confirmed preservation repeatedly.

Regarding VIII, as raised in CBU's responses to your requests, these requests are overly broad, unduly burdensome, and not proportional to the needs of the case. In your Letters you identify at least seven (7) e-mail addresses that you would like searched. CBU is happy to search these e-mail accounts and produce responsive, non-privileged documents. In order to do so an a way that is not overly burdensome and proportional to the needs of the case, we need further

Dr. Leigh M. Johnson
Page 4

clarification on both the timeline and search terms you believe are reasonable. This is where having a discussion is essential to the meet-and-confer process.

Regarding Section IX, you seek supplementation of several "deficient" responses, but responses and documents were provided. Again, your speculation regarding what documents "must exist" does not override CBU's representations made under Rule 26(g), especially when not all responsive documents have been produced given the lack of protective order. If unprotected documents were not produced, they were not located at this time or are subject to one of CBU's other objections (most relevant, the overly burdensome nature of the requests and the requests not being proportional to the needs of the case). We are having IT search for the communications you reference in Paragraph D and E. Once we receive those, we will review and produce any responsive, non-privileged communications. Regarding Paragraph E, the incident report from the referenced incident is attached here. We are also having IT search for emails from that day, but at this point, we do not have any additional responsive documents. You have not issued any formal request regarding any CBU policies that would be implicated by a social media post, so no response to that informal request is warranted. We are searching for responsive documents to Paragraph G and H and will supplement if any are located. In Paragraph I, you state that CBU's objections are not sufficient because "Former President David Archer is a central decisionmaker in this case." Respectfully, that does not make his resignation or separation from CBU relevant to the issues in this case. Your Letters do not state anything that would establish otherwise.

You also repeatedly request that CBU produce spreadsheets and similar materials in native format. We would direct you to the Parties' Rule 26(f) Report filed with the Court, specifically Section III, Paragraph h. As set forth therein, CBU was entitled to disclose and produce ESI in hardcopy or static form. It goes on to state that a party may request disclosure of metadata or native files for particular documents "**where good cause has been demonstrated** (e.g., when the original creation date of a document is an issue and disputed) or when a static image is not reasonably usable[.]" Your Letters do not satisfy that standard. If you would like to renew that request with supplemental information, we would be happy to consider that at any point.

Finally, your April 28 Letter advances speculative accusations regarding "non-original-source" documents, "ad hoc forwarding," and supposed flaws in CBU's collections process. These accusations are unfounded and inappropriate. The native-format request has already been addressed above. It is unclear what records you are requesting related to the webpages that we have previously produced or why those are necessary in light of what has already been produced. Regarding Paragraph D of that Letter, we have already advised that many documents have not been produced given that we are waiting for the entry of a protective order. Additionally, we have identified several materials within this letter that we are continuing to search for. Regarding the remainder of your issues raised, respectfully, you are not entitled to a detailed roadmap of CBU's internal collection processes, custodians, or search terms at this stage. We are willing to continue working with you to identify and produce any relevant, responsive, non-privileged documents.

Again – CBU denies that its discovery responses are deficient or sanctionable. However, consistent with Rule 26(e), CBU will supplement its responses if and when additional discoverable, non-privileged materials are identified. Obviously, CBU will also supplement its responses after the Court resolves the pending protective-order issue. We remain willing to confer

Dr. Leigh M. Johnson
Page 5

further in good faith, but urge you to reconsider your refusal to communicate verbally – as that will likely expedite things and help both sides clearly communicate regarding the discovery needs in this case.  Please advise if you will reconsider.

Respectfully,

**LEWIS THOMASON, P.C.**


Stephen W. Vescovo

Enclosures

Cc:    Jamie Gibbber

April 27, 2026

Stephen W. Vescovo, Esq.
Jamie Gibber, Esq.
Lewis Thomason, P.C.
2900 One Commerce Square
40 South Main Street
Memphis, Tennessee 38103

*Via electronic mail to:* svescovo@lewisthomason.com; jgibber@lewisthomason.com

**Re:**   *Johnson v. Christian Brothers University*, **No. 2:25-cv-02618-BCL-atc (W.D. Tenn.)**

**Plaintiff's Rule 37 Letter Regarding Deficiencies in Defendant's Responses to First Requests for Production and First Requests for Admission**

Dear Counsel:

I write pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.2(a)(1)(B) to confer with you regarding multiple deficiencies in Defendant's Responses to Plaintiff's First Requests for Production ("RFP Responses") and Defendant's Answers to Plaintiff's First Requests for Admission ("RFA Answers"), both served on April 24, 2026. The deficiencies are substantial and, in several instances, squarely contradicted by Defendant's own production. I note that Defendant's responses were certified under Federal Rule of Civil Procedure 26(g)(1). Plaintiff requests that Defendant cure those deficiencies outlined below.

As I have stated previously, I remain willing to confer promptly and in good faith by written correspondence. I respectfully ask that Defendant's counsel address the issues below in writing by **5:00 p.m. Eastern / 4:00 p.m. Central on Friday, May 8, 2026**. If Defendant does not provide a written response addressing or curing each item below, I intend to seek relief from the Court, including a motion to compel under Rule 37(a) and any other appropriate relief. I reserve all rights.

**I. Documents and Communications Withheld Pending Protective Order**

Defendant repeatedly states that it will supplement its production once a protective order is entered. See, e.g., Responses to RFP Nos. 4, 5, 12, 15, 20, 25, and 49. CBU's responses to RFP Nos. 14 and 18 present an additional problem: the objections invoke protective-order-based withholding, but the responses then state that no responsive or additional responsive documents exist. At minimum, Defendant must clarify whether it is withholding any documents on this basis or whether it represents, after reasonable search, that no such documents exist.

I do not object to producing materials that warrant confidentiality protection pursuant to a protective order, but the pendency of competing proposed protective orders does not relieve Defendant of its obligations under Rule 34(b)(2), nor does Defendant's own objection to Plaintiff's proposed protective order justify withholding production indefinitely. Plaintiff recognizes that the competing protective order proposals remain pending before the Court, but that procedural posture does not excuse Defendant's failure to identify the categories and approximate volume of withheld materials, nor does it relieve Defendant of its obligation to produce documents that do not require protective-order treatment. Defendant must, at a minimum, identify with specificity the categories of withheld materials so that I can evaluate whether the asserted basis for withholding is appropriate.

Plaintiff requests that Defendant: (1) identify by category and approximate volume the materials withheld on this basis; (2) provide a date certain by which the supplemental production will be completed (I propose seven days after entry of the order); and (3) confirm in writing that, upon entry of any protective order in this case, Defendant will produce all responsive documents previously withheld on that basis.

## II. Privilege Log

Defendant asserts the attorney-client privilege and/or work-product doctrine in response to RFP Nos. 7, 8, 9, 10, 31, 32, 45, 46, and 47. Yet, Defendant has not produced a privilege log.

Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party withholding information on the basis of privilege or work product "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." My Instructions specifically required a privilege log identifying, at minimum, the date, author, recipient(s), general subject matter, and basis for the claim. *See* Plaintiff's First Requests for Production, Instruction No. 4.

Plaintiff also notes that Defendant's responses to RFP Nos. 8, 9, and 10 do not merely assert privilege; they affirmatively represent that "CBU submits it followed the advice of its outside counsel to ensure it complied with applicable state and federal law." To the extent Defendant intends to rely on counsel's advice as a justification for its treatment of Appendix G.3.e criterion (3), that reliance may affect the scope of any applicable privilege. Plaintiff reserves all rights on that issue.

Plaintiff requests a Rule 26(b)(5)(A)-compliant privilege log identifying every document being withheld on the basis of privilege or work product, by the deadline indicated above.

### III. Internal Contradictions Between Defendant's Production, Its RFA Answers, and Its RFP Responses

#### A. Reassignment of Plaintiff's Spring 2024 course to Paul Haught

Defendant asserts in RFA Answer No. 20 that "Dr. Haught's contract provided that after he left his administrative position, he was to return to his tenured teaching position in the religion and philosophy department." That claim is difficult to reconcile with Defendant's contemporaneous production.

In the email chain produced by Defendant at CBU-069–076, Dean Tullia asked Wallace on November 15, 2023 whether it was time "to take Leigh's name off of one of the 5 courses in the Spring and to re-assign that course and PHIL 219 to Paul Haught?" In that same chain, Wallace later wrote that he was "waiting on something from Paul first and foremost" and that Haught "said something about needing to clarify some things about his new contract." Those communications indicate that not only were Plaintiff's courses already in the process of being reassigned to Dr. Haught before Plaintiff was terminated, but also that Haught's contractual status and alleged return-to-faculty "rights" were still undetermined at the time Plaintiff was being considered for termination and contemporaneous with the reassignment of Plaintiff's Spring 2024 course assignment to Haught.

Plaintiff is therefore entitled to Dr. Haught's then-existing (2023-2024) contract, any proposed or draft "new contract," any amendments or transition memoranda, and all communications between September 2023 and December 2023 concerning the contractual basis asserted for his return to a full-time faculty position in the Department of Religion and Philosophy.

Plaintiff requests production of Dr. Haught's administrative or executive contract, any amendments, any side letters or transition memoranda concerning his return to faculty, all communications referring to the alleged return-to-faculty provision, and any documents indicating how any change to Dr. Haught's contract affected existing tenured-faculty rights secured by the Faculty Handbook. RFP No. 27 calls for these documents.

#### B. Whether Appendix G.3.e criterion (3) was treated as inapplicable

The Presidential Charge to Chairs and Deans (ECF 33-1, PageID 186–87) speaks for itself. It states both that "criteria 3 is not applicable," and then gives the operative instruction: "For this reason, recommendations relating to faculty retention should be made irrespective of gender and race." These phrases from the Presidential Charge were quoted, verbatim, in RFAs 1 and 2.

Defendant cannot both deny that the Presidential Charge made criterion (3) inapplicable and deny that it instructed decisionmakers to disregard gender and race in retention recommendations when the document says both things. Plaintiff therefore requests that Defendant supplement its RFA Answers and additionally produce all non-privileged documents concerning the drafting, approval, interpretation, or implementation of that document, including any communications concerning whether or how Appendix G.3.e criterion (3) was to be applied during the retrenchment process.

**C. Documents identifying attendees at Plaintiff's December 7, 2023 termination meeting**

Defendant's RFP Response No. 26 states there are no documents sufficient to show the attendees at my December 7, 2023 termination meeting. That answer is contradicted by Defendant's own document at CBU-202, which appears to identify President Archer as the presenter for the meeting at which my Separation and Transition Agreement was "PRESENTED…ON 12/7/2023." The same document identifies the presenters for the corresponding meetings of every other faculty member then identified for non-reappointment.

Plaintiff requests that Defendant supplement RFP No. 26 to produce any additional records (calendar invitations, scheduling correspondence, follow-up summaries) that identify or were used to identify attendees at the December 7, 2023 termination meetings, including Plaintiff's.

**D. Communications between FRC Chair Geis and individuals outside the Faculty Review Committee**

Defendant's answers to RFA Nos. 24 and 25 are irreconcilable. RFA No. 24 asked whether FRC Chair Geis communicated with individuals outside the Faculty Review Committee regarding Plaintiff's appeal during its pendency. Defendant's answer admits only that "Chair Scott Geis communicated with certain members of the Faculty Review Committee regarding scheduling during the appeal" — addressing communications *within* the committee, not the communications *outside* it that the request actually asked about. Yet in the very next answer, Defendant admits RFA No. 25: that Vice-Provost Rosencrants communicated with FRC Chair Geis regarding Plaintiff's appeal during its pendency.

Rosencrants is not a member of the Faculty Review Committee. She is a senior administrator outside the committee. Defendant cannot admit in RFA No. 25 that Geis communicated with a non-member administrator about Plaintiff's appeal and simultaneously avoid admitting in RFA No. 24 that Geis communicated with individuals outside the committee.

Plaintiff requests that Defendant supplement its answer to RFA No. 24 to address communications between FRC Chair Geis and individuals outside the Faculty Review Committee, including but not limited to Vice-Provost Rosencrants, and produce all documents, emails, video recordings, and notes reflecting such communications. This request reinforces, and is independently supported by, the FRC-related production gaps identified in Section VIII of this letter.

## IV. Implausible "No Documents" Claims

Defendant's responses to Plaintiff's First Requests for Production repeatedly direct Plaintiff to the same broad Bates ranges — principally CBU-058–083 and CBU-201–205 — without identifying which specific documents within those ranges Defendant contends are responsive to which specific requests. CBU-058–083 consists primarily of emails concerning the reassignment of Plaintiff's Spring 2024 course to Dr. Haught and a copy of the Separation and Transition Agreement. CBU-201–205 were produced as flattened images rather than in native format, rendering them largely unusable for the comparative analysis they purport to support. Defendant has not identified any specific Faculty Handbook provision that it contends authorized the particular selection decisions at issue, nor has it produced documents showing how the relevant Handbook criteria were applied to Plaintiff or to the retained faculty members.

Despite the repeated cross-referencing of these same document ranges, Defendant responds to numerous other RFP requests by stating that no responsive documents exist. These responses are facially implausible in light of (a) Defendant's own RFA Answers describing how retention decisions were made, and (b) the Retrenchment Committee Report at CBU-215 through CBU-218.

