UTI01.10003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

DR. LEIGH M. JOHNSON,

     Plaintiff,

v.                                   Civil Action No.: 2:25-cv-02618-BCL-atc

CHRISTIAN BROTHERS UNIVERSITY,

     Defendant.

**CHRISTIAN BROTHERS UNIVERSITY'S**
**RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND DETERMINE**
**SUFFICIENCY OF RFA ANSWERS**

Pursuant to Local Rule 7.2(a)(2), Defendant, Christian Brothers University ("CBU"), by and through its counsel, hereby submits its Response to Plaintiff's Motion to Compel Discovery and Determine Sufficiency of RFA Answers ("Plaintiff's Motion") (ECF No. 48). In response to Plaintiff's Motion, CBU states as follows:

**INTRODUCTION**

At the outset, it is important to frame the purpose of this litigation. Plaintiff challenges her selection for non-retention during the retrenchment process implemented in response to CBU's declared financial exigency. That process did not arise in a vacuum. For several years leading up to the declaration, CBU undertook efforts to reduce faculty and operating costs in an attempt to mitigate ongoing financial losses and avoid the need for such a declaration. However, in the face of sustained financial pressures – exacerbated by declining college enrollment nationwide (commonly referred to as the "enrollment cliff") – CBU was forced to declare financial exigency, which triggered the resulting retrenchment process.

Plaintiff's Motion to Compel presents a sprawling and largely unsupported challenge to CBU's discovery responses and production. In substance, Plaintiff's Motion reflects her disagreement with CBU's positions, speculation about documents that she believes should exist, and attempts to expand discovery beyond the bounds of relevance and proportionality set forth in Rule 26. It does not identify any material failure by CBU to comply with its discovery obligations.

The procedural history underscores the deficiencies in Plaintiff's Motion. On April 24, 2026, CBU timely served its responses to Plaintiff's First Requests for Production and Requests for Admission and produced responsive, non-privileged documents – subject to the many objections asserted in response to the requests. (See ECF Nos. 48-9, 48-10.) Plaintiff then transmitted a lengthy, 20-plus page deficiency letter on April 27, 2026 (ECF No. 48-5), followed by a supplemental letter on April 28, 2026 (ECF No. 48-6), identifying a broad array of purported issues and imposing a unilateral deadline of May 8, 2026 for CBU to respond.

CBU complied with that directive and, on May 8, 2026, provided a comprehensive written response addressing each of Plaintiff's concerns, explaining its objections, identifying areas for supplementation, and inviting further discussion to narrow the disputes. (ECF No. 48-8.) CBU expressly requested a telephonic or video conference to facilitate a meaningful meet-and-confer process. Plaintiff declined to engage further. Instead, without responding to CBU's positions or attempting to narrow any issues, Plaintiff filed the present Motion just nine days later.

Against that backdrop, Plaintiff's Motion represents not a genuine effort to resolve discrete discovery disputes, but rather an attempt to shift immediately to judicial intervention without engaging in the meet and confer process required by Rule 37 and Local Rule 7.2. Plaintiff's Motion also raises numerous new issues that were never presented during the meet-and-confer process, further demonstrating its procedural and substantive defects.

## LAW AND ARGUMENT

### I.      Legal Standards

Generally, Federal Rule of Civil Procedure 26(b)(1) enables parties to "obtain discovery

regarding any **nonprivileged** matter that is **relevant** to any party's claim or defense and

**proportional to the needs of the case**[.]"   See Fed. R. Civ. P. 26(b)(1) (emphasis added).

"However, district courts have discretion to limit the scope of discovery where the information

sought is overly broad or would prove unduly burdensome to produce."   Surles ex rel. Johnson v.

Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).   The

Sixth Circuit has clearly explained the limitations on discovery:

> Specifically, the Federal Rules of Civil Procedure instruct district courts to
> limit discovery where its "**burden or expense . . . outweighs its likely benefit**,
> taking into account the needs of the case, the amount in controversy, the parties'
> resources, the importance of the issues at stake in the litigation, and the importance
> of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).
> Notably, the Advisory Committee amended Rule 26(b) in both 1983 and 1993 to
> afford district courts greater discretion in restricting the scope of discovery. Fed. R.
> Civ. P. 26(b) advisory committee's notes (1983) ("The rule contemplates greater
> judicial involvement in the discovery process . . . . In an appropriate case the court
> could restrict the . . . scope of a production request."); Fed. R. Civ. P. 26(b) advisory
> committee's notes (1993) ("The revisions in Rule 26(b)(2) are intended to provide
> the court with broader discretion to impose additional restrictions on the scope and
> extent of discovery.").   Although a plaintiff should not be denied access to
> information necessary to establish her claim, **neither may a plaintiff be permitted
> "to 'go fishing' and a trial court retains discretion to determine that a
> discovery request is too broad and oppressive**." Marshall v. Westinghouse Elec.
> Corp., 576 F.2d 588, 592 (5th Cir. 1978).

Id. (emphasis added).

Under Rule 37(a), a party may move for an order compelling disclosure or discovery when

another party fails to respond adequately.   See Fed. R. Civ. P. 37(a)(1).   This Court has clearly

explained the respective burdens in regards to a motion to compel:

> If an objection to the relevance of the sought discovery is raised, "the party seeking
> discovery **must** demonstrate that the requests are relevant to the claims or defenses

in the pending action." <u>Anderson v. Dillard's, Inc.</u>, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008)(citation omitted). If the party seeking discovery demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate "why the request is unduly burdensome or otherwise not discoverable." *Id.* at 310 (citations omitted). A court need not compel discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

<u>Hooper v. Medtronic, Inc.</u>, No. 2:17-cv-02457-JTF-dkv, 2018 U.S. Dist. LEXIS 241687, at *11 (W.D. Tenn. May 10, 2018) (emphasis added).

Rule 37(a)(1), in addition to Local Rule 7.2, also requires that a motion to compel include a certification that the movant has in good faith conferred or attempted to confer with the opposing party before seeking court intervention. <u>See</u> Fed. R. Civ. P. 37(a)(1); LR 7.2(a)(1)(B). Courts routinely deny motions to compel where the moving party has not engaged in meaningful, good faith efforts to resolve the dispute informally before seeking judicial intervention. <u>See, e.g.</u>, <u>Hugueley v. Carpenter</u>, No. 09-1181-JDB-egb, 2015 U.S. Dist. LEXIS 50092, at *11 (W.D. Tenn. Apr. 16, 2015). This Court has emphasized the importance of the meet and confer requirement and its applicability to pro se litigants:

> "The essence of Local Rule 7.2 is that counsel for the parties will **meet and confer** in a good faith effort to resolve disputes before seeking court intervention." <u>Barry Fiala, Inc. v. Stored Value Sys., Inc.</u>, No. 2:02-cv2248-SHM-sta, 2005 WL 8157416, at *4 (W.D. Tenn. Jan. 31, 2005). "[T]his Court takes a dim view of Local Rule violations." <u>Nixon v. Hardin Cnty. Bd. of Educ.</u>, 988 F. Supp. 2d 826, 830 (W.D. Tenn. 2013). **Anderson's *pro se* status does not absolve him of his obligation to abide by these rules**. <u>See</u> <u>Parker v. W. Carroll Sch. Dist.</u>, No. 2:20-cv-1044-STA-tmp, 2020 U.S. Dist. LEXIS 241664, 2020 WL 7647633, at *1 n.4 (W.D. Tenn. Dec. 23, 2020) (citing <u>Wallace v. Brown</u>, No. 2:17-cv-02269-SHM-tmp, 2020 U.S. Dist. LEXIS 130373, 2020 WL 4228310, at *3 (W.D. Tenn. July 23, 2020)); <u>see also</u> <u>id.</u> ("While 'district courts may liberally construe the federal and local rules for *pro se* litigants, even *pro se* litigants are obligated to follow these rules.'" (quoting *Greer v. Home Realty Co. of Memphis, Inc.*, No. 2:07-cv-2639-SHM-egb, 2010 U.S. Dist. LEXIS 142817, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010))).

Anderson v. Memphis Union Mission, No. 2:22-CV-02402-TLP-atc, 2023 U.S. Dist. LEXIS 40424, at \*27 (W.D. Tenn. Jan. 21, 2023) (emphasis added).

