UTI01.10003

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

DR. LEIGH M. JOHNSON,

      Plaintiff,

vs.                                         Case No.: 2:25-cv-02618-MSN-atc

CHRISTIAN BROTHERS UNIVERSITY,

      Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTIAN BROTHERS UNIVERSITY'S MOTION FOR PROTECTIVE ORDER

Defendant, Christian Brothers University ("CBU"), submits this Memorandum of Law in Support of its Motion for Protective Order.

## INTRODUCTION

Plaintiff has served two sets of Requests for Production. While styled as a "Second Set," the later requests are largely duplicative, cumulative, and disproportionate to the needs of the case. The Second Set does not meaningfully advance discovery in this case. Instead, it imposes an extraordinary and unnecessary burden on CBU by repackaging previously served requests into a far greater number of subparts, while simultaneously expanding the scope of discovery beyond what Rule 26 permits. Although styled as thirty-two additional requests, the Second Set functionally consists of more than one hundred discrete requests when subparts are considered, bringing Plaintiff's total Requests for Production to 152 total requests.

This volume alone is disproportionate in light of the nature of this case. More importantly, however, the Second Set is largely duplicative of and cumulative of the First Set. It seeks the same

categories of documents, but divides those categories into increasingly granular and overlapping subparts. The result is not 102 requests seeking discovery of different documents or new areas, but duplicative discovery that would require CBU to undertake repetitive review and response efforts with little, if any, additional probative value.

Rule 26 expressly directs courts to limit discovery that is cumulative, duplicative, or disproportionate to the needs of the case. Plaintiff has already availed herself of broad discovery through her First Set and has further sought relief through a pending Motion to Compel to address CBU's objections. The Second Set, therefore, represents an improper attempt to expand discovery beyond reasonable bounds while there is an unresolved and ongoing dispute as to the First Set, which encompasses all of the same documents.

Accordingly, CBU respectfully moves for a protective order to prevent undue burden and expense and to ensure that discovery in this matter proceeds in a manner consistent with Rule 26.

### RELEVANT FACTS AND BACKGROUND

Plaintiff filed the instant action to challenge her selection for non-retention during the retrenchment process implemented when CBU was forced to declare financial exigency. (See ECF Nos. 2, 33.) Plaintiff brings claim of sex discrimination, retaliation, and breach of contract, related to her selection for non-retention. (See ECF Nos. 2, 33.)

On March 25, 2026, Plaintiff issued two initial sets of discovery requests: thirty (30) Requests for Admission, and fifty (50) Requests for Production ("First Set"). (See ECF Nos. 48-2, 48-3.) On April 24, 2026, CBU served its responses to these initial discovery requests. (See ECF No. 42.) Plaintiff sent a lengthy, 20-plus page deficiency letter on April 27, 2026 (ECF No. 48-5), followed by a supplemental letter on April 28, 2026 (ECF No. 48-6), identifying a broad array of purported issues with CBU's discovery responses. CBU responded to Plaintiff's letter to

continue the consultation efforts, but Plaintiff filed a Motion to Compel, to which CBU has also responded.  (See ECF Nos. 48, 52.)

On May 1, 2026, Plaintiff issued her first set of Interrogatories consisting of fifteen (15) interrogatories.  (Plaintiff's First Set of Interrogatories, attached hereto as **Ex. A**.)  The undersigned requested an extension on CBU's responses due to being out of the country.  Plaintiff granted that extension through June 12, 2026.

On May 26, 2026, Plaintiff propounded her second set of Requests for Production ("Second Set"), with Requests 51 through 82.  ((Plaintiff's Second Set of Requests for Production, attached hereto as **Ex. B**.)  While the Second Set contains thirty-two (32) enumerated requests – on top of the fifty (50) requests previously propounded with Plaintiff's First Set– many of the requests contain several subparts, ranging from a minimum of three subparts to a maximum of eight subparts.  Counting said subparts, the Second Set consists of one-hundred and two (102) requests, bringing Plaintiff's total number of requests between the two sets to one-hundred and fifty-two (152) total requests for production.  As outlined below, in addition to the sheer volume of requests for a fairly straightforward case, many of the requests are cumulative and duplicative of the First Set, and they are separately overbroad and not proportional to the needs of the case.

## LAW AND ARGUMENT

### I.     Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), discovery is limited to "any non-privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Although this is a broad standard, it does not "allow fishing expeditions, and a 'court retains discretion to determine that a discovery request is too broad and oppressive.'" Elvis Presley Enters. v. City of Memphis, No. 2:18-cv-02718, 2020 U.S. Dist. LEXIS 125534, at *12 (W.D. Tenn. July 16, 2020) (quoting Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305

3

(6th Cir. 2007).  Additionally, discovery must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rule outlines various factors to assess the proportionality of discovery:  the "importance of the issues at stake in the action," the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Id.

> Rule 26(b)(2)(C) requires courts to limit discovery in specific circumstances:
>
> (C) *When Required*.  On motion or on its own, the court **must** limit the frequency or extent of the discovery otherwise allowed by these rules or by local rule if it determines that:
> > (i) the discovery sought is **unreasonably cumulative or duplicative**, . . . ;
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> > (iii) the proposed discovery is **outside the scope** permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (emphasis added).

Additionally, pursuant to Rule 26, for good cause, the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order forbidding the disclosure or discovery of certain items, forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters.  Fed. R. Civ. P. 26(c)(1).  The Motion must also include a certification the moving party in good faith conferred **or attempted to confer** with the non-moving in an effort to resolve the dispute prior to filing the Motion.  Fed. R. Civ. P. 26(c)(1).

## II.    Argument

At the outset, while the Second Set is numbered 51 through 82, many of the requests include multiple subparts.  When each subpart is counted as a separate request, the Second Set consists of approximately 102 discrete requests, bringing the total across both sets to

approximately 152 requests.  The sheer volume of the requests demonstrates the overly burdensome and disproportional nature of the discovery sought.  This case is fairly straightforward. CBU declared financial exigency as a result of operating at a deficit for several years in a row and being placed on probation with its accrediting agency.  That declaration triggered the retrenchment process outlined in the Handbook.  As a part of that process, the Retrenchment Committee was tasked with identifying a specific number of faculty positions to eliminate across the various schools and, even more granularly, within each specific department.  The Deans and Chairs then recommended specific faculty members to be selected for non-retainment based on the guidance of the Handbook, Retrenchment Committee figures, and President Archer's Presidential Charge. Plaintiff's position was one of the positions selected for non-retainment in the Department of Religion and Philosophy.  Plaintiff's lawsuit alleges that CBU discriminated against her in selecting her position for non-retainment, retaliated against her after she challenged that decision, and that the actions were a breach of contract.  (See ECF Nos. 2, 33.)  Plaintiff's efforts to seek discovery of documents beyond those touching on these matters is beyond the scope of Rule 26(b)(1).

