**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

DR. LEIGH M. JOHNSON,

Plaintiff,

vs. Case No.: 2:25-cv-02618-BCL-atc

CHRISTIAN BROTHERS UNIVERSITY,

Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT**

## INTRODUCTION

CBU asks this Court to excuse it from responding to thirty-two requests for production on the ground that they seek "the exact same documents or categories already covered within the First Set." CBU's own conduct refutes that claim. On July 8, 2026, CBU served supplemental responses to the First Set requests its motion identifies as having already covered this ground, and produced against them documents it had represented in April that it did not possess.

If Defendant's First Set responses were complete enough to render the Second Set duplicative, its July 8 supplementation was unnecessary. If Defendant's July 8 supplementation was necessary, its First Set responses did not cover what CBU now says they covered. Defendant cannot claim both.

Moreover, CBU has filed this motion at ECF 60 without exhibits. Neither the requests it seeks to avoid nor the responses it says render them duplicative are before the Court.

Defendant's Motion, as written, provides the Court no documentary evidence to test a single row of the chart on which its motion depends. This fails the burden under Rule 26(c)(1). CBU is asking the Court to accept Defendant's own characterization of documents it declined to file.

Plaintiff has herein supplied the documents sufficient to defeat CBU's unwarranted claims in ECF 60.

First, CBU has never responded to the Second Set of Requests for Production in any form, either with production, objection, or a request-specific assertion of duplication. Defendant seeks relief from an obligation it has not attempted to meet. Defendant's non-production is not for want of conferral.

Following this Court's instruction at ECF 58 that the parties confer "orally and in good faith regarding the relief sought therein in an effort to come to a resolution or compromise on the dispute," Plaintiff participated in two telephone conferences with defense counsel (on June 24 and July 13, 2026) totaling approximately two and one-half hours. In the first conferral call, Plaintiff identified CBU's outstanding production deficiencies, and answered counsel's questions about the scope of her requests. She agreed to *conditionally suspend* Defendant's June 26 response deadline for the Second Set of RFP responses, conditioned on CBU's promised supplementation of the First Set that (according to Defense counsel) would render those requests unnecessary. (Johnson Decl. Ex. C.)

Defendant's subsequent supplementation did not satisfy the conditions of her June 26 agreement with Defendant. Plaintiff said so in writing on July 10, identifying the specific deficiencies and setting a final response date for the Second Set of RFPs on July 15. (Johnson

Decl. Ex. E.) CBU did not subsequently serve responses to Plaintiff's Second Set of RFPs, but rather filed this motion instead.

The facts stated below are supported by the accompanying Declaration of Dr. Leigh M. Johnson ("Johnson Decl.") and the exhibits attached thereto.

## I. CBU'S OWN SUPPLEMENTATION REFUTES THE PREMISE OF ITS MOTION

On April 24, 2026, CBU responded to Plaintiff's First Set of RFPs. As to the comparator requests at the center of this case, CBU stated that it "does not possess any documents responsive" (RFP First Set No. 13), "does not have documents that contain the requested information" (RFP First Set No. 16), "does not have documents with the requested information" (RFP First Set No. 17), and "does not have documents responsive to this request" (RFP First Set No. 18). On July 8, 2026, eleven weeks later, and eight weeks after this Court entered the Protective Order (ECF 45) upon which Defense counsel was relying to delay its supplementation, CBU served Plaintiff a production it describes as comprising of "1,181 additional documents."

If CBU's First Set of RFP responses was, in fact, duplicative, their July 8 supplementation was unnecessary. If supplementation was necessary, then their First Set of RFP responses did not cover the ground CBU now says they covered. CBU cannot maintain both positions. The chart at the heart of CBU's Motion is not a record of duplication, but rather an inventory of requests CBU answered with "none," "does not possess," an objection and nothing more, or a "promise to produce once a protective order was entered," which had been already entered by May 13 (ECF 45).

