**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

DR. LEIGH M. JOHNSON,
Plaintiff,

v. Civil Action No. 2:25-cv-02618-BCL-atc

CHRISTIAN BROTHERS UNIVERSITY,
Defendant.

---

**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING MATERIALS OBTAINED BY SUBPOENA TO RHODES COLLEGE**

Plaintiff submits this memorandum in support of her Motion for Protective Order under Fed. R. Civ. P. 26(c), governing materials CBU obtained by subpoena to Rhodes College, Plaintiff's former employer, without the notice Fed. R. Civ. P. 45(a)(4) requires.

## I. BACKGROUND

On July 16, 2026, CBU issued a subpoena to Rhodes College commanding production of Plaintiff's “entire personnel file,” including attendance records and punch cards. (Ex. 1.) CBU served the subpoena on Rhodes College on July 17, 2026, commanding compliance at defense counsel's offices on August 5, 2026. (Ex. 2.)

CBU did not serve Plaintiff with notice and a copy of the subpoena before service. Rule 45(a)(4) provides that where a subpoena commands pretrial production of documents, “before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.” CBU “received the production on August 5, 2026.” (Ex. 3.) Plaintiff first received the Rhodes records on August 7, 2026, and first received a copy of the subpoena and its return of service on August 10, 2026 — five days after the compliance date. (Ex. 3.) The entire period in which Plaintiff could have moved to quash or narrow the subpoena expired before she knew it existed.

CBU's subpoena was, on its face, overbroad, commanding production of materials with no demonstrable bearing on this case. Plaintiff's employment at Rhodes College ended on May 31, 2014, more than nine years before the events giving rise to this action.

CBU concedes the violation. On August 10, 2026, in response to Plaintiff's written objection, Mr. Vescovo wrote: “We apologize that our paralegal did not send you a copy of the subpoena our office issued to Rhodes College, your previous employer.” (Ex. 3.) The same email transmitted the subpoena and return of service to Plaintiff for the first time, and committed that CBU “will comply with Rule 45(a)(4)’s notice requirements” before issuing any further subpoena. (Ex. 3.) On the parties' conferral call later that day, Mr. Vescovo likewise acknowledged that the subpoena should have been sent to Plaintiff, and stated that CBU would not object on timeliness grounds to any motion Plaintiff might file regarding the subpoena. (Ex. 4.)

Because Plaintiff had no pre-compliance opportunity to object, CBU received — and forwarded to Plaintiff without review — the unfiltered personnel file from an employment relationship that ended in 2014. The file includes a number of sensitive materials, including Plaintiff's direct deposit and banking records, bank account and routing numbers; benefits enrollment and beneficiary designations; and the name, Social Security number, and address history of Plaintiff's mother, who is not a party to this action. CBU confirmed in writing on August 10, 2026 that it had “not reviewed the documents from Rhodes yet.” (Ex. 3.)

## II. THE PARTIES CONFERRED, AND CBU REFUSED THE REQUESTED PROTECTIONS

The parties conferred orally on August 10, 2026; the call was recorded. Plaintiff served a written memorandum of the call on August 12, 2026. (Ex. 4.) In his written response transmitted earlier on August 10, Mr. Vescovo had stated: “[W]e have not reviewed the documents from Rhodes yet, so we could not designate any material as confidential pursuant to the protective order.” (Ex. 3.) On the call, as memorialized in Plaintiff's August 12 memorandum, Mr. Vescovo agreed that CBU would designate the Rhodes materials CONFIDENTIAL under the Protective

Order (ECF No. 45); agreed, without qualification, that CBU will not use any information relating to Plaintiff's mother; and committed to review the remaining categories of sensitive material and to advise Plaintiff by August 14, 2026 which categories CBU has no interest in using. (Ex. 4.)

On August 14, 2026, CBU responded in writing, disputing Plaintiff's characterization of the call and denying that the commitments memorialized in her August 12 memorandum were made. (Ex. 5.) The recording of the call can be produced at the Court's request. The Court need not resolve that dispute to grant this Motion, however, because CBU's August 14 email itself confirms every fact on which the requested relief rests: CBU declined to designate the materials as CONFIDENTIAL, stating instead that Plaintiff is "free to designate whatever records you like as confidential"; it stated that "[w]e will not stipulate at this point – or even after our initial review – to any non-use"; and it reiterated that "we have not yet reviewed the records." (Ex. 5.)