### A. Comparator and criteria-application documents (RFP Nos. 12, 13, 14, 16, 17, and 18)

RFP Nos. 12, 13, and 14 seek distinct categories of documents concerning the retrenchment decisions.

 i. RFP No. 12 requests all documents concerning the selection of faculty members for termination or retention within the Department in 2023.

 ii. RFP No. 13 requests the working documents of any comparative process — including ranking sheets, comparison charts, score sheets, matrices, worksheets, notes, draft recommendations, or similar documents — used to compare Department faculty for purposes of retention or termination.

 iii. RFP No. 14 requests documents reflecting the application of the Handbook's retention criteria — tenure, Christian Brother status, merit, versatility, seniority, or

institutional goals regarding women, women religious, and members of minority races — as applied to Plaintiff or any other faculty member in the Department.

These are not duplicative requests. RFP No. 12 asks what selection/retention documents exist; RFP No. 13 asks what comparative tools or working documents were used; and RFP No. 14 asks how, if at all, the Handbook criteria were applied. Defendant's responses do not answer these requests as written.

RFP Response No. 12 refers Plaintiff to CBU-058–083 and CBU-201–205 and states that Defendant will supplement once a protective order is entered. As noted above, CBU-058–083 consists primarily of emails about the Haught course reassignment and the Separation and Transition Agreement — neither of which concerns the selection of faculty for termination or retention — and CBU-201–205 were not produced in native format. This does not satisfy Defendant's obligation under Rule 34(b)(2)(C) to state whether any responsive documents are being withheld. The cross-reference to broad, largely unresponsive Bates ranges is not a substitute for identifying specific documents that address the request as written.

Defendant's responses to RFP Nos. 13 and 14 present additional problems. Both responses contain apparent cross-referencing errors: RFP Response No. 13 states that "CBU does not possess any documents responsive to Request No. 12," and RFP Response No. 14 states that "CBU does not possess any additional documents that would be responsive to Request No. 12." Neither response addresses the request to which it is nominally responding. These are three distinct requests calling for three distinct categories of documents. Defendant's treatment of them as interchangeable — to the point of answering two of them by reference to a third — undercuts any representation that Defendant conducted a reasonable, request-specific search. At minimum, Defendant must provide a response to each of RFP Nos. 13 and 14 that addresses those requests as written, states clearly whether Defendant possesses responsive documents, and identifies any documents being withheld.

RFP No. 14 requests documents reflecting the application of the Handbook-mandated criteria of (1) tenure or status as a Christian Brother, (2) merit, versatility, and seniority, and (3) institutional goals with regard to women, women religious, or minority races to Plaintiff or any other faculty member in the Department of Religion and Philosophy. Defendant objects to producing documents related to faculty non-retainment until a protective order is entered. But Defendant answered RFA No. 16 by representing that CBU "followed the Faculty Handbook's guidance on the retrenchment process, took into account recommendations by chairs and deans, and then made a decision based on the factors set forth in the Handbook." If Defendant applied the Handbook's factors to reach the decision to terminate Plaintiff's position, documents reflecting that application either exist or they do not. Defendant cannot simultaneously represent that it followed a criteria-based process and claim that no documents reflect that process.

RFP Nos. 16, 17, and 18 each seek basic employment and comparator information — name, sex, rank, tenure status, discipline, teaching assignments, course load, and employment status — for Department of Religion and Philosophy faculty and the five named comparators. Defendant responds to all three by citing the same unusable Bates ranges (CBU-058–083 and CBU-201–205) and stating that CBU "does not have documents" with the requested information or "does not have documents responsive to this request." These responses are difficult to reconcile with CBU's ordinary possession of employment and appointment records for its own faculty and with Defendant's own RFA Answers, including its representation in RFA Answer No. 8 that Bruce Cinquegrani "operates under a year-to-year contract" and its representation in RFA Answer No. 16 that CBU "followed the Faculty Handbook's guidance," "took into account recommendations by chairs and deans," and made decisions "based on the factors set forth in the Handbook." Faculty contracts, appointment letters, course-load records, rank/tenure records, and similar documents either exist or they do not; they should be produced or affirmatively identified as nonexistent after reasonable search. To the extent any documents responsive to these requests are being withheld pending entry of a protective order or on personnel-privacy grounds, Defendant should say so expressly rather than representing that no responsive documents exist.

The Retrenchment Committee Report underscores the need for supplementation. The Report states at CBU-216 that "[t]he Committee carefully identified positions for retrenchment, considering various criteria such as student enrollment in programs, credit hour production per school and department, class size and capacity, employment outcomes, the vision communicated by the President, and the charges to the Committee." That statement strongly suggests the existence of underlying analyses or data on which the Committee relied to identify the 26 positions listed at CBU-217. Those underlying materials are responsive to Plaintiff's requests.

Plaintiff requests that Defendant: (1) provide responses to RFP Nos. 13 and 14 that address those requests as written, rather than by cross-reference to RFP No. 12; (2) clarify whether documents responsive to RFP Nos. 12, 13, 14, 16, 17, and 18 are being withheld pending entry of a protective order or on any other asserted basis; (3) produce all responsive, non-privileged documents; (4) identify by Bates number any documents Defendant contends are responsive to each of RFP Nos. 12, 13, 14, 16, 17, and 18; and (5) confirm that Defendant has searched for the underlying materials referenced or implied by the Retrenchment Committee Report, including enrollment-by-program data, credit-hour-production reports, class-size/capacity data, employment-outcome data, comparator analyses, department-by-department recommendations, ranking sheets, score sheets, matrices, or similar working documents. If Defendant contends that no responsive documents exist for any of these categories, Plaintiff requests that Defendant state that expressly after reasonable search and identify the custodians, repositories, date ranges, and search methods used.

**B. Retrenchment Committee working materials (RFP Nos. 4 and 5)**

Independent of the criteria-application gaps identified above, Defendant's production is also deficient with respect to the Retrenchment Committee's own working materials. Defendant has produced the Retrenchment Committee Report at CBU-215–218, which states that the committee met from October 13 to October 26, 2023, and reflects votes by the voting members on at least nine separate motions. A two-week, thirteen-member committee that votes on at least nine separate motions would ordinarily be expected to generate contemporaneous written materials beyond a final report.

Plaintiff requests production of all materials responsive to RFP Nos. 4 and 5, including (1) the committee's written charge of October 13, 2023; (2) agendas, meeting notes, minutes, and audio/video recordings; (3) drafts of the report and any earlier or alternative position lists; (4) data sets, enrollment summaries, credit-hour reports, and program reviews provided to or generated by the Retrenchment Committee; (5) any tally sheets, rankings, or score sheets used to identify the faculty positions eliminated; (6) email communications among committee members during the committee's pendency; and (7) any audio recordings, transcripts, minutes, notes, or chat logs of meetings. If Defendant contends that any subset of these categories does not exist, it must state so for each category.