Federal Rule of Civil Procedure 36(a) governs requests for admission. Rule 36 permits a party to serve "on any other party a written request to admit, for purposes of the pending action only, the truth of any matters **within the scope of Rule 26(b)(1)** relating to:  (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed R. Civ. P. 36(a) (emphasis added).  Courts may deem admissions admitted or require amended answers if responses are insufficient.  See Fed. R. Civ. P. 36(a)(6).

## II.    Plaintiff's Failure to Meaningfully Meet and Confer and Improper Expansion of Issues Warrants Denial of Plaintiff's Motion.

Plaintiff's Motion should be denied because Plaintiff did not meaningfully satisfy Rule 37(a)(1) or Local Rule 7.2(a)(1)(B)'s requirement to meet and confer.  As noted above, Courts routinely deny motions to compel where the moving party has not engaged in meaningful, good faith efforts to resolve the dispute informally before seeking judicial intervention.  See, e.g., Hugueley, 2015 U.S. Dist. LEXIS 50092, at \*11.  This obligation is typically satisfied through a genuine, two-way dialogue in which the parties attempt to narrow or resolve their disagreements.

Here, Plaintiff transmitted a 20+ page letter to the undersigned on April 27, 2026, asserting numerous purported deficiencies and offering CBU two options:  (1) provide a written response to each item, or (2) supplement its discovery response by 4:00 p.m. Central on Friday, May 8, 2026. (See ECF No. 48-5.)  Plaintiff sent a supplemental letter the following day, on April 28, 2026. (See ECF No. 48-6.)  CBU complied with Plaintiff's directive and provided a written response to each of the items raised in Plaintiff's letters within Plaintiff's requested timeframe ("May 8 Letter").  (See ECF No. 48-8.)  In that correspondence, CBU also highlighted the inefficiencies

inherent in Plaintiff's insistence on written-only communications and requested a telephonic and/or video conference to discuss the discovery issues.  (See id.)

Plaintiff did not respond to CBU's May 8 Letter.  Nor did Plaintiff agree to a telephonic conference, propose a follow-up discussion, or otherwise attempt to "confer promptly and in good faith" or "narrow particular requests by agreement" or "continue the parties' Rule 37 conferral process," as she represented she would.  (See ECF Nos. 48-5, at PageIDs 356, 374; 48-6, at PageID 377.)  Instead, Plaintiff filed the present Motion nine days later, on May 17, 2026.  (See ECF No. 48.)

This is not a good faith meet and confer under the Rules.  The purpose of the meet and confer requirement is to ensure the parties "meet and confer in a good faith effort to resolve disputes before seeking court intervention."  Anderson, 2023 U.S. Dist. LEXIS 40424, at *27 (citing Barry, 2005 WL 8157416, at *4).  Plaintiff's approach – limited to written demands followed by silence – undermines that purpose, particularly where Plaintiff declined to engage after receiving CBU's substantive response.

As noted above and in CBU's separately filed Motion for Status Conference (ECF No. 49), Plaintiff has insisted on conducting all communications in writing due to her pro se status.  While CBU has attempted to accommodate that preference, Plaintiff's refusal to participate in real-time discussions (such as by telephone or videoconference) has materially impaired the parties' ability to engage in a meaningful discussion.  A true meet and confer requires interactive, back-and-forth communication sufficient to narrow disputed issues – not a single round of written demands followed by motion practice.  Under these circumstances, Plaintiff's Motion to Compel is procedurally deficient and should be denied on that basis alone.

Even if this Court were to find Plaintiff's meet and confer efforts sufficient, Plaintiff's Motion is further defective because it raises numerous issues that were never identified in her prior correspondence, depriving CBU of *any* opportunity to address them through the meet and confer process. Plaintiff's letters identified specific requests and responses she contended were deficient, and CBU responded directly to those issues in its May 8 Letter. Plaintiff's Motion, however, challenges additional discovery responses that were not previously identified as deficient, including, for example: Requests for Admission Nos. 8, 9, 13, 18, 19, 28, 30 and Requests for Production No. 6. Accordingly, because these purported deficiencies were never raised during the meet and confer process, this alone warrants denial of the motion as to those requests. See Hugueley, 2015 U.S. Dist. LEXIS 50092, at \*10.

For these reasons, Plaintiff's Motion should be denied for failure to engage in a meaningful meet and confer. At a minimum, Plaintiff's Motion should be denied as to those requests that were never raised prior to the filing of the motion.