Further, although the requests in the Second Set are framed as new requests, the requests in the Second Set seek the exact same documents or categories already covered within the First Set.  As highlighted in the chart below, the requests cover the same exact documentation requested in the First Set:

| Topics / Documents Sought | Request Nos. from First Set | Request Nos. from Second Set |
| --- | --- | --- |
| Documents related to CBU's preservation efforts | Nos. 44 – 47 | Nos. 51 – 53 |
| Documents related to the application of handbook criteria in retrenchment decisions | Nos. 6, 12 – 19 | Nos. 54 – 56 |

| Topics / Documents Sought | Request Nos. from First Set | Request Nos. from Second Set |
| --- | --- | --- |
| Documents supporting statements made regarding CBU's financial status at the end of the 2023-2024 school year | No. 49 | No. 57 |
| Documents related to CBU's declaration of financial exigency | Nos. 1 – 4 | No. 58 |
| Documents related to retrenchment decisions | Nos. 6, 12 – 14 | No. 59 |
| Documents related to other faculty members throughout the Department of Religion and Philosophy and School of Arts[1] | Nos. 16 – 18 | No. 60 |
| Documents related to Plaintiff's qualifications (specifically regarding teaching religion courses) | No. 18 | No. 61 |
| Documents related to Father Bruce | Nos. 17 – 18 | No. 62 |
| Documents related to Dr. Maloney | Nos. 17 – 18 | No. 63 |
| Documents related to Dr. Leib | Nos. 17 – 18, 22 | No. 64 |
| Documents related to Dr. Haught | Nos. 17 – 18 | No. 65 |
| Documents related to reassignment of courses to Dr. Haught | Nos. 27 – 30 | No. 66 |
| Documents related to Plaintiff, Father Bruce, and Drs. Maloney, Leib and Haught | Nos. 12 – 18 | No. 67 |
| Documents related to communications with attorneys from the April 26, 2024, incident | Nos. 39 – 40 | No. 68 |

---

[1] As mentioned herein, any information about faculty outside of the Department of Religion and Philosophy is irrelevant to Plaintiff's claims.

| Topics / Documents Sought | Request Nos. from First Set | Request Nos. from Second Set |
|---|---|---|
| Documents related to communications about advice of counsel | Nos. 7 – 10 | No. 69 |
| Documents related to the April 26, 2024, incident | Nos. 39 – 41 | Nos. 70 – 73 |
| Documents related to communications from the Faculty Review Committee | Nos. 33 – 36 | Nos. 74 – 76 |
| Documents related to the retrenchment committee | Nos. 4, 6 | Nos. 77 – 80 |
| Documents related to correspondence with the AAUP | No. 48 | Nos. 81 – 82 |

Accordingly, the requests do not seek new document categories. They seek the same materials, just described more granularly. This "repackaging" of already existing requests is the exact type of "unreasonably cumulative or duplicative" discovery contemplated by the Rules. Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff has had ample opportunity to obtain the discovery via her First Set. See Fed. R. Civ. P. 26(b)(2)(C)(ii). To the extent Plaintiff felt the need to propound additional discovery in light of CBU's objections to the First Set, Plaintiff's use of a second set of discovery requests was improper, especially in light of the fact that Plaintiff had already filed a Motion to Compel prior to propounding her Second Set. (See ECF Nos. 48, 52.)

Finally, several of Plaintiff's requests (both in the First and Second Sets) seek discovery of documents "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1); 26(b)(2(C)(iii). For example,[2] the Second Set seeks documents spanning from August 1, 2023,

---

[2] The following examples are just that – examples. There are several other issues with Plaintiff's Requests, as outlined in CBU's objections to Plaintiff's First Set (ECF No. 48-9, 48-10), CBU's response to Plaintiff's deficiency letters (ECF No. 48-8), and in CBU's Response to Plaintiff's Motion to Compel (ECF No. 52.) Those arguments are incorporated as if fully set forth herein.

7

through the date of CBU's responses. It is unclear how anything after the retrenchment process or beyond the Spring 2024 semester would be relevant to Plaintiff's claims. Additionally, Plaintiff's Second Set seeks documents related to retained faculty within the School of Arts generally who were not part of the Department of Religion and Philosophy. As the undersigned has explained, the retainment decisions were not made across the schools but were made within the specific departments. Accordingly, documents relating to faculty outside of the Department of Religion and Philosophy are not relevant to either parties' claims or defenses. Plaintiff's requests for these documents is improper and is not proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1).

To the extent Plaintiff seeks documents related to CBU's declaration of financial exigency, such documents would also be outside the scope of Rule 26(b)(1). The issue in Plaintiff's Complaint is not CBU's declaration of financial exigency, but rather Plaintiff's non-retainment as a result of said financial exigency. A deep dive into CBU's financial documents supporting its determination of financial exigency is the exact type of "fishing expedition" courts seek to prevent. See Elvis Presley Enters., 2020 U.S. Dist. LEXIS 125534, at *12 (quoting Surles, 474 F.3d at 305)). These issues alone would require the Court to limit Plaintiff's attempted discovery. See Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Additionally, good cause exists for the Court to enter a protective order pursuant to Rule 26(c)(1). See Fed. R. Civ. P. 26(c)(1). CBU has already expended substantial time and resources responding to Plaintiff's First Set, which themselves encompassed the key issues in this case and beyond. As mentioned above, the Second Set imposes an additional 102 requests (when considering subparts). Even if CBU were to respond primarily by asserting objections and incorporating prior responses, doing so would still require a time-consuming, line-by-line analysis of each request, cross referencing prior productions, and ensuring no inadvertent inconsistencies.

8

This process would impose significant additional burden and expense without a corresponding benefit in terms of new or relevant information.  The duplicative and cumulative nature of these requests makes it highly likely that any responses – no matter the form – will lead to further motion practice.  This creates a compounding cycle of burden and expense that Rule 26(c) is designed to prevent.

Absent relief from the Court, CBU will be forced to expend significant additional resources responding to requests that seek largely the same information already requested and produced, resulting in undue burden and disproportionate expense relative to the needs of the case.  A protective order is therefore necessary to ensure that CBU is spared from that burden and expense and that discovery proceeds in a manner consistent with the proportionality requirements of Rule 26.