"Duplication" presupposes an answer. CBU's current Motion rests on the proposition that Plaintiff's Second Set of RFPs "seek[s] the same materials, just described more granularly." Yet, CBU's own supplemental responses establish otherwise. At least six of the requests CBU identifies in its chart as "already answered" were only supplemented on July 8, 2026 with documents CBU had previously represented either did not exist or it did not possess. (Johnson Decl. Ex. B.)

Specifically, CBU's chart invokes the First Set of RFPs Nos. 13, 17, and 34 to characterize Plaintiff's Second Set Requests (including the entire comparator category) as cumulative, but the premise of Defendant's chart fails on CBU's own paper. RFP No. 13, for example, sought ranking sheets, comparison charts, score sheets, matrices, worksheets, notes, and draft recommendations used to compare faculty for retention or termination, in response to CBU's answer on April 24, 2026 that it possessed none; Defendant has since produced records of recommendations for non-reappointment and departmental justifications of retention and non-reappointment decisions. Request No. 17 sought rank, tenure status, discipline, and teaching assignments for five named faculty members. CBU answered that it had no documents containing that information, but it has since produced faculty contracts and (partial) records of teaching assignments for those named comparators. Request No. 34 sought communications between Faculty Review Committee members and administrators. CBU gave no response at all on April 24, 2026, but it has since produced a (partial and incomplete) record of Faculty Review Committee correspondence.

The remainder of CBU's chart fares no better. Of the nineteen categories CBU identified:

A. **First Set of RFP Nos. 44–47 (mapped to Second Set 51–53)** were answered with objections and nothing else. No response was provided in April and none was given on July 8. These requests remain wholly unanswered.

B. **First Set of RFP Nos.  20 and 22 (mapped to Second Set 64, concerning Dr. Leib)** was answered "Discoverable documents responsive to this request, if any, have been or will be provided to Plaintiff upon the entry of a protective order." No supplemental response has been served.

C. **First Set of RFP No. 49 (mapped to Second Set 57**) was answered by directing Plaintiff to an article she attached to her own Complaint, together with an objection to "producing any financial documents without having a protective order in place." No supplemental response has been served.

D. **First Set of RFP No. 48 (mapped to Second Set 81–82)** was initially answered by directing Plaintiff to two AAUP letters she herself filed on this docket. CBU's July 8, 2026 supplemental response directs Plaintiff to CBU 1395–1397, allegedly a letter from President Englert to the AAUP's Senior Program Officer, Mark Criley, dated two years after the correspondence at issue was concluded. It is impossible that the letter produced at CBU 1395–1397, dated July 8, 2026, represents President Englert's written "reply" to Criley's July 10, 2024 letter, subsequently referenced in Criley's September 10, 2024 response as Englert's "August 19, 2024" letter.

E. **First Set of RFP Nos. 29 and 30 (mapped to Second Set 66)** were answered "none."

F. **First Set of RFP No. 8 (mapped to Second Set 69)** was answered "none," accompanied by CBU's affirmative statement that it "followed the advice of its outside counsel."

G. **First Set of RFP No. 39 (mapped to Second Set 68**) was answered by directing Plaintiff to her own social media posts.

In sum, a party may not decline to answer a request and then invoke that non-answer to bar the requesting party from asking again with greater specificity. That is not the cumulative discovery contemplated by Rule 26(b)(2)(C)(i); it is the absence of discovery.

## **II. PLAINTIFF'S SECOND SET OF RFP RESPONSES COULD NOT HAVE BEEN DUPLICATIVE OF THE FIRST SET**

CBU stipulates Plaintiff's position that the Second Set of RFPs "was prompted by documents and pleadings produced or filed after [Plaintiff] propounded her First Set," and answers that "merely referencing CBU's Answer or documents produced in response to the First Set does not transform the Second Set into new discovery." The discovery chronology defeats that response.

Plaintiff served her First Set of RFPs on March 25, 2026. CBU filed its Answer to the First Amended Complaint on May 13, 2026. Plaintiff served her Second Set of RFPs on May 26, 2026.