Plaintiff responded the same day, accepting CBU's written representation that it is "not interested in [Plaintiff's] mother's SSN, phone number or anything else pertaining to her" (Ex. 5), and recording the remaining disputes. (Ex. 6.) Consistent with CBU's August 14 invitation, Plaintiff has designated the Rhodes materials CONFIDENTIAL under ECF No. 45. The parties are at an impasse on the relief sought below.

**III. ARGUMENT**

Rule 26(c)(1) permits the Court, for good cause, to issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding discovery or specifying its terms. Good cause is established here by four facts in combination.

(a) First, CBU concedes it violated Rule 45(a)(4), extinguishing Plaintiff's pre-compliance right to move to quash or narrow the subpoena.

(b) Second, had Plaintiff received the notice the Rule requires, she would have moved to limit the subpoena to exclude the categories irrelevant to this case, including those which

have no bearing on her Title VII claims, her breach-of-contract claim, or any pleaded defense. See Fed. R. Civ. P. 26(b)(1).

(c) Third, the materials disputed herein are sensitive on their face: banking identifiers, benefits designations, and a non-party's Social Security number and personal information.

(d) Fourth, CBU has not only identified no use for any of the information it received from Rhodes College, but it continues to represent that it has not reviewed the records at all — so the requested order prejudices nothing.

An order is necessary notwithstanding Plaintiff's own confidentiality designation because designation under ECF No. 45 restricts disclosure; it does not restrict use, does not protect a non-party's identifiers from circulation within the litigation, and does not remedy the lost opportunity to narrow the subpoena. Nor does designation remove Plaintiff's and a non-party's financial identifiers from Defendant's files; only return or destruction of the categories described in Section IV(2)(a)–(b) below does that. Indeed, CBU has itself asserted in writing that the Protective Order's designation provision applies "in the context of opposing-party authored material" rather than to documents obtained by subpoena (Ex. 3) — so on CBU's own reading, absent an order of this Court, the Rhodes materials fall outside any protection CBU recognizes. Only the Court can supply that relief.

Finally, as to the prospective relief requested in Section IV(5), CBU has already committed in writing to "comply with Rule 45(a)(4)'s notice requirements" before issuing any further subpoena. (Ex. 3.) The requested order asks no more than that CBU be held to its stated commitment.

## IV. RELIEF REQUESTED

Plaintiff requests:

(1) An ORDER directing written confirmation from Defendant that the materials produced by Rhodes College in response to CBU's July 16, 2026 subpoena are designated CONFIDENTIAL under the Protective Order (ECF No. 45);

(2) An ORDER requiring that CBU shall not use, for any purpose in this litigation, the following categories of materials obtained via the Rhodes College subpoena: (a) any financial documents dated 2007–2014, including any document referencing Plaintiff's bank accounts, bank account information, or personal financial history, including checking account information, designated beneficiaries, insurance or automatic-withdrawal selections, and any other personal financial information preceding 2014; (b) any document containing the Social Security number, financial account or routing number, date of birth, or address history of Plaintiff or of any non-party to this case; (c) any material obtained by the Rhodes College subpoena that CBU does not identify in writing as relevant to a specific claim or defense pleaded in this action; and (d) any internal Rhodes College personnel document that cannot be linked to a specific claim or defense pleaded in this action;

(3) An ORDER directing Defendant to destroy or return to Plaintiff all copies of the materials described in (2)(a)–(b) above, in whatever form maintained, including within Defendant's counsel's document-management system, and to serve on Plaintiff a written certification of destruction or return within fourteen (14) days of the Court's Order;

(4) An ORDER requiring that, to the extent Defendant intends to use any of the documents produced in response to the Rhodes College subpoena, Defendant first confer orally with Plaintiff to confirm its redactions of the materials as described in (2)(a)–(d) above; and

(5) An ORDER directing CBU to comply with Fed. R. Civ. P. 45(a)(4) before serving any further subpoena in this action.

Respectfully submitted,

/s/ Leigh M. Johnson
Dr. Leigh M. Johnson
Plaintiff, pro se
1492 Newton Street NW, Apt. A
Washington, DC 20010
901-679-5937
drleighmjohnson@gmail.com

Dated: August 27, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2026, a copy of the foregoing was served by email on counsel of record for Defendant: Stephen W. Vescovo (svescovo@lewisthomason.com) and Jamie M. Gibber (jgibber@lewisthomason.com), Lewis Thomason, P.C., 40 South Main Street, 29th Floor, Memphis, TN 38103.

/s/ Leigh M. Johnson