**C. Blanket "none" responses to requests concerning institutional decision-making (RFP Nos. 11, 22, 29, 30, 37, 42, 43)**

RFP Response No. 11 (instruction or discussion that retention was based on seniority alone) — "none." RFP Response No. 22 (comparison of Karl Leib to other terminated faculty) — "none." RFP Response No. 29 (consideration of reinstatement, reassignment, or alternative employment for Plaintiff) — "none." RFP Response No. 30 (effort, or decision not to make any effort, to find alternative employment) — "none." RFP Response No. 37 (decision not to pay severance and not to continue the FRC process) — "none." RFP Response No. 42 (Plaintiff's May 11, 2024 retrieval of belongings) — "none." RFP Response No. 43 (instruction to campus safety regarding Plaintiff in May 2024) — "none."

Most of these "none" responses concern Defendant's own institutional decision-making during specific, identifiable events. Several are directly contradicted by Defendant's own RFA Answers: RFA Answer No. 13 describes specific comparative reasoning applied to Karl Leib's retention, yet RFP No. 22 claims no documents exist reflecting any such comparison. RFA Answer No. 27 admits that Plaintiff's FRC appeal was never heard after she revoked the severance agreement, yet RFP No. 37 claims no documents exist concerning the decision to abandon that process. RFA Answer No. 30 admits that campus safety personnel were involved in Plaintiff's retrieval of her belongings, yet RFP Nos. 42 and 43 claim no documents exist concerning that event or any instruction to campus safety. The blanket assertion that no email, memorandum, calendar entry, security log, talking-point document,

or note exists for any of these decisions is difficult to credit without any description of the search conducted. Plaintiff requests that Defendant either (1) supplement each of these responses with all responsive documents, or (2) provide a sworn declaration explaining what was searched and why no documents were located.

## V. Specifically Identified Documents Referenced by Defendant That Have Not Been Produced

### A. The Decisional Unit List (Exhibit B to the Separation and Transition Agreement)

The executed Separation and Transition Agreement at CBU-077 to CBU-083 expressly identifies "Exhibit B – Decisional Unit List" as an enclosure to the Agreement. See CBU-083, at page 7 of the Agreement. I have reviewed Defendant's production. Exhibit B has not been produced.

The Decisional Unit List is a specifically identified document referenced in Defendant's own production. It is directly relevant to determining the group of employees selected and not selected for termination, and to testing Defendant's asserted rationales for its selection decisions. The document is also required disclosure under the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1)(H), in connection with the release of ADEA claims included in the Separation and Transition Agreement. The OWBPA disclosure must include the job titles and ages of all individuals eligible or selected, and the job titles and ages of all individuals in the same job classification or organizational unit who were not selected.

Plaintiff requests that Defendant produce Exhibit B to the Separation and Transition Agreement (the Decisional Unit List) in native format if available, subject to any protective-order treatment the Court may enter. This is a specifically identified document referenced in CBU's own production that has not been produced. To the extent Defendant intends to assert that no Decisional Unit List was prepared, Defendant should so state in writing, and I reserve all rights in connection with that representation.

### B. Paul Haught's contract and any documents reflecting his contractual right to return to a faculty position

As discussed in Section III.A above, Defendant's RFA Answer No. 20 places Dr. Haught's administrative or transition contract directly at issue. Plaintiff's production demands for these documents are set forth in Section III.A and are incorporated here by reference. RFP No. 27 calls for these documents.

### C. Tullia's "folio" of communications regarding Plaintiff

At CBU-061, Dean Tullia wrote to Vice-Provost Rosencrants on December 29, 2023 that, on January 2, 2024, she would "forward a folio with a larger sample of conversations"

concerning me and would copy Department Chair James Wallace, with a "formal request that the supervision of Dr. Leigh Johnson either be moved to my purview or to yours, for the remainder of her contract." The folio is responsive to RFP Nos. 4–5, 12, 18, and 38, and I have not located it in the production.

Plaintiff requests production of the folio identified in CBU-061 and all related communications between Tullia, Rosencrants, and Wallace concerning the supervision or oversight of Plaintiff.

### D. Faculty employment contracts of Department of Religion and Philosophy faculty, including Bruce Cinquegrani

As discussed in Section IV.A, Defendant's responses to RFP Nos. 14, 16, 17, and 18 fail to produce basic employment and comparator documents for Department faculty. This deficiency is particularly acute with respect to Bruce Cinquegrani, whose contractual terms Defendant has placed squarely at issue: RFA Answer No. 8 represents that he "operates under a year-to-year contract," and RFA Answer No. 9 asserts his chaplain and ministerial duties as the basis for differentiating his retention from Plaintiff's termination. Defendant cannot simultaneously rely on those contractual terms and claim that no documents reflect them. Plaintiff requests production of: (1) Mr. Cinquegrani's faculty employment contracts for academic years 2018–2019 through 2024–2025, including annual appointment letters, renewal notices, position descriptions, and amendments; (2) any separate appointment or document setting forth his chaplain or ministerial duties; (3) any documents reflecting whether his retention was treated as a faculty-retention decision under Appendix G or as a non-faculty decision; (4) any communications among the Retrenchment Committee, President, Provost, Dean, or Department Chair concerning his retention; and (5) for the same reasons, faculty employment contracts for the other Department faculty members named in or implicated by Defendant's production — James Buchanan Wallace, Philip Maloney, Scott Geis, Emily Holmes, Burt Fulmer, and Paul Haught — for academic years 2018–2019 through 2024–2025.

## VI. The Karl Leib Retention: Documents Supporting Defendant's Affirmative Comparator Rationale

Defendant's RFA Answer No. 13 offers specific factual rationales for retaining Dr. Leib, including an asserted accreditation requirement, seniority over two male department members, and departmental gender composition. Because Defendant has affirmatively invoked these facts to justify retaining Dr. Leib during the same retrenchment process, I am entitled to documents sufficient to test those asserted rationales.

### A. Scheduled termination meeting and decision not to terminate Dr. Leib.

Plaintiff requests production of documents reflecting Dr. Leib's scheduled December 7, 2023 termination meeting, any cancellation of that meeting, and the decision not to terminate him, including communications among administrators, the Retrenchment Committee, the President, the Provost, the Dean, the Department Chair, or counsel. To the extent Defendant withholds any responsive documents pending entry of a protective order, it should identify them by category and approximate volume consistent with Section I of this letter.

**B. Asserted accreditation requirement.**

Defendant asserts in RFA Answer No. 13 that "CBU had to retain at least one full-time faculty member in the department for accreditation." This is a specific factual claim that either rests on an identifiable accreditation standard or it does not. SACSCOC—CBU's regional accreditor—publishes its standards, and any accreditation requirement that compelled the retention of a specific faculty member in a specific department would be documented in those standards, in SACSCOC correspondence with CBU, or in CBU's own internal accreditation compliance analyses.