## III.    Substantive Response to Issues Raised in Plaintiff's Motion:

Plaintiff's Motion identifies several purported "substantive production deficiencies" (ECF No. 48-1, at PageID 591–603) and "production-integrity deficiencies." (ECF No. 48-1, at PageID 604–05.) To the extent these issues were raised in Plaintiff's prior correspondence, CBU addressed many of them in its May 8 Letter, which sets forth CBU's position. (See ECF No. 48-8.) CBU will succinctly reiterate that position herein. Where Plaintiff's Motion expands upon or further develops those previously asserted issues, CBU responds below using the same organizational structure as Plaintiff's Motion for the Court's ease of review.

### A.  Section III.A.1 – "Application of Faculty Handbook Appendix G.3.e criterion (3)" (ECF No. 48-1, at PageID 591)

7

Plaintiff's Motion contends that CBU's responses to Requests for Admission Nos. 1 and 2 are deficient because they "cannot stand against" the Presidential Charge which is referenced in CBU's responses.  (ECF No. 48-1, at PageID 591.)  Rule 36(a)(4) requires that a "denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).

CBU's Response to Request for Admission No. 1 does exactly that.  Nothing in the Rules requires CBU to adopt Plaintiff's framing or legal interpretation of a document.  CBU's response merely states Plaintiff's framing of the Presidential Charge as advising that a specific criterion was not applicable to the retrenchment process, as opposed to what the Presidential Charge actually says (namely, that the criterion was ambiguous because it does not have "goals" with respect to the numbers of women, women religious, and members of minority races").  (See ECF No. 33-1, at PageID 186.)

Similarly, CBU's Response to Request for Admission No. 2 denies Plaintiff's framing of the Presidential Charge.  As stated in the Presidential Charge, "While diversity is a strong value of our institution and Lasallian principles, the University follows applicable law in this regard and does not have such targets for faculty or staff hiring.  For this reason, recommendations relating to faculty retention should be made irrespective of gender and race."  (ECF No. 33-1, at PageID 186.)

To the extent Plaintiff seeks to elevate semantic disputes about phrasing into a Rule 36 deficiency, that request should be denied.

**B. Section III.A.2 – "Reassignment of Plaintiff's Spring 2024 course to Dr. Paul Haught" (ECF No. 48-1, at PageID 591–93)**

Plaintiff next takes issue with CBU's responses to her requests related to an alleged reassignment of an overload course to Dr. Paul Haught.  (ECF No. 48-1, at PageID 591–93.)

8

Plaintiff requests that the Court determine the sufficiency of CBU's answer to Request for Admission No. 18 and order CBU to produce all documents responsive to Requests for Production Nos. 27 and 28.  (Id.)  At the outset, as mentioned above, Plaintiff never took issue with CBU's answer to Request for Admission No. 18 and Request for Production No. 28.

As explained in CBU's May 8 Letter, Plaintiff's requests concerning Dr. Haught's employment seek information that is not relevant to Plaintiff's claims and is disproportionate to the needs of this case.  The fact that CBU contemplated assigning an overload course to Dr. Haught does not make his employment contract or related materials discoverable.  CBU nevertheless produced responsive, non-privileged documents reflecting communications regarding said course assignment (wherein Plaintiff explicitly acknowledged that CBU reserves the right to take courses away, even if that were the issue in this lawsuit).  Plaintiff's attempt to leverage those limited productions into broad discovery concerning Dr. Haught's employment improperly seeks to expand the scope of discovery beyond what is relevant and proportional.

Nowhere in Plaintiff's Motion does she establish the relevance of the requested documents, aside from asserting that "[t]he Haught reassignment occurred in the same decision window as Plaintiff's termination" and that "the two decisions [were] in immediate temporal and structural proximity."  (ECF No. 48-1, at PageID 592–93.)  Respectfully, just because two unrelated decisions occurred in the same general timeframe does not make the requested discovery relevant to this litigation.  Additionally, Plaintiff's Motion states that "Defendant has invoked the terms of Dr. Haught's contract to defend its retention rationale while refusing to produce the contract itself on relevance grounds."  (Id. at PageID 592.)  Respectfully, Plaintiff's Motion mischaracterizes CBU's response to Request for Admission No. 20.  The terms of the contract were provided merely to explain why Dr. Haught was returning to his teaching position after he had not been assigned

regular faculty teaching duties at CBU within the preceding five years, as stated in the Request itself. CBU has not and has no intention of providing Plaintiff with a rationale for every retention decision. The sole question in this case is whether **Plaintiff's** position was properly eliminated in the face of financial exigency per the retrenchment committee guidelines.