## CONCLUSION

For the foregoing reasons, CBU respectfully requests that the Court enter an order, pursuant to Rule 26(b)(2)(C) limiting the discovery sought by Plaintiff, or a protective order pursuant to Rule 26(c) relieving CBU from any obligation to respond to the cumulative and duplicative discovery requests in the Second Set.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

By:  _s/Stephen W. Vescovo_
STEPHEN W. VESCOVO (#007246)
JAMIE M. GIBBER (#039552)
40 South Main Street, Suite 2900
Memphis, TN  38103-5529
(901) 525-8721
svescovo@lewisthomason.com
jgibber@lewisthomason.com

*Attorneys for Defendant, Christian Brothers University*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of June, 2026, a copy of the foregoing pleading has been delivered to the following via email:

Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com
*Pro se Plaintiff*


s/*Stephen W. Vescovo*
STEPHEN W. VESCOVO (7246)


4930-6321-5796

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| DR. LEIGH M. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:25-cv-02618-BCL-atc |
| | ) |
| CHRISTIAN BROTHERS UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

---

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHRISTIAN BROTHERS UNIVERSITY**

Plaintiff Dr. Leigh M. Johnson ("Plaintiff"), proceeding *pro se*, serves the following First Set of Interrogatories on Defendant Christian Brothers University ("Defendant" or "CBU") pursuant to Rule 33 of the Federal Rules of Civil Procedure. Defendant must answer each interrogatory separately and fully in writing under oath within the time allowed by the Federal Rules of Civil Procedure.

## I. DEFINITIONS

**1. "Plaintiff"** means Dr. Leigh M. Johnson.

**2. "Defendant," "CBU," "You," or "Your"** means Christian Brothers University, including its officers, trustees, administrators, employees, agents, representatives, attorneys, and all persons acting or purporting to act on its behalf.

**3. "Communication"** means any oral, written, electronic, recorded, or other exchange of information, including emails, letters, memoranda, text messages, chat messages, notes, meeting minutes, reports, calendar entries, voicemail, and communications through any institutional platform or personal device used for CBU business.

**4. "Document"** has the broadest meaning allowed under Rule 34 and includes electronically stored information ("ESI"), drafts, metadata, attachments, reports, notes, spreadsheets, databases, recordings, logs, meeting minutes, agendas, calendar entries, and records maintained in any paper or electronic form.

**5. "Identify" when referring to a person** means to state the person's full name, title or position, department or affiliation, and, if known, the person's role in the events or matters described.

**6. "Identify" when referring to a document or communication** means to state the document or communication's date, author, sender, recipient(s), general subject matter, present custodian or location, and Bates number if already produced.

**7. "Employees"** means all individuals on Defendant's payroll, regardless of position, title, function, or department, including but not limited to full-time and part-time faculty (tenured, tenure-track, non-tenure-track, adjunct, and visiting), administrators, professional staff, clerical staff, support staff, coaches, athletic personnel, and any other individuals to whom Defendant issued a W-2 or otherwise paid wages or salary, whether or not they actually worked on the day in question.

**8. "Relevant period"** means January 1, 2023 through the present, unless a particular interrogatory specifies a different period.

## II. INSTRUCTIONS

1. Each interrogatory must be answered separately and fully in writing under oath by Defendant, through an authorized representative with knowledge of the information or after reasonable inquiry.

2. If Defendant objects to any interrogatory, state the specific grounds for the objection and answer the non-objectionable portion to the fullest extent possible.

3. If Defendant's answer to a specific interrogatory is limited because information needed to answer is unknown, unavailable, lost, deleted, destroyed, not preserved, or no longer in Defendant's possession, custody, or control, state that fact and explain the basis for the contention as part of Defendant's answer to that interrogatory.

4. If Defendant's answer depends on information contained in business records, and Defendant elects to rely on Rule 33(d), identify the specific records in sufficient detail to permit Plaintiff to locate and identify the responsive information as readily as Defendant could.

5. These interrogatories are continuing in nature to the extent required by Rule 26(e). Defendant must supplement or correct its answers if it later learns that an answer is incomplete or incorrect in any material respect.

## III. INTERROGATORIES

### INTERROGATORY NO. 1: Litigation Hold / Preservation Trigger

Identify the date on which Defendant first reasonably anticipated litigation by Plaintiff concerning her termination, appeal, severance agreement, alleged discrimination, alleged retaliation, or related events, and state the facts supporting that date.

### INTERROGATORY NO. 2: Preservation Notices

State whether Defendant issued any litigation hold, preservation notice, ESI hold, document-retention instruction, or similar communication concerning Plaintiff, her termination, the Retrenchment Committee, the Faculty Review Committee appeal, the April 26, 2024 classroom incident, or this litigation; if so, identify the date, sender, recipients, subject matter, and categories of information covered.

**INTERROGATORY NO. 3: Custodians Searched or Preserved**

Identify each custodian whose paper files, email, text messages, chat messages, network files, cloud storage, shared drives, personal devices used for CBU business, or other electronically stored information were searched or preserved in connection with Defendant's document production in this case.

**INTERROGATORY NO. 4: Search Methodology**

Describe the search methodology Defendant used to locate responsive documents and ESI in this case, including the systems searched, date ranges searched, search terms used, custodians searched, and whether any potentially responsive documents were excluded from production on the basis of privilege, confidentiality, relevance, burden, or any other objection.

**INTERROGATORY NO. 5: Missing or Unavailable Records**

Identify any categories of potentially responsive documents, communications, recordings, reports, meeting minutes, notes, metadata, or ESI concerning Plaintiff, the Retrenchment Committee, the Faculty Review Committee appeal, the April 26, 2024 classroom incident, or the decision to eliminate Plaintiff's position that Defendant contends no longer exist, cannot be located, were deleted, were overwritten, were not preserved, or are otherwise unavailable.

**INTERROGATORY NO. 6: Employee Count for Title VII Damages Cap**

State the number of employees Defendant had for each working day in each of twenty or more calendar weeks in calendar years 2022, 2023, and 2024, identifying the basis for that calculation, including any payroll records, HRIS system, or other source used.

**INTERROGATORY NO. 7: Retrenchment Committee Records**

Describe the work performed by the Retrenchment Committee concerning the 2023 financial-exigency process, including the dates of meetings, topics addressed, recommendations made, and information provided to the Committee.

**INTERROGATORY NO. 8: Retrenchment Committee Final Report and Related Materials**

State whether any drafts, notes, comments, redlines, emails, agendas, minutes, attachments, data sets, spreadsheets, financial documents, voting records, or communications existed concerning the Retrenchment Committee's final report, and if Defendant contends any such materials do not exist or are unavailable, explain why.

**INTERROGATORY NO. 9: Cinquegrani Retention**

State Defendant's complete factual basis for retaining Fr. Bruce Cinquegrani during the 2023 financial-exigency/retrenchment process instead of selecting him for termination, including the criteria applied and the decisionmaker or decisionmakers involved.