No request served in March 2026 sought records generated by events that had not yet occurred. For example. RFP Requests 51 and 52 sought preservation directives, offboarding and account-deactivation records, and the present status of institutional accounts belonging to Dr. Maloney and Dr. Wallace following their departures from CBU on May 10 and May 11, 2026, departures first referenced in CBU's Answer at ECF 47 ¶26 on May 13, 2026, and thus occurring six and seven weeks *after* Plaintiff's First Set of RFPs were served. No request served in March 2026 could have sought records generated by events that had not yet occurred. CBU's chart nonetheless maps these requests to First Set Nos. 44–47.

This same defect recurs throughout CBU's chart:

A. **Requests 54, 55, 56, and 58** are directed to CBU's pleaded contention at ECF 47 ¶108 that it acted "in accordance with all procedures set forth" in the Faculty Handbook, a contention first pleaded on May 13, 2026.

B. **Request 61** is directed to CBU's assertion at ECF 47 ¶44 that Plaintiff "was not qualified to teach Religion courses," a defense first pleaded on May 13, 2026.

C. **Request 66** is directed to the reassignments Defendant referenced at ECF 47 ¶49.

D. **Request 68** is directed to the advice-of-counsel invocation Defendant invoked at ECF 47 ¶74.

E. **Requests 77, 79, and 80** are directed to admissions made for the first time at ECF 47 ¶39.

F. **Request 69** is directed to CBU's Responses to the First Set, Nos. 7–10, responses that did not exist prior to Defendant's filing of ECF 47 on May 13, 2026.

G. **Requests 71 and 72** concern the drafting, sourcing, unsigned and undated character of Defendant's alleged "Incident Report Case No. 2024-00044," including the basis for the "Memphis Police Department header" appearing on it, questions that could only be ascertained *after* the documents produced in Defendant's First Set responses.

Discovery directed to already produced documents or to Defendant's pleaded case at ECF 47 are not duplicative of discovery requests served before those documents were produced or that defense was pleaded. CBU aske the court to frame this issue as Plaintiff's 'referencing' of its prior Answers as "transforming" old requests into new ones. That is not what these requests do. Rather, they seek the evidentiary basis for contentions CBU has already forwarded in its productions or its pleadings in ECF 47.

## III. RULE 34 IMPOSES NO NUMERICAL LIMIT

CBU's motion returns repeatedly to a count: 32 enumerated requests become "102 when subparts are tallied, and 152 across both sets." Those figures carry no legal weight. Rule 34 contains no numerical limitation on requests for production. Rule 33(a)(1) provides that a party "may serve on any other party no more than 25 written *interrogatories*, including all discrete subparts," but interrogatories are not at issue here. The Rules impose a cap where the drafters intended one, and they imposed none on Rule 34. CBU's subpart arithmetic thus supplies no independent ground for relief. Volume bears on proportionality only insofar as it reflects actual burden, and CBU has offered no evidence of burden at all.

## IV. CBU HAS NOT SHOWN GOOD CAUSE UNDER RULE 26(c)(1)

CBU states that Plaintiff's "repackaging" of already existing requests is the exact type of "unreasonably cumulative or duplicative discovery contemplated by the Rules." (ECF 60-1 at PageID 727). Yet, CBU's showing in ECF 60 consists of no more than an argument of counsel about its own "perceived" inconvenience. Defendant has submitted no declaration, no affidavit, no estimate of the hours or time that responding to Plaintiff's Second Set of RFPs would require. In the absence of any documents or exhibits provided by Defendant in ECF 60, no evidence exists for the "good cause" argument necessary to justify the relief it seeks. [1] Line-by-line analysis of each discovery request is required of every responding party, and cross-referencing prior productions is the ordinary work of supplementation. Moreover, the "avoidance of inconsistency" between a party's discovery responses is not a burden the Rules relieve.

---

[1] "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." (Rule 34(b)(2)(B)

Two further points bear on the so-called burden" CBU alleges.