Plaintiff requests production of: (1) the specific SACSCOC standard, or standard of any other accrediting body, that Defendant contends required retention of at least one full-time faculty member in the Department of History and Political Science; (2) any internal analysis, memorandum, email, or communication in which CBU identified or discussed this accreditation requirement in connection with the 2023 retrenchment decisions; and (3) any correspondence between CBU and SACSCOC (or any other accrediting body) concerning faculty staffing levels in the Department of History and Political Science. To the extent no such documents exist, Defendant should say so expressly in writing.

**C. The "other 2 male department members."**

Defendant asserts that Dr. Leib had seniority over "the other 2 male department members." Plaintiff requests documents sufficient to identify those two individuals, whether and how their gender was considered in retrenchment decisions, and showing their rank, tenure status, hire dates, years of service, disciplines, and teaching assignments.

**D. Application of Appendix G.3.e criteria.**

Defendant asserts in RFA Answer No. 16 that retention decisions were made by application of the criteria set forth in the Faculty Handbook. Plaintiff requests documents sufficient to show whether and how Appendix G.3.e criteria—including tenure, Christian Brother status, merit, versatility, seniority, and institutional goals regarding women, women religious, and minorities—were applied to Dr. Leib and to other faculty in his department.

**E. Status of the relevant programs.**

Defendant's production identifies Political Science at CBU-217 as a program that "may need to be eliminated or paused," while Defendant's answer to RFA No. 15 denies that the Political Science major was discontinued on the ground that "Political Science was only a minor, not a major," and further states that "Political Science and History classes are still taught at CBU."

Plaintiff requests documents sufficient to show the current status of the History major, Political Science minor, and any related courses or programs affected by the 2023 retrenchment process, including the Philosophy major and minor within the Religion and Philosophy department. Specifically, Plaintiff requests documents showing all courses previously taught by tenured faculty in History, Political Science, Religion, and Philosophy that were subsequently replaced in the academic year following retrenchment (i.e., Academic Year 2024-2025) by adjunct faculty.

### F. Departmental gender composition.

Defendant volunteered in RFA Answer No. 13 that there were "no females" in Dr. Leib's department as part of its explanation for his retention. Plaintiff requests documents sufficient to show whether and how departmental gender composition was considered in connection with any retrenchment or retention decision, including but not limited to the Department of History and Political Science and the Department of Religion and Philosophy.

## VII. Custodians, Litigation Hold, and Preservation

Defendant's objections to RFP Nos. 44, 45, 46, and 47 assert that, because I have not "alleged" that records have been destroyed, the requested information is irrelevant. That is not the standard. Rule 26 permits discovery into preservation steps without a predicate allegation of destruction, particularly where, as here, multiple custodians with material knowledge have left the institution. By Defendant's own production: David Archer is no longer President; Dr. Paul Haught resigned in late 2023; and Dr. Benjamin Jordan has not been employed by Defendant for approximately two years (RFP Response No. 35).

Defendant's assertion that "Counsel has already confirmed that the litigation hold was communicated and upheld" is not a substitute for the disclosures required under RFP Nos. 44–47. A naked assertion that a hold was issued does not identify when, by whom, to whom, with what scope, or whether departing custodians' files were placed under preservation. The gaps in Defendant's production identified in Section VIII of this letter — where specific, identified emails sent to and from multiple @cbu.edu accounts are absent from the production — underscore the need for this information. Plaintiff requests that Defendant supplement these responses with: (1) the date or dates of issuance of any litigation hold concerning my claims or this action; (2) the categories of personnel to whom the hold was directed; (3) the scope of the

hold (subjects, time periods, custodial sources); (4) the steps taken to preserve email, network, shared-drive, and device data of departing or departed personnel, including but not limited to David Archer, Lydia Rosencrants, Paul Haught, Scott Geis, Tawny Tullia, Ron Brandon, Philip Maloney, James Wallace, members of the Faculty Review Committee, and members of the Retrenchment Committee; and (5) whether ordinary deletion, decommissioning, or account-deactivation processes were suspended or modified for those custodians.

I am not, at this stage, alleging spoliation. The point of these requests is to confirm preservation, not to litigate destruction. Defendant's objection conflates the two.

## VIII. Faculty Review Committee Documents in Plaintiff's Possession That Are Absent from Defendant's Production

In reviewing Defendant's production against my own files, I have identified specific documents — on each of which I was a named recipient or was copied — that are responsive to multiple RFP requests and are absent from Defendant's production. These documents were sent to and from CBU email accounts (addresses ending in @cbu.edu) and should exist in the email accounts of multiple current or recently departed CBU employees whose accounts remain under Defendant's custody and control. Their absence from the production raises serious questions about whether Defendant conducted an adequate search of the relevant custodians' email accounts for FRC-related communications.

### A. Geis-to-Plaintiff and Geis-to-FRC correspondence (December 20, 2023 through January 23, 2024)

I possess copies of a chain of emails between FRC Chair Scott Geis (sgeis@cbu.edu) and me (leigh.johnson@cbu.edu), with copies to one or more FRC members at their @cbu.edu addresses, dated December 20, 2023; January 3, 2024; January 10, 2024 (three emails); January 18, 2024; and January 23, 2024 (two emails). These emails concern the scheduling, postponement, rescheduling, and conditions of my FRC appeal hearing. These documents are responsive to RFP No. 33 and RFP No. 34. Defendant's production at CBU-206 through CBU-210 includes some FRC correspondence but does not include the full chain identified above. To the extent any of these documents were withheld as already in my possession, that is not a valid basis for non-production under Rule 34.

### B. Jordan email of January 26, 2024

I possess a copy of an email from FRC member Benjamin R. Jordan (ben.jordan@cbu.edu) to Faculty Assembly President Philip Maloney (pmaloney@cbu.edu), with copies to FRC members Ali Pourhashemi (apourhas@cbu.edu), James Aflaki (jaflaki@cbu.edu), Juliette M. Paul (Juliette.Paul@cbu.edu), and me (leigh.johnson@cbu.edu), and to FRC Chair Scott Geis (sgeis@cbu.edu), dated January 26, 2024, 7:40 PM, Subject: "Re: Faculty Review

Committee Hearing - January 26, 2024." This email concerns the FRC Chair's communications with persons outside the committee regarding my appeal and the FRC's handling of my appeal process. It is directly responsive to RFP Nos. 33, 34, and 35.

This email was sent from and received at multiple @cbu.edu email accounts. Defendant's assertion that "Dr. Ben Jordan has not been employed by CBU for approximately two years" does not excuse the failure to search the accounts of pmaloney@cbu.edu, sgeis@cbu.edu, apourhas@cbu.edu, jaflaki@cbu.edu, and Juliette.Paul@cbu.edu — all of whom received this email on CBU's own mail servers.