### C. Section III.A.3 – "Cancellation of Dr. Leib's December 7, 2023 termination meeting"(ECF No. 48-1, at PageID 593–94)

Similarly, Plaintiff takes issue with CBU's response to Request for Admission No. 13, despite never raising that issue to CBU prior to filing her Motion. (ECF No. 48-1, at PageID 593.) Regardless, Plaintiff never explains why any documents related to Dr. Leib's December 7, 2023 scheduled termination meeting and its cancellation are relevant at all to the issues in this lawsuit.

Plaintiff improperly alleges that "Dr. Leib was a faculty member in the same retrenchment decision-unit as Plaintiff." (ECF No. 48-1, at PageID 594.) Again, as stated in CBU's May 8 Letter, Dr. Leib is not a comparator to Plaintiff. His retention is unrelated to Plaintiff's claims. The decisions were made within the respective departments and Dr. Leib and Plaintiff were not in the same department. Accordingly, no documentation related to Dr. Leib is relevant to this litigation. Plaintiff's effort to expand discovery into the retention of personnel in a different department is neither relevant nor proportional.

### D. Section III.A.4 – "Emily Holmes resignation" (ECF No. 48-1, at PageID 594–95)

Plaintiff next takes issue with CBU's response to Request for Production No. 19, seeking documents related to Emily Holmes's resignation. (ECF No. 48-1, at PageID 594.) Plaintiff specifically takes issue with CBU's objection that the resignation came after all retrenchment decisions were made, alleging that the claim is contradicted by CBU's own production. (Id.) Plaintiff's argument rests on a selective reading of the production. Plaintiff's Motion characterizes an informal e-mail from Holmes to CBU regarding her intention to resign as a formal resignation.

CBU has already produced materials concerning Dr. Holmes, including her resignation letter and related communications. Plaintiff's disagreement with the timing or significance of Dr. Holmes's resignation does not render CBU's response deficient.

### E. Section III.A.5 – "May 11, 2024 office-access denial incident records" (ECF No. 48-1, at PageID 595–96)

Plaintiff also takes issue with CBU's response to Request for Admission No. 30 and Requests for Production Nos. 42 and 43. (ECF No. 48-1, at PageID 595–96.) As to the Request for Admission, Plaintiff never raised this issue prior to filing her Motion and the Motion should be dismissed as to that Request. Even if she had raised that issue, CBU's response was proper. The denial was as to Plaintiff's characterization of the incident, namely that she was "refused entry." Plaintiff was not refused entry. Rather, she was escorted to her office with security personnel.

Plaintiff also contends that documents "must exist" because an escort occurred. This is precisely the type of speculation CBU addressed in its May 8 Letter. Additionally, CBU provided the incident report from the referenced incident with its May 8 Letter. (See ECF No. 48-12.)

### F. Section III.A.6 – "Non-responsive Answer to RFA No. 24" (ECF No. 48-1, at PageID 596)

CBU's May 8 Letter already addressed this issue. (See ECF No. 48-8, at PageID 385–86.) As explained therein, the Faculty Review Committee is a University Committee and its members had the right and obligation to keep members of the Academic VP Office in the loop about what was going on. The May 8 Letter further explains that there was no requirement that members of the FRC communicate only with members of said committee. Plaintiff's disagreement with that explanation does not render the response deficient. As stated in CBU's May 8 Letter, CBU will supplement its response to Request for Admission No. 24.

### G. Section III.B.1 – "Defendant's irreconcilable accounts of preservation and refusal of preservation discovery" (ECF No. 48-1, at PageID 596–97)

11

Plaintiff seeks detailed information regarding litigation hold and preservation efforts. (See ECF No. 48-1, at PageID 596–97.) As explained in CBU's May 8 Letter, the Federal Rules do not require disclosure of internal preservation methodology in the manner Plaintiff demands. (See ECF No. 48-8, at PageID 386.) Plaintiff's Motion asserts that "Rule 26(f)(2) and 26(f)(3)(C) expressly contemplate preservation as a discovery-plan topic," but – as this Court knows – that portion of the Rule relates to what matters are to be included in the parties' discovery plan, not about what a party is required to produce in response to discovery requests. (See ECF No. 48-1, at PageID 597.)