**INTERROGATORY NO. 10: Haught Retention / Reassignment**

State Defendant's complete factual basis for retaining and/or reassigning Paul Haught to a full-time faculty role during the 2023 financial-exigency/retrenchment process, including the criteria applied, the decisionmaker or decisionmakers involved, the courses or duties assigned to him

that otherwise would have been assigned to Plaintiff, and the position number, faculty line, or budget code under which Haught was reassigned and how that line related to Plaintiff's prior position.

### INTERROGATORY NO. 11: Leib Retention

State Defendant's complete factual basis for retaining Karl Leib during the 2023 financial-exigency/retrenchment process, including the criteria applied, the decisionmaker(s), and any rationale Defendant contends justified retaining him (including but not limited to accreditation requirements, seniority, or departmental staffing).

### INTERROGATORY NO. 12: Application of Faculty Handbook Retention Criteria

State how Defendant applied each of the Faculty Handbook criteria of "tenure and status as a Christian Brother," "merit, versatility, seniority," and "the goals of the University regarding numbers of women, women religious, and members of minority races" in its single decisional process to eliminate Plaintiff's position and retain other faculty members in the Department of Religion and Philosophy and the School of Arts.

### INTERROGATORY NO. 13: Faculty Review Committee Appeal Delay

State the complete factual basis for the timing, scheduling, postponement, delay, or non-occurrence of Plaintiff's Faculty Review Committee hearing after her December 15, 2023 appeal, including all decisions made about whether and when to schedule the hearing, all communications about the timing of the hearing, and all persons who participated in or influenced those decisions.

### INTERROGATORY NO. 14: April 26, 2024 Classroom-Removal Incident

State Defendant's complete factual account of the April 26, 2024 incident involving Plaintiff, Ron Brandon, Tawny Tullia, Campus Safety and/or police, students, or Plaintiff's classroom, including who authorized the action, the reason for the action, who was present, whether any report or record was created, and why no report or record has been produced if none has been produced.

### INTERROGATORY NO. 15: July 2024 Public Financial Statements

State Defendant's complete factual basis for the July 2024 public statements by Brother Chris Englert and Board of Trustees Chairperson Emily Greer that CBU had "no debt" and "did end last year in the black," which were published in *The Daily Memphian*, televised on public television channel WKNO-TV, transmitted on WKNO-FM public radio station, and posted on CBU's website, including all financial records, audits, board reports, budgets, communications, or other information supporting those statements, and, if Defendant contends those statements are consistent with its asserted financial-exigency rationale for terminating Plaintiff's tenured appointment, the factual basis for that contention.

Dated: May 1, 2026

Respectfully submitted,

/s/ Dr. Leigh M. Johnson
Dr. Leigh M. Johnson
*Pro se*
1492 Newton Street NW, Apt A
Washington, DC 20010
Phone: (901) 679-5937
Email: drleighmjohnson@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 1, 2026, I served the foregoing Plaintiff's First Set of Interrogatories to Defendant Christian Brothers University by email on counsel for Defendant at svescovo@lewisthomason.com and jgibber@lewisthomason.com, in accordance with the parties' course of dealing in this case, in which counsel have used email service throughout discovery without objection.

/s/ Dr. Leigh M. Johnson
Dr. Leigh M. Johnson

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**DR. LEIGH M. JOHNSON,**

     Plaintiff,

     v.                            Case No. 2:25-cv-02618-BCL-atc

**CHRISTIAN BROTHERS UNIVERSITY,**

     Defendant.

### PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of this Court, Plaintiff Dr. Leigh M. Johnson, appearing pro se, hereby requests that Defendant Christian Brothers University ("CBU" or "Defendant") produce for inspection and copying the documents identified below within thirty (30) days of service of this Request.

## DEFINITIONS AND INSTRUCTIONS

The Instructions set forth in Plaintiff's First Set of Requests for Production are incorporated by reference and apply to this Second Set of Requests. Where any responsive document to these Second Requests is produced with any portion redacted or withheld on the basis of privilege or work-product claim, Defendant shall identify the redacted or withheld portion and the basis for the redaction or withholding consistent with Fed. R. Civ. P. 26(b)(5)(A).

Additions to Plaintiff's **Instructions** to First Set of Requests include:

1. Production of electronically stored information shall be governed by Section III.h of the Discovery Plan in the Report of the Parties' Rule 26(f) Planning Meeting [ECF No. 26, PageID 135]. For email productions, Plaintiff explicitly requests that Defendant produce complete email families, including parent emails, replies, forwards, attachments, and non-privileged embedded or linked documents necessary to understand the communication. Defendant shall also preserve original metadata for responsive ESI where good cause exists under Section III.h, including where a document's creation date, modification date, author, custodian, version history, attachment relationship, chronology, authenticity, or chain of custody is material, or where static production is not reasonably usable, including spreadsheets and tabular data.

2. "Default Date Range" in Instruction No. 1 of the First Set Requests for Production on March 25, 2026 does not apply to this Second Set of RFPs. Each Request below specifies its own temporal scope. Where no temporal scope is specified, the relevant period is August 1, 2023 through the date of Defendant's response.

The **Definitions** set forth in Plaintiff's First Set of Requests for Production on March 25, 2026 are incorporated by reference and apply to this Second Set of RFPs, with the following modifications:

1. "ECF 47" means Defendant's Answer to Plaintiff's First Amended Complaint, filed May 13, 2026.

2. "Handbook §2.7.3.2." refers to the CBU Faculty Handbook section prescribing retention criteria for use in connection with a declared financial exigency. Those same retention criteria are also set forth in Appendix G.3.e of the Faculty Handbook.

3. "Maloney" means Dr. Philip J. Maloney, identified in ECF 47 ¶26 as "Max Maloney."

4. "Wallace" means Dr. James Buchanan Wallace; "Fulmer" means Dr. Burt Fulmer; "Leib" means Dr. Karl Leib; "Haught" means Dr. Paul Haught; "Cinquegrani" means Fr. Bruce Cinquegrani; "Tullia" means Dean Tawny LeBouef Tullia; "Englert" means Br. Chris Englert; "Greer" means Board of Trustees Chairperson Emily Greer; and "Plaintiff" means Dr. Leigh M. Johnson.

5. "Retained Faculty" means each full-time tenured or tenure-track faculty member in the relevant retrenchment unit (i.e., CBU's School of Arts) who was not selected for non-renewal or termination in connection with the 2023–2024 retrenchment process.

6. "Relevant decision unit" refers to CBU's School of Arts, including but not limited to the Department of Religion and Philosophy.