A. **The alleged difficulty of "cross referencing prior productions" is substantially of CBU's own making.** On July 8, 2026, CBU unilaterally renumbered its entire production materials as CBU 001–1422.[2] More than 900 of the 1,420 pages produced consist of material previously produced, material sought by no Request in either of Plaintiff's RFP Sets, and/or spreadsheets reproduced as flat images that do not display their underlying column data.[3]

The parties' agreed ESI protocol expressly anticipated this circumstance and provided that a party may request native files or metadata "when a static image is not reasonably usable (e.g., when a .pdf image is unable to capture/display all column/information

---

[2] Defense counsel's July 8, 2026 transmittal letter states that CBU is producing "CBU 001-1422." The production Plaintiff received ends at CBU 1420 are spreadsheets reproduced as flat, unsearchable images that do not display the underlying column data, and are therefore not in "a reasonably usable form" within the meaning of Fed. R. Civ. P. 34(b)(2)(E)(ii) and the parties' agreed ESI protocol, ECF No. 26 § III.h, at 3, PageID 136.

[3] Defendant's July 8, 2026 production, renumbered CBU 001–1420, consists substantially of material previously produced, material sought by no Request in either the First or Second Set of RFPs, or material produced in a form that is not reasonably usable. CBU 001 reproduces Plaintiff's December 7, 2023 termination letter, previously produced and filed in this action. CBU 002–056 and CBU 394–397 are printouts of pages from Defendant's public website, sought by no Request in either RFP Set. CBU 057–241, nearly 200 pages, reproduces Defendant's Utica Mutual insurance policy, previously produced with Defendant's initial disclosures and sought by no Request in either RFP Set. CBU 242–271 reproduces documents previously produced, now bearing new Bates numbers. CBU 272–388, more than 100 pages, contain a photocopy of Defendant's Faculty Handbook in its entirety, previously produced and sought by no First or Second Set of RFPs. CBU 406–410 reproduces the April 26, 2024 "incident report" previously produced. CBU 444–460 consists of flat image reproductions of enrollment spreadsheets bearing no heading or identification, together with an unrelated letter concerning Defendant's retirement plan. CBU 480–485 consists of "classroom-capacity charts" for each campus building, compensation schedules for administrative positions, and an undated document bearing no header or other identifying information. CBU 486–516 is a Christian Brothers Employee Retirement Plan Summary Plan Description, neither sought by or responsive to any First or Second RFP request. CBU 517–589 is a compilation titled "Academic Statistics" from Defendant's Office of Institutional Effectiveness and Research for 2022–2023, neither sought by or responsive to any First or Second RFP request. CBU 956–958 concerns Defendant's Master of Education program, neither sought by or responsive to any First or Second RFP request. CBU 1178–1193 reproduces Plaintiff's own correspondence with the Faculty Review Committee and the full text of her Faculty Review Committee appeal, and CBU 1358–1364 reproduces the Separation and Transition Agreement Plaintiff executed on January 23, 2024 — all previously produced by or originating with Plaintiff. CBU 402–405, CBU 590–944, CBU 1398–1413, and CBU 1414–1420 are spreadsheets reproduced as flat, unsearchable images that do not display the underlying column data, and are therefore not reasonably usable within the meaning of ECF 26, § III.h. CBU 982–1177 consists of accreditation correspondence produced without identification of the Requests to which it is responsive. *See* Fed. R. Civ. P. 34(b)(2)(E)(i). The comparatively small portion of the production that is both new and responsive — including CBU 945–981 and CBU 1367–1394 — consists of documents Defendant had previously represented it did not possess. *See* Section I, *supra*.

contained in a spreadsheet such as an Excel file)." (ECF No. 26, § III.h, at 3, PageID 136.) Plaintiff has requested native production of spreadsheets, and CBU has not provided repeatedly not provided them.

Defense counsel now contends that the Bates numbers used in CBU's own prior responses and in Plaintiff's filings and correspondence are superseded its “new” Bates numbering, without providing a concordance chart, and has unilaterally excerpted previously produced Bates-numbered documents — an alteration not disclosed in CBU's discovery responses.

B. **CBU has repeatedly demonstrated that request-specific duplication objections are readily available to it**. CBU lodged exactly such objections in the First Set of RFPs, stating that Request No. 24 was "unnecessarily duplicative of Request No. 23" and that Request No. 40 was "unnecessarily duplicative in light of Request No. 39." Nothing prevents CBU from responding to the Second Set of RFPs with exactly the same level of specificity. Plaintiff respectfully submits that Defendant cannot reasonably argue that it is "unduly burdened" by a task it has already performed twice in this litigation, and which Rule 34(b)(2)(B) requires of every responding party.