### C. Maloney email of January 29, 2024

I possess a copy of an email from Faculty Assembly President Philip Maloney (pmaloney@cbu.edu) to me and Benjamin R. Jordan, with copies to all FRC members and FRC Chair Geis, dated January 29, 2024, 10:56 AM, Subject: "Re: Faculty Review Committee Hearing - January 26, 2024." This email concerns Maloney's direct communications with FRC Chair Geis and Vice President Rosencrants regarding my appeal. It is responsive to RFP Nos. 33, 34, and 36. It was sent from pmaloney@cbu.edu and received at multiple CBU accounts. It has not been produced.

### D. Jordan email of January 31, 2024

I possess a copy of an email from FRC member Benjamin R. Jordan (ben.jordan@cbu.edu) to Philip Maloney and me, with copies to all FRC members and FRC Chair Geis, dated January 31, 2024, 4:37 PM, Subject: "Re: Faculty Review Committee Hearing - January 26, 2024." This email concerns the FRC's internal deliberations, the FRC Chair's procedural decisions regarding the scope of my appeal, and the FRC Chair's communications with persons outside the committee regarding my appeal and related matters. It is responsive to RFP Nos. 33, 34, 35, and 36. It was sent from ben.jordan@cbu.edu and received at pmaloney@cbu.edu, sgeis@cbu.edu, and the @cbu.edu accounts of three other FRC members. It has not been produced.

The absence of these identified documents suggests that Defendant did not search all relevant custodial accounts for communications responsive to RFP Nos. 33, 34, 35, and 36. This deficiency connects directly to Section VII of this letter: my requests for information about custodians and repositories searched remain unanswered, and the gaps identified here demonstrate precisely why those requests are necessary.

Plaintiff requests that Defendant: (1) search the CBU email accounts of Scott Geis, Philip Maloney, Ali Pourhashemi, James Aflaki, Juliette Paul, Lydia Rosencrants, and Benjamin Jordan (to the extent preserved) for all communications responsive to RFP Nos. 33, 34, 35, and 36; (2) produce all responsive, non-privileged documents; and (3) identify in writing the custodians and

repositories actually searched for FRC-related documents and the search terms, date ranges, and methods used.

To the extent not previously identified in Plaintiff's Rule 26(a)(1) Initial Disclosures, Plaintiff hereby identifies the documents described in Sections VIII.A through VIII.D as documents in Plaintiff's possession, custody, or control that Plaintiff may use to support her claims. Plaintiff will supplement her Rule 26(a)(1) disclosures accordingly. Plaintiff's possession of some responsive communications does not relieve Defendant of its independent obligation to conduct a reasonable search and produce responsive documents from Defendant's own custodians, systems, and repositories.

## IX. Specific Deficient or Missing Responses

In addition to the items above, the following responses are independently deficient and should be supplemented:

A. **RFP No. 7 (versions, drafts, comments, attachments, and communications concerning the October 31, 2023 Presidential Charge).** Defendant cites CBU-024–031 and CBU-058–083. Those materials do not appear to include earlier drafts, edits, comments, attachments, or communications concerning the drafting or approval of the October 31, 2023 Presidential Charge. The request reaches those materials. Supplement required.

B. **RFP No. 19 (Emily Holmes resignation).** Defendant objects that Holmes's resignation came "after all retrenchment decisions were made." Defendant's own production contradicts that objection twice. CBU-058 is Holmes's formal resignation letter dated April 10, 2024, which states: "This letter confirms my intent as initially indicated in my email of December 7, 2023, to David Archer and Lydia Rosencrants." CBU-067 contains that referenced email. In it, Holmes wrote to Archer and Rosencrants at 7:40 AM on December 7, 2023 stating that she would not be continuing at CBU past May. Holmes's intent to depart was known to Archer and Rosencrants before the termination meetings that day, not "after all retrenchment decisions were made." Defendant's RFP Response No. 19 directed me only to CBU-058 and did not identify CBU-067 as responsive, even though CBU-067 is in Defendant's own production and is directly responsive to the request. The request reaches all documents concerning Holmes's resignation, including any discussion of its effect on department composition, faculty coverage, or retrenchment decisions. Supplement required.

C. **RFP No. 34 (communications between FRC members and any administrator, dean, chair, HR, board representative, faculty member, or counsel concerning my appeal).** No substantive response. Defendant's response contains only an

objection and no response at all. That is not a proper response under Rule 34(b)(2)(C). As detailed in Section VIII above, I have identified specific responsive communications that were sent to and from CBU email accounts and are absent from the production. A substantive response is required, including identification of any responsive documents withheld and the basis for any privilege claim, and production of all non-privileged responsive materials.

D. **RFP No. 35 (all documents and communications by or involving FRC member Benjamin Jordan concerning my appeal, December 15, 2023 through February 15, 2024).** Defendant states it is "continuing to search" because Jordan is no longer employed by CBU. As detailed in Section VIII above, I have identified at least two emails sent by Jordan from ben.jordan@cbu.edu to multiple CBU email accounts within the specified date range. Defendant's inability to locate Jordan's emails is irrelevant to searching the accounts of the CBU employees who received his emails. Supplement required.

E. **RFP Nos. 39, 40, and 41 (April 26, 2024 Classroom-Removal Incident).** Defendant's response to RFP No. 39 is deficient. RFP No. 39 seeks all documents concerning the April 26, 2024 incident in which Plaintiff was removed from her classroom and brought to a meeting attended by Dean Tullia, Ron Brandon, and law enforcement, including emails, texts, notes, reports, witness statements, security records, and communications with the Memphis Police Department. Defendant's production does not include any incident report, campus safety report, law-enforcement communication, witness statement, security record, written instruction, or internal communication sufficient to explain why law enforcement or campus safety personnel were involved in removing Plaintiff from her classroom.

This absence is especially significant because the incident appears to have been prompted, at least in part, by Plaintiff's April 26, 2024 social-media post stating: "Starting my final week in the classroom tomorrow. It's been a good 20yr run and I think I made a positive impact on at least a few hundred students' lives. Plan on going out with a bang [firecracker emoji]." That post is facially celebratory and retrospective, and was also not produced by Defendant. If Defendant contends that the post justified involvement by law enforcement, campus safety, or senior administrators, Plaintiff is entitled to the documents reflecting that interpretation, including any communications, reports, notes, instructions, screenshots, or records concerning the post and the resulting decision to remove Plaintiff from class.

Defendant's production includes, at CBU-166, "Appendix M: Christian Brothers University Media Policy." That policy appears to concern institutional media relations and communications with external media, not personal social-media posts

by faculty. To the extent Defendant contends that CBU-166, or any other CBU media/social-media policy, justified or informed the April 26, 2024 response to Plaintiff's social-media post, Plaintiff requests that Defendant identify the specific policy provision allegedly implicated and produce all documents reflecting that interpretation, application, or analysis. If Defendant does not contend that Plaintiff's post violated any CBU media, social-media, threat-assessment, campus-safety, or employee-conduct policy, Plaintiff requests that Defendant say so expressly.