Plaintiff has not established the relevance of any of these requests. Instead, Plaintiff attacks CBU's burden objection by stating that "Defendant's May 8 representation that CBU has access to all employee email accounts substantially undercuts any burden objection to identifying custodians and search steps." (See id.) Respectfully, the two are completely unrelated. CBU has already confirmed that relevant materials have been preserved. Plaintiff's request for additional detail goes beyond the scope of permissible discovery and is not proportional to the needs of the case.

## H. Section III.B.2 – "Retrenchment Committee working materials" (ECF No. 48-1, at PageID 597–98)

Plaintiff assumes that additional materials "must exist" beyond the final report. (See ECF No. 48-1, at PageID 597–98.) That assumption is insufficient. Additionally, as highlighted by CBU's response and May 8 Letter, CBU's position was that any relevant documents that were not produced are protected. Now that the parties have agreed to a protective order, CBU can and will supplement its document production with responsive, relevant materials – under the protection of the protective order. CBU will supplement its production, as stated in the May 8 Letter.

12

**I.** **Section III.B.3 – "Blanket 'none' responses to other identifiable institutional events" (ECF No. 48-1, at PageID 598)**

Plaintiff's issues with Request for Production 8, 11, 26, 29, and 30 ignore the objections lodged in response to those Requests. (See ECF No. 48-1, at PageID 598.) Each "none" response was preceded by the following clause: "Subject to and without waiving said objection[s]." (See ECF No. 48-9.) In addition to the objections lodged in response to these requests, many of these requests mischaracterize the facts of the case, perhaps based on Plaintiff's misunderstanding of the retrenchment process. Just because no documents exist to confirm Plaintiff's misunderstanding does not render CBU's responses deficient.

**J.** **Section III.B.4 – "Retention rationale documents" (ECF No. 48-1, at PageID 598–99)**

Plaintiff takes issue with CBU's responses to Requests for Production Nos. 6 through 15. (ECF No. 48-1, at PageID 598–99.) As to Request No. 6, Plaintiff never raised an issue with CBU's response prior to filing her Motion. As to the remaining requests, Plaintiff also ignores CBU's statements throughout its responses that the responses would be supplemented upon entry of a protective order. Now that a protective order has been entered, CBU can supplement its production with relevant, responsive documents – as explained in CBU's May 8 Letter.

**K.** **Section III.B.5 – "Karl Leib's retention rationale" (ECF No. 48-1, at PageID 599)**

Plaintiff takes issue with CBU's response to several requests related to Dr. Leib's retention. (ECF No. 48-1, at PageID 599.) As stated in CBU's May 8 Letter, Dr. Leib was not in Plaintiff's department and, accordingly, was not a "comparator" for purposes of the retrenchment committee. Again – those decisions were made within each respective department, not across the entire university. For those reasons, discovery concerning Dr. Leib is not proportional or relevant. CBU

13

did not "affirmatively invoke[] specific rationales . . to justify retention of named comparator Dr. Leib," rather, CBU responded to Plaintiff's allegations – despite the fact that they were irrelevant.

**L.  Section III.B.6 – "Cinquegrani contracts" (ECF No. 48-1, at PageID 599–600)**

As noted in CBU's May 8 Letter and in its response to Requests for Production Nos. 16-18, these requests seek private personnel information that would be produced pursuant to a protective order.  Now that a protective order is in place, CBU can supplement its production with relevant, responsive documents.  As to Requests for Admission Nos. 8 and 9, those issues were never raised prior to Plaintiff filing her Motion.