7. "¶108 Handbook Compliance Contention" refers to Defendant's pleaded contention in ECF 47 ¶108 that "Defendant was forced to eliminate numerous tenured faculty positions, including Plaintiff's, due to financial exigency, as defined by the Faculty Handbook **in accordance with all procedures set forth therein**." (Emphasis added.)

8. "April 26 Advice-of-Counsel Invocation" refers to the statement in ECF 47 ¶74 that CBU administration "contacted their attorney and relying on advice of counsel, elected to err on the side of caution" in connection with the April 26, 2024 incident in which Plaintiff was removed from her classroom by Dean Tullia, Ron Brandon, law enforcement and/or Campus Safety.

9. "Relevant comparator information" refers to appointment contracts, salary, annual faculty review documents, student course evaluations, teaching performance assessments, scholarship and service records.

10. "AAUP" refers to the American Association of University Professors.

**11.** "RC" refers to the Retrenchment Committee.

## REQUESTS FOR PRODUCTION

### A. PRESERVATION AND DISPOSITION OF RECORDS.

**REQUEST NO. 51 (MALONEY):** Produce documents sufficient to show, for the period from December 7, 2023 through the date of Defendant's response: (a) every preservation instruction, litigation hold supplement, or directive issued by Defendant or its counsel to CBU Information Technology or Human Resources personnel concerning the email account, network files, shared drives, and backup or archival records of Maloney; (b) any modification, suspension, or discontinuation of CBU's ordinary offboarding, account-deactivation, email-deletion, archival, or device-disposition processes as applied to Maloney; and (c) the present status, location, and accessibility of Maloney's CBU email account, network files, shared drives, and CBU-issued devices following his May 10, 2026 departure as referenced in ECF 47 ¶26.

**REQUEST NO. 52 (WALLACE):** Produce documents sufficient to show, for the period from December 7, 2023 through the date of Defendant's response: (a) every preservation instruction, litigation hold supplement, or directive issued by Defendant or its counsel to CBU Information Technology or Human Resources personnel concerning the email account, network files, shared drives, backup or archival copies of records of Wallace; (b) any modification, suspension, or discontinuation of CBU's ordinary offboarding, account-deactivation, email-deletion, archival, or device-disposition processes as applied to Wallace; and (c) the present status, location, and accessibility of Wallace's CBU email account, network files, shared drives, and CBU-issued devices following his May 11, 2026 departure as referenced in ECF 47 ¶26.

**REQUEST NO. 53:** For each of the following custodians, produce all documents, emails, calendar entries, and other electronic communications that mention Plaintiff by name, title, or position from October 1, 2023 through July 31, 2024, custodian-by-custodian: David Archer, Lydia Rosencrants, Tawny LeBouef Tullia, Ron Brandon, Scott Geis, James Buchanan Wallace, Philip J. Maloney, Theresa P. Jacques, and Br. Chris Englert.

### B. DEFENDANT'S ¶108 HANDBOOK COMPLIANCE CONTENTION.

**REQUEST NO. 54 (Handbook Retention Criterion 1.):** Produce all documents reflecting the application of Handbook §2.7.3.2 criterion (1) ("tenure or status as a Christian Brother") to Plaintiff relative to each member of the Retained Faculty in the relevant decisional unit during the 2023–2024 retrenchment process, including deliberative memoranda and meeting records.

**REQUEST NO. 55 (Handbook Retention Criterion 2.):** Produce all documents reflecting the application of Handbook §2.7.3.2 criterion (2) ("merit, versatility, seniority") to Plaintiff relative to each member of the Retained Faculty in the relevant decisional unit during the 2023–2024 retrenchment process, including deliberative memoranda and meeting records.

**REQUEST NO. 56 (Handbook Retention Criterion 3.):** Produce all documents reflecting the application, non-application, modification, suspension, or interpretation of Handbook §2.7.3.2

criterion (3) ("goals of the University regarding numbers of women, women religious, and members of minority groups") during the 2023–2024 retrenchment process, including any drafts of President Archer's October 31, 2023 "Presidential Charge to Chairs and Deans" Letter unilaterally declaring criterion (3) "inapplicable" and directing Chairs and Deans that retention recommendations be made "irrespective of gender and race." (ECF 33-1, Exhibit H, PageID 186–187)

**REQUEST NO. 57 (Handbook-reliance relative to the July 2024 Englert/Greer/Barnes interview):** Produce all relevant documents sufficient to show the basis for President Englert's claim in the July 2024 interview with Eric Barnes and Emily Greer (aired on WKNO-TV, WKNO-FM public radio, reproduced in *The Daily Memphian*, and reposted on CBU's website) that CBU ended the 2023-24 Academic Year with "no debt" and "in the black" including any drafts, revisions, and final approvals of that statement.[1]

**REQUEST NO. 58:** Relative to Req. No. 57 above, produce all relevant documents sufficient to demonstrate the verity of Defendant's pleaded contention at ECF 47 ¶108 that CBU was "forced to eliminate [Plaintiff] ... due to financial exigency, as defined by the Faculty Handbook in accordance with all procedures set forth therein," including any internal memorandum, analysis, or compliance review identifying the Faculty Handbook sections relied upon for the contention as pleaded.

**REQUEST NO. 59:** Produce any documents reflecting the basis upon which Plaintiff's *individual* faculty position, as distinguished from "program eliminations" or "aggregate numerical reductions," was selected for elimination in the 2023–2024 retrenchment process, including: (a) any document analyzing, comparing, or evaluating the financial impact of eliminating Plaintiff's specific position; (b) any document analyzing the institutional income generation, credit hour production, or broader financial contribution of faculty members selected for elimination, including Plaintiff; (c) any document supporting the Handbook-compliance of President Archer's statement (in Plaintiff's December 7, 2023 termination meeting) that termination decisions about specific individual positions, including Plaintiff's, were made independent of financial exigency considerations; and (d) any document reconciling, contradicting, or otherwise addressing President Archer's statements in Plaintiff's December 7, 2023 "termination meeting" with respect to Defendant's contemporaneous declaration of financial exigency.