## V. CBU SEEKS MERITS DETERMINATIONS THAT RULE 26(c) DOES NOT AUTHORIZE

Embedded in CBU's Motion at ECF 60 are two substantive rulings that would attempt to resolve contested issues in this case by discovery order, specifically:

**A. Comparator scope:** CBU asks the Court to hold that "documents relating to faculty outside of the Department of Religion and Philosophy (including all requests related to Dr. Karl

Leib) are not relevant to either parties' claims or defenses," and states in their Footnote 1 that "any information about faculty outside of the Department of Religion and Philosophy is irrelevant to Plaintiff's claims."

CBU's own production refutes the premise. Plaintiff’s First Set of RFP responses Nos. 13 and 14 were expressly limited to the Department of Religion and Philosophy. In response to those department-limited requests, CBU designated CBU 945–981, a range of documents containing School of Arts recommendations for non-reappointment, departmental justifications of retention and non-reappointment decisions from departments other than Religion and Philosophy, including the Department of History and Political Science, and a Dean-level compilation of retention recommendations spanning multiple departments within the School of Arts.

CBU thus produced, as responsive Plaintiff’s Requests about one department, records generated at the School-level and covering CBU’s School of Arts’ departments collectively, including the department in which Dr. Leib was retained. A party cannot designate cross-departmental School of Arts records as responsive and simultaneously ask the Court to declare that everything outside department-level determinations is irrelevant.

CBU's memorandum to this Motion incorporates the same contradiction. At ECF 60 PageID7, CBU states that the Retrenchment Committee "was tasked with identifying a specific number of faculty positions to eliminate **across the various schools** and, even more granularly, within each specific department." [Emphasis added] Then, at ECF 60 PageID10, CBU states that "the retainment decisions were not made across the schools but were made within the specific departments," expressly contradicting its previous claim. CBU has thus described a two-tier

allocation in which school-level figures preceded departmental selections, and then asks the Court to declare the first tier irrelevant.

Whether the relevant decisional unit is the department, the School of Arts, or the institution is a merits question to be resolved on a developed record. It is not a threshold discovery ruling.

The objection CBU raises this issue is also untimely. CBU's April 24, 2026 responses to First Set of RFPs Nos. 17 and 18 contained no relevance objection specific to Dr. Leib. Such an objection appears for the first time in CBU's July 8, 2026 supplemental responses, seventy-five days after the response deadline fixed by Rule 34(b)(2)(A).

**B. <u>Financial exigency.</u>**

CBU argues that documents concerning its declaration of financial exigency "would also be outside the scope of Rule 26(b)(1)," and that "[a] deep dive into CBU's financial documents supporting its determination of financial exigency is the exact type of 'fishing expedition' courts seek to prevent." (CBU 60-1, Page ID 728.) CBU's own memorandum grounds this case in that determination: "CBU declared financial exigency as a result of operating at a deficit for several years in a row and being placed on probation with its accrediting agency. That declaration triggered the retrenchment process outlined in the Handbook." (ECF 60-1, PageID 724-5.)

CBU has pleaded at ECF 47 ¶108 that Plaintiff's position was eliminated "due to financial exigency, as defined by the Faculty Handbook in accordance with all procedures set forth therein."[4] A party that pleads a “financial exigency” justification as its defense, and propounds to produce documents in support of that, cannot then argue that discovery relevant to that defense is outside the scope of discovery.

---

[4] CBU's July 8 supplemental responses to Plaintiffs First Set of RFPs, Requests 1, 2, and 3 designate CBU 982–1177, consisting of accreditation correspondence concerning that probation.