F.  **RFP No. 36 (documents concerning Philip Maloney's and Provost Rosencrants's involvement in the Faculty Review Committee process relating to Plaintiff).** Defendant's response states only that "documents responsive to this request, if any, are attached hereto." That response does not identify which documents, by Bates number or otherwise, Defendant contends are responsive. Nor does it state whether any responsive documents are being withheld. This is not a proper response under Rule 34(b)(2)(C).

Defendant has admitted that Rosencrants communicated with FRC Chair Geis during the appeal (RFA No. 25), and Plaintiff has identified specific emails from Maloney concerning those very communications that are absent from Defendant's production (see Section VIII.C). Plaintiff requests that Defendant identify by Bates number all documents it contends are responsive to RFP No. 36, state whether any responsive documents have been withheld and on what basis, and produce all non-privileged responsive documents. Supplement required.

G.  **RFP No. 48 (communications with AAUP).** Defendant refers Plaintiff to her own documents, which is inadequate. Defendant should confirm whether it has produced all non-privileged documents and communications concerning the AAUP's July 30, 2024 and September 30, 2024 correspondence, including internal communications about how CBU would respond to AAUP's concerns regarding financial exigency, faculty governance, pre-termination hearing rights, severance, and reinstatement, and any responses authored by President Englert sent to the AAUP. Supplement required.

H.  **RFP No. 49.** Defendant's response to RFP No. 49 is deficient and internally inconsistent. RFP No. 49 seeks documents concerning any public statement by CBU or CBU President Br. Chris Englert in or around July 2024 that CBU had ended the 2023–2024 academic year with no debt or operating in the black, including drafts, talking points, interview preparation materials, underlying financial summaries, and communications concerning the accuracy or basis of those statements. Defendant's response appears to deny possession, custody, or control of responsive documents or evidence, while directing Plaintiff to exhibits that themselves confirm the existence of the interview, reporting, recording, and statements at issue.

Plaintiff requests that Defendant supplement its response to RFP No. 49 by producing all non-privileged responsive documents in its possession, custody, or control, including any video recording, audio recording, transcript, internal communications, media-relations communications, drafts, notes, talking points, or correspondence with *The Daily Memphian*, WKNO, Eric Barnes, or any person involved in arranging, preparing for, reviewing, circulating, or responding to the interview. If Defendant contends that it does not possess or control any recording or transcript of the interview, Plaintiff requests that Defendant state that expressly and identify what search was conducted for responsive materials.

I.  **RFP No. 50 (Documents Concerning President Archer's Resignation / Separation from CBU).** Defendant's objections to RFP No. 50 are not sufficient. Former President David Archer is a central decisionmaker in this case. He personally selected Plaintiff's position for elimination, participated in Plaintiff's December 7, 2023 termination meeting, and made statements directly relevant to Defendant's asserted financial-exigency rationale. Vice Provost Rosencrants is also relevant to Plaintiff's internal appeal, the Faculty Review Committee process, and the governance procedures at issue.

Plaintiff is not seeking personal information for its own sake. Plaintiff seeks non-privileged documents sufficient to show what CBU officially communicated to faculty, administrators, trustees, or other relevant constituencies regarding President Archer's resignation, separation, or dismissal, including documents reflecting any reason, explanation, concern, conflict of interest, governance issue, or institutional-process concern communicated or considered in connection with his departure, including any such concern involving persons with roles in the retrenchment, appeal, or Faculty Review Committee processes. Such information is relevant because Archer was the final decisionmaker in Plaintiff's termination, and because Defendant has invoked institutional decision-making processes, including the retrenchment and Faculty Review Committee processes, as part of its defense.

Plaintiff requests that Defendant withdraw or narrow its objections and produce non-privileged documents responsive to RFP No. 50 or, at minimum, documents sufficient to show the reason or reasons communicated in Faculty Assembly meetings during the Spring 2024 semester concerning Archer's resignation, separation, or dismissal. This includes any minutes, agendas, notes, recordings, transcripts, internal communications, talking points, memoranda, or related documents reflecting those Faculty Assembly communications or any related internal communications. If Defendant contends that no responsive documents exist, Plaintiff requests that Defendant say so expressly after a reasonable search and identify the custodians and repositories searched.

**X. Reservation of Rights and Response Deadline**

I remain willing to narrow particular requests by agreement where Defendant identifies a specific burden, but generalized objections and unsupported "no documents" responses do not permit meaningful evaluation of whether a reasonable search has been conducted.

Plaintiff also requests that Defendant produce CBU-201 through CBU-205 in native (Excel or comparable) format, with metadata preserved. Plaintiff's Instructions specified that spreadsheets, calendars, databases, and other files whose usability would be diminished by conversion to PDF were to be produced in native format. *See* Plaintiff's First Requests for Production, Instruction No. 6. The position-elimination spreadsheet at CBU-201, the comparator export at CBU-203 to CBU-205, and the severance-presenter list at CBU-202 were produced as flattened images in PDF; native versions would carry creation/modification timestamps, formulas, hidden columns or rows, and authoring metadata that the flattened images do not preserve.

Finally, the Certificate of Service on Defendant's Answers to Plaintiff's First Requests for Admission lists Plaintiff's address as "701 South Barksdale Street, Memphis, TN 38104." That is not Plaintiff's address, and repeats an error Defendant has made in multiple filings. Plaintiff's correct address is 1492 Newton Street NW, Apt. A, Washington, DC 20010, as filed with the Court on July 7, 2025 (ECF 11). Plaintiff does not contest service via email and is not raising a service objection at this time, but requests that Defendant correct its records and confirm in writing that all future filings and discovery papers will reflect Plaintiff's correct address.

Plaintiff reserves all rights, including the right to file a motion to compel under Rule 37(a), seek relief under Rule 26(g) to the extent warranted, seek sanctions for any conduct that warrants them, and seek any other appropriate relief from the Court. Nothing in this letter should be construed as a waiver of any right or argument.

Plaintiff requests Defendant's written response to each item identified in this letter by **5:00 p.m. Eastern / 4:00 p.m. Central on Friday, May 8, 2026.**

Plaintiff will treat the absence of a response by the deadline as Defendant's position that it does not intend to cure these deficiencies, and will proceed accordingly.


Sincerely,


/s/ Dr. Leigh M. Johnson
Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937

drleighmjohnson@gmail.com

April 28, 2026

Stephen W. Vescovo, Esq.
Jamie M. Gibber, Esq.
Lewis Thomason, P.C.
2900 One Commerce Square
40 South Main Street
Memphis, Tennessee 38103

Via electronic mail to: svescovo@lewisthomason.com; jgibber@lewisthomason.com

**Re:** Supplement to Plaintiff's April 27, 2026 Rule 37 Meet-and-Confer Letter Regarding Production-Integrity Deficiencies in Defendant's Document Production

Dear Counsel:

This letter supplements my April 27, 2026 correspondence to address production-integrity deficiencies identified upon further review of Defendant's April 24, 2026 document production. The issues described below concern the method by which Defendant collected and produced documents, and are separate from the substantive deficiencies addressed in the April 27 letter. These issues are subject to the same May 8, 2026 cure deadline. This letter does not restate the requests made on April 27; those requests remain in full force.