**M. Section III.C.1 – "Tullia's 'folio' referenced at CBU-061" (ECF No. 48-1, at PageID 600)**

Plaintiff seeks an order compelling CBU to produce a folio of emails referenced within CBU's document production, alleging that said documents would be responsive to Requests for Production 4-5, 12, 18, and 38.  (ECF No. 48-1, at PageID 600.)  Respectfully, Plaintiff's assertion is incorrect.  Requests 4 and 5 relate to retrenchment committee documents and decisions.  The communications concerning Plaintiff referenced in the document produced – which, per Plaintiff's Motion, was dated nearly an entire month after the retrenchment decision – have nothing to do with the retrenchment committee or its decisions.  Request No. 12 seeks documents concerning the selection of faculty members for termination or retention within the Department of Religion and Philosophy.  The referenced communications would not be responsive.  Request No. 18 seeks documents regarding alleged comparators identified by Plaintiff.  Again, the referenced folio of communications would not be responsive to this Request.  Finally, Request No. 38 seeks documents concerning decisions to exclude Plaintiff from departmental meetings, communications, or decision-making.  The referenced folio would not be responsive to these requests either.  Supplementation is not warranted.

14

**N. Section III.C.2 – "Faculty Review Committee documents identified by Plaintiff but absent from the production" (ECF No. 48-1, at PageID 600)**

Plaintiff seeks supplementation of CBU's response to Requests for Production Nos. 33 through 36. (ECF No. 48-1, at PageID 600.) As explained in the May 8 Letter, CBU objected to these requests on the grounds that they are overly broad, unduly burdensome, and not proportional to the needs of the case. (ECF No. 48-8, at PageID 386.) Plaintiff's correspondence identifies at least seven (7) e-mail addresses that she would like searched. As stated therein, CBU is willing to search these e-mail accounts and produce responsive, non-privileged documents. In order to do so in a manner that is not overly burdensome and is proportional to the needs of the case, CBU requested further clarification on both the timeline and search terms Plaintiff is seeking. Plaintiff never responded to this request to allow CBU to supplement its production prior to filing her Motion. Additionally, Plaintiff never raised any issue with CBU's response to Request for Admission No. 23 prior to filing her Motion.

**O. Section III.D.1 – "RFP No. 34" (ECF No. 48-1, at PageID 601)**

Plaintiff takes issue with CBU's response to Request for Production No. 34. (ECF No. 48-1, at PageID 601.) Plaintiff's Motion does not address CBU's primary, appropriate objections, including overbreadth and burden. As stated, Request No. 34 seeks "all" communications between "any Faculty Review Committee member and any administrator, dean, chair, Human Resources representative, Board representative, faculty member or counsel" regarding Plaintiff's appeal. Plaintiff's Motion makes no assertions regarding what the relevance of these communications would be, nor does it address the burden it imposes on CBU to search all of the relevant email accounts.

**P. Section III.D.2 – "April 26, 2024 classroom-removal incident records" (ECF No. 48-1, at PageID 602)**

15

Plaintiff takes issue with the Incident Report produced as requested by Plaintiff.  CBU produced the report as maintained in its records, as required by the Rules.  As stated, the relevant requests (Requests for Production Nos. 39 through 41) are overly broad as stated.  To the extent additional relevant, responsive documents exist, CBU can continue to search for additional materials – albeit in a reasonable manner and form.  Plaintiff appears to be disappointed by the content of the documents produced.  Rule 34 requires production of documents that exist, not the creation of additional materials or the validation of Plaintiff's preferred narrative.

**Q. Section III.D.3 – "RFP No. 50 (limited Archer-transition records)" (ECF No. 48-1, at PageID 602–03)**

Plaintiff takes issue with CBU's objection to Request No. 50.  (ECF No. 48-1, at PageID 602–03.)  As stated in CBU's objection and in its May 8 Letter, Former President Archer's subsequent departure – after the retrenchment decisions that are at issue in this litigation had been made – is not relevant to Plaintiff's claims.  Plaintiff's attempt to expand discovery into personnel decisions unrelated to the retrenchment process and her non-retainment is improper.  Plaintiff's Motion attempts to state the "limited relevance" of the Request by stating that "Archer was the final decisionmaker for Plaintiff's termination, and his departure bears on custodial control, preservation, and whether CBU communicated internally about who assumed responsibility for retrenchment-related decisions affecting Plaintiff after Archer left."  (ECF No. 48-1, at PageID 603.)  As previously stated, CBU has already communicated regarding the litigation hold and preservation of all records.  Additionally, President Archer retired over four months after the retrenchment-related decisions affecting Plaintiff were made.