## C. COMPARATOR ANALYSIS.

**REQUEST NO. 60 (Comparator Data):** Produce relevant institutional data, reports, exports, or extracts maintained by Defendant or any of its offices (including the Office of the Registrar, the Office of Academic Affairs, the Department of Human Resources, the Provost's Office, or any successor or equivalent office) reflecting, for each member of the Department of Religion and Philosophy and each member of the Retained Faculty within the School of Arts, for each fall,

---

[1] Interview available at the following: WKNO-TV interview at https://www.pbs.org/video/christian-brothers-university-7n4bbq/; WKNO-FM interview at https://www.wknofm.org/behind-the-headlines-0/2024-07-18/bth-future-of-christian-brothers-university; *The Daily Memphian* news article available at https://dailymemphian.com/section/metroeducation/article/45201/memphis-education-christian-brothers-university-continues-recovery-as-new-academic-year-nears; Englert/Greer/Barnes interview posted on CBU website at https://www.cbu.edu/news/wknos-behind-the-headlines-with-brother-chris-emily-greer/.

spring, and summer semesters between Fall 2018 and Spring 2024 identifying: (a) name, rank, tenure status, department, and school of each faculty member; (b) each course taught by each such faculty member, identified by course number, course title, section number, semester, and year; (c) enrollment per section for each course listed per faculty member, semester, and academic year; (d) total student credit hours generated for each course listed per faculty member, semester, and academic year; (e) course-load assignment and any FTE or full-time-equivalent allocation per faculty member, semester, and academic year; and (f) any administrative-role allocation per faculty member, semester, and academic year. Defendant shall produce such data in native form (including without limitation the format in which the data is maintained in the system of record) consistent with Section III.h of the Discovery Plan and Plaintiff's invocation of the good-cause provisions thereof indicated in Instruction (1) above.

**REQUEST NO. 61 (Plaintiff's Qualifications):** Produce all documents concerning Defendant's evaluation, review, assessment, or determination of Plaintiff's qualifications, credentials, prior teaching experience, or academic preparation to teach religion courses (including the "Philosophy of Religion" course) offered in support of Defendant's claim at ECF 47 ¶44 that Plaintiff "was not qualified to teach Religion courses," including: (a) any review of Plaintiff's curriculum vitae; (b) any review of Plaintiff's prior teaching experience, including her seven-year teaching of "The Search for Values in Western History and Religion" at Rhodes College from 2007 through 2014, prior to her employment by Defendant; (c) any review of Plaintiff's scholarship or publication record bearing on religion, theology, ethics, or philosophy of religion; (d) any document stating, concluding, recommending, or implying that Plaintiff could or could not teach any specific course in the Department of Religion and Philosophy; (e) the identity of every person who had responsibility for any such evaluation or determination; (f) the methodology, standards, or criteria applied in making any such evaluation or determination; and (g) any document reflecting the date on which Defendant first formed the conclusion or position that Plaintiff could not teach religion courses.

**REQUEST NO. 62, COMPARATOR CINQUEGRANI:** Produce the relevant comparator information for Bruce Cinquegrani from August 1, 2018 through the date of Defendant's response to this Request and all documents falling within any of the following categories concerning Cinquegrani's retention, non-renewal, or reassignment in the 2023–2024 retrenchment process, from August 1, 2023 through May 11, 2024: (a) ranking sheets, rubrics, scoring documents, or evaluative grids applied to Cinquegrani; (b) memoranda, recommendations, or decision documents authored by or addressed to any member of the Retrenchment Committee, the Faculty Review Committee, the Provost, the President, the Board of Trustees, the relevant Department Chair, or the relevant Dean; (c) minutes, notes, or summaries of any meeting at which Cinquegrani's retention, non-renewal, or reassignment was discussed; and (d) communications between or among the President, Provost, Deans, Department Chairs, or members of the Retrenchment Committee or Faculty Review Committee.

**REQUEST NO. 63, COMPARATOR MALONEY:** Produce the relevant comparator information for Philip Maloney from August 1, 2018 through the date of Defendant's response to this Request and all documents falling within any of the following categories concerning Maloney's retention, non-renewal, or reassignment in the 2023–2024 retrenchment process, from August 1, 2023 through May 11, 2024: (a) ranking sheets, rubrics, scoring documents, or evaluative grids applied to Maloney; (b) memoranda, recommendations, or decision documents

authored by or addressed to any member of the Retrenchment Committee, the Faculty Review Committee, the Provost, the President, the Board of Trustees, the relevant Department Chair, or the relevant Dean; (c) minutes, notes, or summaries of any meeting at which Maloney's retention, non-renewal, or reassignment was discussed; and (d) communications between or among the President, Provost, Deans, Department Chairs, or members of the Retrenchment Committee or Faculty Review Committee.

**REQUEST NO. 64, COMPARATOR LEIB:** Produce the relevant comparator information for Karl Leib from August 1, 2018 through the date of Defendant's response to this Request and all documents falling within any of the following categories concerning Leib's retention, non-renewal, or reassignment in the 2023–2024 retrenchment process, from August 1, 2023 through May 11, 2024: (a) ranking sheets, rubrics, scoring documents, or evaluative grids applied to Leib; (b) memoranda, recommendations, or decision documents authored by or addressed to any member of the Retrenchment Committee, the Faculty Review Committee, the Provost, the President, the Board of Trustees, the relevant Department Chair, or the relevant Dean; (c) minutes, notes, or summaries of any meeting at which Leib's retention, non-renewal, or reassignment was discussed; and (d) communications between or among the President, Provost, Deans, Department Chairs, or members of the Retrenchment Committee or Faculty Review Committee.

**REQUEST NO. 65, COMPARATOR HAUGHT:** Produce the relevant comparator information for Paul Haught from August 1, 2014 through the date of Defendant's response to this Request and all documents falling within any of the following categories concerning Haught's retention, non-renewal, or reassignment in the 2023–2024 retrenchment process, from August 1, 2023 through May 11, 2024: (a) ranking sheets, rubrics, scoring documents, or evaluative grids applied to Haught; (b) memoranda, recommendations, or decision documents authored by or addressed to any member of the Retrenchment Committee, the Faculty Review Committee, the Provost, the President, the Board of Trustees, the relevant Department Chair, or the relevant Dean; (c) minutes, notes, or summaries of any meeting at which Haught's retention, non-renewal, or reassignment was discussed; and (d) communications between or among the President, Provost, Deans, Department Chairs, or members of the Retrenchment Committee or Faculty Review Committee.

**REQUEST NO. 66 (Reassignment of Plaintiff's courses to Haught):** Produce all documents concerning the implementation of any reassignment of Paul Haught from any administrative position to any faculty teaching position during or following the 2023–2024 academic year, including but not limited to the reassignment referenced in Defendant's Answer to the First Amended Complaint at ¶49, from October 1, 2023 through the date of Defendant's response, including: (a) the date on which any such reassignment was first proposed, considered, or evaluated, and the identity of every person who was consulted concerning any such reassignment; (b) the academic department, faculty line, courses, course load, FTE allocation, salary, rank, tenure status, and effective date contemplated or implemented for any such reassignment; (c) any analysis, evaluation, or determination of whether the faculty line, courses, teaching responsibilities, or curriculum contemplated for Haught included, overlapped with, or substituted for those previously held or taught by Plaintiff; (d) any analysis, consideration, or application of CBU Faculty Handbook Appendix G, including without limitation Appendix G.2.i ("relocated to an open position"), in connection with any such reassignment; (e) any

consideration of whether Plaintiff was eligible for, qualified for, or could have been offered any reassignment, relocation, or other employment comparable to that contemplated for Haught; and (f) communications between or among Haught, the President, the Provost, the Vice-Provost, Deans, Department Chairs, the Faculty Assembly, the Board of Trustees, or counsel concerning any such reassignment.