C. **Temporal scope.**

CBU asks the Court to find that "[i]t is unclear how anything after the retrenchment process or beyond the Spring 2024 semester would be relevant to Plaintiff's claims." Plaintiff's retaliation claim in ECF 33 do not terminate at the end of the Spring 2024 semester. They expressly encompass the Faculty Review Committee process, CBU's conditioning of Plaintiff's internal appeal rights on her forfeiting of her rights of appeal, an accurate record of the April 26, 2024 incident, CBU's (as yet, unproduced) correspondence with the AAUP dated August 19, 2026, and a fully transparent accounting of the administrative process of the Faculty Review Committee. Plaintiff's pleaded Amended Complaint at ECF 3 and her EEOC "Right to Sue" Letter clearly determine all of this matters as within the relevant temporal scope.

Rule 26(c) authorizes orders protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense." However, it does not authorize adjudication of which theory of comparison governs a Title VII claim, which Defendant requests at ECF 60..

## VI. A CONDITIONAL ABEYANCE WAS ISSUED, IT FAILED, AND CBU HAS NEVER RESPONDED TO THE SECOND SET OF RFPs

CBU's Certificate of Consultation concedes that "Plaintiff agreed to conditionally suspend the June 26, 2026, deadline for CBU to respond to Plaintiff's Second Set of Requests for Production." Plaintiff's conditional abeyance of that deadline was stated in writing and never contested. Defense counsel's June 24, 2026 summary asserted that supplementation of the First Set "will obviate the need for any responses to the second set of requests." Plaintiff corrected that characterization by email on June 26, 2026, stating: "I agreed to *conditionally suspend* the June

26 response deadline for the Second Set of RFPs *pending receipt of sufficient supplemental production from the First Set*. If, after reviewing that production, the documents requested in the Second Set are not 'obviated,' I retain the right to pursue those requests." CBU did not dispute that correction. (Johnson Decl. Ex. C.)

The condition was not satisfied. Plaintiff advised CBU by email on July 10, 2026 that the July 8 production had not obviated the Second Set, extended a final response deadline of July 15, 2026, and identified specific deficiencies. CBU did not serve responses or objections. It filed this motion instead. (Johnson Decl. Ex. E.)

The result is that CBU has never served any response to the Plaintiff's Second Set of RFPs – neither a production, nor an objection, nor a request-specific assertion of duplication. Defendant seeks relief from an obligation it has never attempted to meet.

## VII. THE RELIEF SOUGHT IS DISPROPORTIONATE TO ANY BURDEN SHOWN

CBU additionally asks the Court to enter an order "forbidding Plaintiff from issuing additional requests for production on the same topics already requested," without offering any standard for determining what constitutes the "same topic" and without identifying any authority for prospective preclusion of unserved discovery. Defendant has proposed no limiting principle or duration for its request.

Defendant's request is particularly ill-suited to this record. CBU produced 1,181 documents on July 8, 2026 and states that further supplementation may follow. An order barring Plaintiff from directing requests to topics "already requested" would bar her from seeking discovery prompted by documents CBU has produced (as well as documents that CBU has promised, but failed, to produce.)

Should the Court conclude that some limitation is warranted, a request-by-request response is available and adequate. CBU may respond to each of Requests 51–82 in the ordinary course, incorporating its prior responses by reference where a request is genuinely answered by an earlier one, and identifying responsive documents by their current Bates numbers. That is the remedy Rule 34(b)(2) already prescribes, it is the practice CBU followed as to Requests 24 and 40 of the First Set, and it is the course CBU's memorandum concedes is open to it. That would also require, of course, that CBU correct its current Bates numbering.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. **Deny** Defendant's Renewed Motion for Protective Order;
2. **Order**, pursuant to Rule 26(c)(2), that Defendant serve complete written responses and objections to Plaintiff's Second Set of Requests for Production, Nos. 51–82, within seven (7) days, responding to each request separately, incorporating prior responses by reference only where a request is fully answered by an earlier response, and identifying all responsive documents by previously-provided Bates number;
3. **Decline** to enter any order forbidding Plaintiff from serving future requests for production; and
4. **Decline** to make any determination in this discovery posture as to the scope of the relevant comparator group or the temporal scope of discovery, both of which are merits questions properly reserved for resolution on a developed record.