In the following, Plaintiff seeks only non-privileged information sufficient to identify the custodians, repositories, collection methods, and production format used for CBU-058–218, and to obtain complete, source-level copies of responsive documents where Defendant has produced forwarded, printed, excerpted, redacted, or reconstructed materials.

## I. Objective Indicators that Defendant's Production Includes Non-Original-Source Materials

Upon further review, Defendant's production strongly suggests that at least some documents were assembled, supplemented, or reconstructed on April 24, 2026—the day Defendant's discovery responses were due—from forwarded emails, HR-held copies, or post hoc website printouts, rather than produced from original custodial sources. The following features of the production require explanation and cure:

A. **CBU-074** shows that Dean Tawny LeBouef Tullia forwarded at least one historical email chain to Human Resources on the morning Defendant's discovery responses were due. CBU-074 consists of an email forwarding header from Dean Tullia to Theresa P. Jacques in Human Resources, dated Friday, April 24, 2026, 9:29 AM, with the subject line "FW: Assigning Philosophy courses." There is no substantive message in the forwarding email; it is followed only by Dean Tullia's signature block and then the body of a November 2023 email thread. This raises a serious question whether at least some responsive materials were collected through ad hoc custodian forwarding or self-selection rather than through a structured search of original custodial sources.

B. **CBU-211–214** purport to be President Archer's October 25, 2023 "University Restructuring" announcement. They are, in fact, a printout of CBU's public website

captured at 10:49 AM on April 24, 2026. The browser header and footer stamps appear on every page ("4/24/26, 10:49 AM University Restructuring 10.25.23 - Christian Brothers University"), along with the URL. The printout captured a live website banner advertising "CBU Summer Youth Art Camps 2026." This is not a contemporaneous institutional record of the October 25, 2023 announcement; it is a post hoc printout of a public webpage captured on the discovery-response deadline.

C. **The FRC correspondence at CBU-206–210**—discussed in detail in my April 27 letter at Section VIII—is headed "Theresa P Jacques" on every page, indicating that the emails may have been forwarded to or printed from HR's account. Theresa Jacques was not a member of the FRC committee nor a named participant in the FRC correspondence. This suggests that Defendant may have produced HR-held or HR-printed copies rather than complete original custodian records. This observation provides additional context for the specific FRC-related emails identified as absent from the production in Section VIII of my April 27 letter.

## II. Apparent Ad Hoc Custodian Forwarding by a Key Fact Witness

CBU-074 shows that Dean Tullia, a central fact witness in this case, forwarded at least one historical email chain to Human Resources on the morning Defendant's discovery responses were due. Dean Tullia is not a disinterested custodian. She served as Vice-Chair of the Retrenchment Committee, supervised Plaintiff's department in her role as Dean, and authored emails at issue in this case, including emails expressing a desire to have Plaintiff's supervision transferred to her own purview or to Provost Rosencrants.

Plaintiff is unable to determine whether CBU-074 reflects an isolated transmission, a custodian self-collection process, or a broader practice used to assemble CBU-058–218. If Defendant's production was assembled through custodian self-selection or ad hoc forwarding rather than counsel-directed searches of reasonably identified custodial repositories, that would raise serious concerns under Rule 26(g)(1) and Rule 34(b)(2)(E). At minimum, forwarded compilations, HR printouts, and post hoc website printouts do not allow Plaintiff to adequately assess whether the production reflects complete documents collected from original custodial sources, whether complete thread histories have been produced, or whether the documents were produced as ordinarily maintained or in a reasonably usable form.

This concern also provides context for the document-referenced gaps identified in my April 27 letter. The "folio" Dean Tullia stated she would send on January 2, 2024 (see April 27 letter, Section V.C) was within her custodial control. So were any communications supporting Tullia's alleged concern regarding Plaintiff's "inclusion of students" in communications, referenced in CBU-061. In that December 29, 2023 email, Tullia identified no specific student, communication, date, content, or context, and stated that she had "not received anything that falls explicitly over a line." The communications underlying that assertion, if any exist, are responsive to RFP Nos. 4, 5, and 12 and have not been produced. Plaintiff requests production of all non-privileged communications supporting, reflecting, or relating to that statement, or confirmation that no such communications exist.

## III. Requested Cure

Plaintiff requests that Defendant cure these production-integrity deficiencies by May 8, 2026, as follows:

A. **Original custodian-source production.** Produce native-format exports or metadata-complete reproductions of the original custodian-source emails corresponding to all emails reproduced in CBU-058–218, including complete email families/thread histories, attachments, embedded or omitted replies, and all available To/From/Cc/Bcc/Date/Subject metadata.

B. **Identification of forwarded, printed, excerpted, or reconstructed materials.** Identify each document within CBU-058–218 that was produced from a forwarded email, HR-held copy, website printout, excerpted thread, redacted chain, or other non-original-source reproduction.

C. **Collection-method disclosure.** Identify in writing, without disclosing privileged attorney-client communications or attorney work product:
   a. each custodian whose email account, files, or records were searched;
   b. the date ranges, repositories, and search terms used for each custodian;
   c. whether any custodian self-collected or forwarded documents for production; and
   d. the person or persons who assembled, reviewed, and selected the documents produced as CBU-058–218.

D. **Completeness confirmation.** Confirm in writing whether CBU-058–218 represents the complete set of non-privileged responsive documents in Defendant's possession, custody, or control for the RFPs to which those Bates-stamped documents correspond, or whether additional responsive documents exist that have not yet been produced.

E. **Replacement for post hoc website printouts.** Produce the contemporaneous institutional record, internal announcement, archived webpage, email, memorandum, or other original-source record corresponding to the October 25, 2023 "University Restructuring" announcement, if such a record exists, rather than relying on an April 24, 2026 printout of a public webpage.

These requests are subject to the same deadline established in my April 27, 2026 letter**: 5:00 p.m. Eastern / 4:00 p.m. Central on Friday, May 8, 2026**. This correspondence is intended to continue the parties' Rule 37 conferral process and to identify with specificity the production issues Plaintiff asks Defendant to cure before any motion practice becomes necessary.

If Defendant does not address or cure the deficiencies identified in this letter and in the April 27 letter by that deadline, Plaintiff intends to seek relief from the Court, including a motion to compel under Rule 37(a). Plaintiff reserves all rights, including the right to seek appropriate relief under Rule 26(g), if warranted.

Sincerely,

/s/ Dr. Leigh M. Johnson
Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com