**R. Section III.E – "Privilege assertion without a log; advice-of-counsel framing" (ECF No. 48-1, at PageID 603)**

16

Plaintiff takes issue with CBU's assertion of the attorney-client privilege or work-product protection in response to Requests for Production Nos. 7, 8, 9, 10, 31, 32, 45, 46, and 47.  (ECF No. 48-1, at PageID 604.)  Plaintiff primarily takes issue with the fact that CBU did not produce a privilege log.  (See id.)  As noted in the May 8 Letter – and in Plaintiff's Motion itself – Rule 26(b)(5)(A)(ii) requires a description of the nature of the documents, communications, or tangible things not produced or disclosed.  It does not specify the medium in which a party provides that information.  As to Requests Nos. 7 through 10, as stated in CBU's May 8 Letter:  As part of the retrenchment process, CBU retained counsel (Husch Blackwell) for instructions and guidance on the process.  The documents that would be protected under the privileges asserted are emails and memoranda provided by counsel.  Regarding Requests Nos. 31 and 32, the documents that would be protected would be communications between counsel regarding the severance agreement or any documents and/or communications concerning preparation of specific provisions of the severance agreement.  Regarding Requests Nos. 45 through 47, the documents that would be protected would be any communications between counsel regarding preservation efforts and litigation holds.  To the extent required, CBU can provide a privilege log that contains this exact information.  To the extent Plaintiff seeks itemization of each and every protected document, CBU maintains that that is not required under the rules and would be unduly burdensome.

### S.  Section IV- "Production-Integrity Deficiencies" (ECF No. 48-1, at PageID 604– 05)

Plaintiff's Motion highlights several alleged "structural defects" with CBU's document production.  (ECF No. 48-1, at PageID 604–05.)  Plaintiff's assertions regarding "custodian self-selection," "HR routing," and "post hoc" printouts are improper.  The presence of forwarded emails or printouts does not establish any defect in the collection process or any violation of Rule 26(g) – which Plaintiff claims not to currently be seeking relief under.  Plaintiff also takes issue

17

with the format of CBU's document production.  Plaintiff raised these issues in her correspondence

and CBU addressed those concerns therein:

> You also repeatedly request that CBU produce spreadsheets and similar materials in native format.  We would direct you to the Parties' Rule 26(f) Report filed with the Court, specifically Section III, Paragraph h.  As set forth therein, CBU was entitled to disclose and produce ESI in hardcopy or static form.  It goes on to state that a party may request disclosure of metadata or native files for particular documents **"where good cause has been demonstrated** (e.g., when the original creation date of a document is an issue and disputed) or when a static image is not reasonably usable[.]" Your Letters do not satisfy that standard.  If you would like to renew that request with supplemental information, we would be happy to consider that at any point.

> Finally, your April 28 Letter advances speculative accusations regarding "non-original-source" documents, "ad hoc forwarding," and supposed flaws in CBU's collections process.  These accusations are unfounded and inappropriate.  The native-format request has already been addressed above.  It is unclear what records you are requesting related to the webpages that we have previously produced or why those are necessary in light of what has already been produced.  Regarding Paragraph D of that Letter, we have already advised that many documents have not been produced given that we are waiting for the entry of a protective order.  Additionally, we have identified several materials within this letter that we are continuing to search for.  Regarding the remainder of your issues raised, respectfully, you are not entitled to a detailed roadmap of CBU's internal collection processes, custodians, or search terms at this stage.  We are willing to continue working with you to identify and produce any relevant, responsive, non-privileged documents.

(ECF No. 48-8, at PageID 387.)  Plaintiff's Motion does not address any of those issues

whatsoever.

## **CONCLUSION**

Based on the foregoing, CBU respectfully requests that the Court deny Plaintiff's Motion.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

By:  *s/Stephen W. Vescovo*
STEPHEN W. VESCOVO (7246)
JAMIE GIBBER  (39552)
2900 One Commerce Square
40 S. Main St.
Memphis, TN  38103
(901) 525-8721
svescovo@lewisthomason.com
jgibber@lewisthomason.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2026, a copy of the foregoing pleading has been delivered to the following via email:

Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com
*Pro se Plaintiff*

s/Stephen w. Vescovo
STEPHEN W. VESCOVO

19