**REQUEST NO. 67:** Produce documents sufficient to show, for Plaintiff, Cinquegrani, Maloney, Leib, and Haught for each academic year from 2018–2019 through 2023–2024: rank, tenure status, primary discipline, courses taught (by title and enrollment), student credit hours generated, any administrative role occupied, and any scholarship or service activity reflected in Defendant's personnel records.

## D. ADVICE-OF-COUNSEL INVOCATIONS AND RELATED PREDICATE DOCUMENTS.

**REQUEST NO. 68:** Produce all documents sufficient to identify, by date, sender, recipient, and subject line, each communication between any CBU agent and any attorney concerning the April 26, 2024 incident, without revealing the substance of any communication Defendant contends remains privileged. Defendant's associated privilege log compliant with Fed. R. Civ. P. 26(b)(5)(A) identifying any communication withheld under any privilege or work-product claim in connection with the April 26, 2024 incident or the April 22, 2024 social-media post shall also be produced.

**REQUEST NO. 69 (Criterion (3) advice-of-counsel — RFP Responses Nos. 7-10):** In connection with Defendant's First RFP Responses Nos. 7-10, which invoke "attorney-client privilege" in connection with Defendant's disregard of the Faculty Handbook §2.7.3.2 criterion, i.e., the decision or instruction that retention recommendations should be made "irrespective of gender or race," and the interpretation, modification, suspension, amendment, or non-use of criterion (3) — produce: (a) documents sufficient to identify each communication between any CBU agent and any attorney concerning the application, non-application, modification, suspension, or interpretation of criterion (3), by date, sender, recipient, and subject line, without revealing the substance of any communication Defendant contends remains privileged; (b) all non-privileged documents reflecting Defendant's deliberation, analysis, or implementation of any advice received from outside counsel concerning the treatment of criterion (3), including any document directing or implementing the conclusion that retention recommendations be made "irrespective of gender or race"; and (c) Defendant's associated privilege log compliant with Fed. R. Civ. P. 26(b)(5)(A) identifying each communication withheld under any privilege or work-product claim in connection with this Request.

## E. APRIL 26, 2024 "INCIDENT REPORT" (Case No. 2024-00044).

**REQUEST NO. 70 (First-person witness contemporaneous records to the April 26, 2024 event):** Produce all contemporaneous notes, statements, communications, and records authored by, sent by, or received by Lieutenant Ryan, President David Archer, Acting President Ron Brandon, Dean Tawny LeBouef Tullia, Provost Lydia Rosencrants, Theresa P. Jacques, Beth Gerl, and any Memphis Police Department personnel or Campus Safety personnel present at or involved in the April 26, 2024 incident, including: (a) notes, or other contemporaneous records of the two April 26, 2024 meetings (the first held in or near the Dean's office with Plaintiff,

Brandon, Tullia, and Lt. Ryan, and the second held following Plaintiff's return from teaching her 11:00 a.m. class); (b) emails, text messages, or other electronic communications among or between the above named individuals concerning either meeting; (c) any witness statement, declaration, or written account prepared by any of these individuals; (d) any incident report, security report, or other formal record supporting the April 26, 2024 incident authored by any individual other than Chief Lotrionte; and (e) any communication between any of the above named individuals and Chief Lotrionte concerning the contents of Incident Report Case No. 2024-00044.

**REQUEST NO. 71:** Produce documents sufficient to show the reason that "Incident Report" reflecting the events of April 26, 2024, produced by Defendant, was neither signed nor dated, and the basis upon which Defendant included a "Memphis Police Department" header on Incident Report Case No. 2024-00044.

**REQUEST NO. 72. (Incident Report drafts, sources, and metadata):** Produce all documents concerning the preparation, drafting, editing, review, approval, finalization, or distribution of "Incident Report Case No. 2024-00044," authored by or attributed to Chief Lotrionte, including: (a) all prior versions and version history of the Report; (b) all source materials, notes, statements, or communications upon which Chief Lotrionte relied in drafting any portion of the Report; (c) all communications between or among Chief Lotrionte, Lt. Ryan, Brandon, Tullia, Rosencrants, Gerl, or any other person concerning the contents of the Report; (d) all edits, revisions, comments, or annotations to any draft of the Report by any person prior to its transmission to Plaintiff; (e) the document-creation, last-modified, and last-accessed metadata for the Report; and (f) documents sufficient to establish the chain of custody of the Report from its creation through its production in this litigation in connection with defense counsel's May 8, 2026 correspondence.

**REQUEST NO. 73. (MPD and Campus Safety communications):** Produce all communications between Defendant and the Memphis Police Department or Campus Safety concerning Plaintiff or the April 26, 2024 incident, including: (a) any request by CBU employees for police or Campus Safety presence, intervention, or assistance from August 1, 2023 through April 26, 2024 relative to Plaintiff; (b) any communication between Defendant's administrative representatives and the Memphis Police Department or Campus Safety personnel concerning the April 22, 2024 social-media post; (c) any relevant documentation provided by Defendant's administrative representatives to Memphis Police Department or Campus Safety personnel to justify intervention on April 26, 2024, and (d) any post-April 26, 2024 communications concerning the incident of that day between Defendant's administrative representatives, Campus Safety personnel, and any law-enforcement agency.

### F. FACULTY REVIEW COMMITTEE (FRC) COMMUNICATIONS.

**REQUEST NO. 74. (Intra-FRC member communications):** Produce all communications among and between members of the Faculty Review Committee, including FRC Chair Dr. Scott Geis, Dr. Benjamin Jordan, and any other FRC member who served during Plaintiff's appeal, concerning Plaintiff, Plaintiff's appeal of her December 7, 2023 termination decision, the scheduling of any FRC hearing of that appeal, or its merits and demerits, from December 15, 2023 through August 1, 2024, including without limitation: (a) communications concerning the rescheduling, delay, postponement, or cancellation of any hearing of Plaintiff's appeal; (b)

communications concerning the scope, grounds, framing, narrowing, or limitation of Plaintiff's appeal; (c) internal FRC deliberations; and (d) meeting agendas, minutes, notes, recordings, emails, or transcripts of any FRC correspondence concerning Plaintiff's appeal.

**REQUEST NO. 75. (Communications between FRC Chair Geis and non-FRC members):** Produce all communications between FRC Chair Dr. Scott Geis and any individual who was not a member of the Faculty Review Committee, including without limitation Vice-Provost Lydia Rosencrants, Former President David Archer, Faculty Assembly President Philip J. Maloney, Dean Tawny LeBouef Tullia, Ron Brandon, Department Chair James Wallace, and any other CBU administrator, Retrenchment Committee member, or Board of Trustees member concerning Plaintiff, Plaintiff's appeal of the December 7, 2023 termination decision, the FRC's review of that appeal, the conduct or scheduling of any FRC Appeal hearing, or the substance of any FRC deliberation or recommendation, from December 15, 2023 through August 1, 2024.

**REQUEST NO. 76. (Communications between FRC Chair Geis and CBU counsel, non-privileged):** Produce all communications between FRC Chair Dr. Scott Geis and any attorney representing CBU or any law firm engaged by CBU, including without limitation any attorney from Lewis Thomason, P.C. and any other counsel of record consulted during the relevant period, concerning Plaintiff, Plaintiff's appeal of the December 7, 2023 termination decision, the FRC's review of that appeal, the conduct or scheduling of Plaintiff's FRC hearing, or the substance of any FRC deliberation or recommendation, from December 15, 2023 through August 1, 2024. To the extent any responsive communication is withheld on the basis of any privilege or work-product claim, produce Defendant's associated privilege log compliant with Fed. R. Civ. P. 26(b)(5)(A) identifying each such withheld communication.

**G. HANDBOOK-MANDATED RETRENCHMENT COMMITTEE PROCESSES.**

**REQUEST NO. 77 (Retrenchment Committee's Response to Archer)**: Produce all documents sufficient to show the Retrenchment Committee's full response to President Archer's instructions that the RC continue its work to meet the "Board-mandated reduction target" after the RC had submitted its Final Report, including (a) any RC-produced documents requesting that Archer work exclusively with "Chairs and Deans" to identify additional cuts going forward, (b) any written communication from the RC, any RC member, or the RC Chairperson to President Archer concerning the Committee's decision to decline to recommend further reductions, and (c) any document identifying any faculty position selected for termination in the relevant unit, including and in excess of those recommended by the RC in its Final Report. (ECF 33 ¶39; ECF 47 ¶39; CBU-215-218)[2]

**REQUEST NO. 78 (Cost-saving alternatives recommended by the Retrenchment Committee):** Produce all documents concerning Defendant's consideration, implementation, partial implementation, or non-implementation of each of the eight cost-saving measures recommended by the Retrenchment Committee at CBU-215-218, namely: (a) review of the structure and function of Schools and Departments for possible consolidation; (b) review of Graduate School structure and positions; (c) early elimination of two Physician Assistant

---

[2] Archer's November 27, 2023 public announcement can be found on CBU's website at:
https://www.cbu.edu/reimagining-the-future-cbu-action-plan/retrenchment-committee-update-2/

Program faculty in June 2024; (d) review of current software products and licenses (including Starfish, RIZE, and Taskstream); (e) cost-saving measures related to the Crosstown and HSCI Building leases; (f) return of chair release time to 2019 levels; (g) review of other release time; and (h) review of stipends.

**REQUEST NO. 79**: **(Documentation of cost-saving alternatives):** For each such measure considered, implemented, or rejected in reference to the Retrenchment Committee's cost-saving recommendations identified in Req. No. 78 above, produce all documents sufficient to show: (a) the date on which each measure was considered, decided upon, implemented, deferred, or abandoned; (b) the identity of every person who participated in any decision concerning the measure; (c) the projected and actual cost savings attributable to each measure; (d) whether and how the projected or actual cost savings of the measure were counted toward the Board's $4 million reduction goal referenced in Defendant's Answer at ECF 47 ¶39; and (e) the temporal relationship between any decision concerning the measure and the identification or termination of any tenured faculty position, including Plaintiff's.

**REQUEST NO. 80 (Post–October 26 process):** Produce all documents concerning the process by which Defendant identified faculty terminations following the Committee's request, admitted in ECF 47 ¶39, that President Archer "work with the Deans and his executive committee to identify additional cuts," including: (a) the identity of every person who participated in identifying additional faculty positions for termination after the Committee's report was submitted; (b) the date on which each additional termination decision was made; (c) the criteria, methodology, or process applied to identify additional terminations, including whether and how Faculty Handbook §2.7.3.2, Appendix G.2.i., or any other Handbook provision was applied; (d) any document reflecting whether the cost-saving measures recommended at CBU-218 were considered, evaluated, or implemented before, contemporaneously with, or after the identification of additional faculty terminations; (e) all communications between President Archer and any Dean, Department Chair, member of his executive committee, or member of the Retrenchment Committee concerning the identification of additional terminations from October 26, 2023 through December 7, 2023; and (f) any public communication by President Archer or any CBU agent acknowledging, describing, or implementing this post–October 26 process, including but not limited to the November 27, 2023 communication referenced in Plaintiff's First Amended Complaint at ECF 33 ¶39.

**H. CBU-AAUP COMMUNICATIONS.**

**REQUEST NO. 81 (President Englert's Response Letter to the AAUP's First Letter):**
Produce the August 19, 2024 response letter from President Chris Englert to the AAUP, referenced in the AAUP's September 30, 2024 letter at ECF 33-1 at PageID 188, including any prior drafts.

**REQUEST NO. 82 (President Englert's Response Letter to the AAUP's Second Letter):**
Produce all documents authored by any CBU administrative representative to the AAUP's second letter dated September 30, 2024 (ECF 33-1 at PageID 188) or, if none exist, all documents reflecting the decision not to respond.

Plaintiff reserves the right to supplement, amend, or augment these Requests. Plaintiff requests full and complete responses to each Request within thirty (30) days of service.

Dated: May 26, 2026

/s/ Leigh M. Johnson

Dr. Leigh M. Johnson, Plaintiff Pro Se

1492 Newton Street NW, Apt. A

Washington, DC 20010

(901) 679-5937

drleighmjohnson@gmail.com

### CERTIFICATE OF SERVICE

I certify that on May 26, 2026, I served a copy of the foregoing PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT on counsel of record by electronic mail to Stephen W. Vescovo (svescovo@lewisthomason.com) and Jamie M. Gibber (jgibber@lewisthomason.com), Lewis Thomason, P.C., counsel for Defendant.

/s/ Leigh M. Johnson

Dr. Leigh M. Johnson