UTI01.10003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

DR. LEIGH M. JOHNSON,

Plaintiff,

v. Civil Action No.: 2:25-cv-02618-BCL-atc

CHRISTIAN BROTHERS UNIVERSITY,

Defendant.

---

# CHRISTIAN BROTHERS UNIVERSITY'S RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING THE PLACE AND METHOD OF PLAINTIFF'S DEPOSITION

---

Pursuant to Local Rule 7.2(a)(2), Defendant, Christian Brothers University ("CBU"), by and through its counsel, hereby submits its Response to Plaintiff's Motion for Protective Order Regarding the Place and Method of Plaintiff's Deposition ("Plaintiff's Motion") (ECF No. 66). In response to Plaintiff's Motion, CBU states as follows:

## INTRODUCTION

Plaintiff seeks a protective order requiring that her deposition be conducted remotely rather than in person in Memphis, Tennessee. The motion should be denied because Plaintiff has not carried her burden of demonstrating good cause to depart from the general rule that a plaintiff appears for deposition in the forum where suit is pending. Rather than establishing a legitimate reason for a remote deposition, Plaintiff primarily disputes CBU's reasons for seeking an in-person deposition and recounts the parties' deposition-related communications. But CBU is not the moving party and the relevant inquiry is whether Plaintiff has demonstrated good cause for a protective order. She has not. Plaintiff identifies only the ordinary inconvenience and expense of

travel, while the factors courts consider in evaluating such requests, including the amount in controversy, Plaintiff's credibility, and the nature of the anticipated examination, all weigh against relief. Accordingly, the Motion should be denied.

## RELEVANT FACTS AND PROCEDURAL HISTORY

This Court is no stranger to the procedural history in this action, as it has been the subject of many motions before the Court. Because Plaintiff's Motion concerns only the location and manner of her deposition, CBU limits its recitation of facts to those necessary to resolve the issues presently before the Court that were omitted from Plaintiff's Motion.

As stated in Plaintiff's Motion, CBU first raised scheduling Plaintiff's deposition in April of 2026. CBU wanted to avoid any scheduling conflicts that may arise during the academic year. Plaintiff insisted – on numerous occasions – that she would not travel to Memphis for a deposition, regardless of whether it was in the summer or during the academic year. She maintained that CBU did not have an understanding of her summer work and that travel during the summer would impose on her research and book-writing. (See e-Mail correspondence between the Parties following the June 24, 2026 meet and confer that is referenced in Plaintiff's Motion but omitted from her exhibits, attached as **Ex. A**.) Plaintiff also maintained that she wanted all her discovery answered prior to her submitting to a deposition. Those very discovery issues are still being litigated.

CBU also offered to conduct the deposition on a Saturday or Sunday if that was easier for Plaintiff's schedule.

Despite Plaintiff's criticisms that CBU failed to provide its reason for wanting an in-person deposition in writing, CBU did so orally at the June 24, 2026 conference, as indicated by Plaintiff's

June 26, 2026 response. (See Ex. A.) CBU did agree to reassess that position following Plaintiff's document production – which was only provided on August 19, 2026.

While Plaintiff did finally provide several potential deposition dates on July 13, 2026, nearly three (3) months after CBU's first request for same, discovery remained ongoing at that time. Plaintiff was still pursuing numerous discovery disputes (and still is) and had not yet fully completed her own production. Ultimately, Plaintiff's document production consisted of 364 documents.

## LAW AND ARGUMENT

### I. Legal Standards

The Federal Rules of Civil Procedure place the initial choice of deposition location with the noticing party. See Fed R. Civ. P. 30(b)(1). The Rules also permit depositions to proceed remotely by stipulation or court order. See Fed R. Civ. P. 30(b)(4). Courts have broad discretion in designating deposition logistics, including the time and place of the deposition. See Lomax v. Sears, Roebuck & Co., 2000 U.S. App. LEXIS 33884, at *3 (6th Cir. Dec. 19, 2000). Thus, there is no automatic entitlement to a remote deposition.

This Court has recently summarized the standard of review on a motion for protective order as follows:

> "[A] person from whom discovery is sought may move the court for a protective order limiting discovery." Int'l Fid. Ins. Co. v. Vimas Painting Co., No. 2:07-cv-298, 2008 WL 11455038, at *2 (S.D. Ohio Mar. 5, 2008) (citing Roll Rite Corp. v. Automated Integrated Sys. Inc., 186 F. App'x 590 (6th Cir. 2006)). Rule 26 provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts have broad discretion to grant or deny protective orders under Rule 26. Proctor & Gamble Co. v. Bankers Tr. Co., 78 F.3d 219, 227 (6th Cir. 1996).

Deschenes, et al. v. DTS Towing, LLC, et al., No. 2:23-cv-02623-BCL-atc, ECF No. 87, at PageID 695–96, Order Denying Motion for Protective Order (entered June 18, 2026) (the "Deschenes Order"), attached hereto as **Ex. B**.

Specifically, the Court provided a succinct recitation of the status of the law regarding disputes over the location of a plaintiff's deposition:

> "The general rule is that the proper location of a plaintiff's deposition is in the forum where the litigation is pending." In re Chrysler Pacifica Fire Recall Prods. Liab. Litig., 737 F. Supp. 3d 611, 617 (E.D. Mich. 2024) (quoting Scooter Store, Inc. v. Spinlife.com, *LLC*, No. 10-cv-18, 2011 WL 2118765, at *2–3 (S.D. Ohio May 25, 2011)) (cleaned up). "There are sound reasons for enforcing the general rule concerning the location of a plaintiff's deposition. As a formal matter, the party noticing the deposition designates the time and place of the deposition." Id. (citing Fed. R. Civ. P. 30(b)(1)). And, "[a]s a practical matter, '[t]he basis for requiring plaintiff to come to the forum for the taking of his or her deposition in most cases is that plaintiff has selected the forum.'" Id. (quoting 8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2112 (3d ed. 2010)). **"[I]n the absence of a proper showing" of good cause, the court should not "depart from the general rule that the forum of suit is an appropriate place for the taking of a [plaintiff's] deposition.**" Id.; see also James v. Thomas, No. 1:24-cv-00061-RGJ-llk, 2025 WL 2945597, at *2 (W.D. Ky. Oct. 17, 2025) ("To establish good cause, the moving party must demonstrate that 'specific prejudice or harm will result from the absence of a protective order.'" (quoting In re. Ohio Execution Protocol Litig., 845 F.3d 231 236 (6th Cir. 2016))).
>
> A party **must** therefore "establish 'a legitimate reason to take a deposition by remote means for a court to authorize such over the objection of an opposing party.'" Mosley v. Friauf, No. 3:22-cv-120-TRM-dcp, 2023 WL 3791393, at *2 (E.D. Tenn. June 2, 2023) (quoting Kirkland v. City of Maryville, No. 3:19-cv-312-DCLC-hbg, 2020 WL 12863656, at *2 (E.D. Tenn. Aug. 17, 2020)). In assessing whether the party has done so, "courts consider the amount of money at stake in the case, the financial means of the distant party, the complexity of the issues involved, and whether the issues will turn on the deponent's credibility." Id. (quoting Loyless v. Oliveira, No. 1:09-cv-239, 2011 WL 13308425, at *3 (E.D. Tenn. June 24, 2011)). If the court finds the moving party's reasons legitimate, "the burden shifts to the 'opposing party to show how [it] would be prejudiced.'" Id. (quoting Kirkland, 2020 WL 12863656, at *2).

Id., at PageID 696–97 (emphasis added).

## II. Plaintiff has not shown good cause for a protective order.

Plaintiff's Motion largely skips the required first step of the analysis. Rather than demonstrating good cause for a protective order, Plaintiff spends much of her Motion criticizing CBU's position, or failure to provide its specific grounds in writing sooner (despite that such grounds were provided verbally, as demonstrated by her own correspondence), and attempting to rebut CBU's stated reasons for seeking an in-person deposition. (See ECF No. 66, at PageID 923–25.) The threshold question is whether Plaintiff has established a legitimate reason to depart from the general rule that a plaintiff appears for deposition in the forum where suit is pending. She has not.

The only argument Plaintiff asserts in support of her motion for protective order is found in a single paragraph:

> The burden is self-evident. The deposition is noticed for a Wednesday in the opening weeks of the fall semester at American University, where Plaintiff teaches. In-person attendance in Memphis would require travel on Tuesday, September 22 and return on Thursday, September 24, causing Plaintiff to miss her Wednesday departmental obligations and her Thursday teaching responsibilities, and to purchase short-notice round-trip airfare, two nights' lodging, and ground transportation at an estimated total cost of at least approximately $600 to $700, and materially more using a changeable fare class appropriate for litigation-related travel. These are costs Plaintiff, a pro se litigant, bears entirely out of pocket.

(ECF No. 66, at PageID 922–23.) The only other argument for good cause Plaintiff sets forth is an unsupported assertion that "[w]here the requested accommodation costs the examining party nothing it can identify, and the refusal of that accommodation costs the deponent hundred of dollars and multiple days of professional obligations, good causes exists to specify remote means as the method of examination." (Id. at PageID 925.) Those allegations fall well short of demonstrating good cause. Again, to assess whether Plaintiff has established good cause, or a legitimate reason to take a deposition by remote means, the Court must consider "the amount of money at stake in

the case, the financial means of the distant party, the complexity of the issues involved, and whether the issues will turn on the deponent's credibility." Deschenes Order, at PageID 697 (quoting Mosley, 2023 U.S. Dist. LEXIS 96449, at *6).

Given that Plaintiff has only provided facts relevant to the financial means factor, CBU will address that factor first. As this Court recently reasoned in the Deschenes Order, "Plaintiff[] provides no indication of any undue expenses they may face beyond '[t]he ordinary inconvenience of travel' incident to bringing a case in a foreign jurisdiction." Deschenes Order, at PageID 698 (citing to James v. Thomas, No. 1:24-CV-00061-RGJ-LLK, 2025 U.S. Dist. LEXIS 205055, at *3 (W.D. Ky. Oct. 16, 2025) (holding that a barebones assertion of financial hardship is, standing alone, insufficient to overcome the presumption that the plaintiffs must appear in the forum for a deposition). Similar to the Plaintiffs in the Deschenes case, Plaintiff makes no real showing about her financial circumstances,[1] she does not contend that she is unable to afford travel to Memphis, and her blanket assertion about the cost of travel does not demonstrate a "legitimate reason for a protective order." Deschenes Order, at PageID 699 (citing Chrysler, 737 F. Supp. 3d at 618–19 ("[T]he fact that depositions by remote means may be an economical and appropriate tool in some

[1] CBU sought discovery that would potentially bear on this issue, but Plaintiff erroneously refused to respond to the request on the grounds that it exceeded the limitations provided in the Federal Rules. In its First Set of Interrogatories to Plaintiff, CBU asked Plaintiff to identify all travel she conducted from January 1, 2022 through the present. (See CBU's First Set of Interrogatories to Plaintiff, Interrogatory No. 27.) Plaintiff served her responses on August 7, 2026. In her preliminary statement and objection, she objected to responding to Interrogatory Nos. 26 and 27 on the basis that Federal Rule of Civil Procedure 33(a)(1) only permits a party to serve 25 interrogatories, absent stipulation or court order. (See Pl.'s Resp. to Def.'s Interrogatories (erroneously captioned as responses to Def.'s First Set of Requests for Admission)). Interestingly, four days later, on August 11, 2026, Plaintiff served her Second Set of Interrogatories to CBU, consisting of Interrogatory Nos. 16 – **30**, correctly noting that thirty (30) is "the limit stipulated by the parties in their Rule 26(f) Report[.]" (See Pl.'s Second Set of Interrogatories to CBU.) It is unclear why CBU is not entitled to that same limit in Plaintiff's view.

instances, at least where the parties agree on the means, or where extraordinary circumstances such as the medical infirmity of a deponent make an in-person examination unreasonably risky, **does not mean that good cause has been shown to compel the taking of depositions by remote means across the board for all plaintiffs**, based merely on the routine inconvenience and expense that is incident to participation in litigation by any party who chooses to file suit in a forum distant from their residence.") (emphasis added); and Steele v. Norfolk S. Ry. Co., No. 18- 13946, 2019 U.S. Dist. LEXIS 241096, at *6–7 (E.D. Mich. Dec. 5, 2019) (holding that the plaintiff's assertions about the significant costs and burdens of travel to the forum, having to take three days off of work, and having a six-month old baby at home were insufficient to demonstrate a "clearly defined and serious injury" that might justify an exception to the general rule concerning in-person, in-forum depositions[2]) (citations omitted).

Plaintiff's Motion repeatedly emphasizes that she is proceeding without counsel and therefore bears litigation expenses herself. However, Plaintiff identifies no authority holding that pro se status, standing alone, constitutes good cause for a remote deposition. Were that the rule, every pro se litigant residing outside the forum would automatically be entitled to a remote deposition. The Federal Rules of Civil Procedure impose no such presumption. Rather, the burden remains on Plaintiff to demonstrate "a legitimate reason to take a deposition by remote means" to overcome the general rule favoring in-forum depositions. See Mosley, 2023 U.S. Dist. LEXIS 96449, at *4. Plaintiff has not done so.

Again, similar to the plaintiffs in Deschenes, Plaintiff's Motion briefly asserts that CBU's "presumption . . . that a plaintiff who selects a distant forum should bear the travel her choice

---

[2] This parenthetical is a recitation of the parenthetical provided by the Court in the Deschenes Order at PageID 699.

entails, has little force here," because "[v]enue in this District follows from where CBU operates and where the events giving rise to this action occurred." (ECF No. 66, at PageID 924.) Respectfully, this is not CBU's "presumption," it is an accurate statement of well-established case law and this Court's prior orders. Additionally, as this Court acknowledged in the Deschenes Order: "Though it may be true that the Western District of Tennessee is the only proper forum for this case, [Plaintiff has] chosen to avail [herself] of this Court and 'should be expected to be required to return . . . periodically in order to prosecute [her] case." Deschenes Order, at PageID 699 n.8 (citing to Shah v. Fortive Corp., No. 1:22-cv-312, 2025 U.S. Dist. LEXIS 184387, at *5 (S.D. Ohio Sept. 19, 2025) (denying a motion for a remote deposition despite the fact that the plaintiff lived in Singapore and had "little choice but to file suit in this district"). Accordingly, the financial burden factor weighs against a finding of good cause.

As to the amount in controversy, Plaintiff's Amended Complaint seeks "back pay, including lost wages, lost benefits, and lost retirement contributions, from the date of Plaintiff's termination through the date of judgment," "front pay and other prospective economic relief to compensate Plaintiff for future economic losses . . . including losses arising from the truncation of her academic career and the delay in her tenure eligibility", "compensatory damages for emotional distress, reputational harm, and other non-economic losses", punitive damages, attorney's fees, and pre- and post-judgment interest. (ECF No. 33, at PageID 183–84.) Plaintiff's discovery responses do not provide an itemization of all the damages she seeks in this action, as requested. Plaintiff's own expert, though, places her economic damages as it relates to the back pay and front pay components of her alleged damages at $357,395.00. Plaintiff further seeks compensatory damages, punitive damages, attorney's fees, and other forms of relief. Similar to the plaintiffs in Deschenes, "[t]he potential recovery could thus very well be in excess of $500,000.00," and "the

value of this case is not insignificant." Deschenes Order, at PageID 700. Accordingly, the amount in controversy also weighs against a finding of good cause.

As to the complexity of the issues involved, CBU admits that this case is not entirely complex and does not involve multiple parties. As CBU has stated to Plaintiff several times, though, the discovery in this case has led to the production of over a thousand documents. The undersigned anticipates utilizing many documents during Plaintiff's deposition, and it is far easier to pass documents back and forth rather than rely on technology in pulling those documents up. Plaintiff dismisses CBU's concern by stating that document display is a "routine function of every remote-deposition platform." (ECF No. 66, at PageID 923.) Respectfully, that observation misses the point. The issue is not whether documents can be displayed remotely. It is whether a deposition involving over one thousand produced documents can be conducted more efficiently in person. While CBU is unaware of how many remote or in-person depositions Plaintiff has conducted as she declined to respond to CBU's inquiry about her litigation history, the undersigned can represent to the Court that document-intensive depositions are far more efficient when they are taken in person.

Finally, as to credibility, Plaintiff argues that "[a] deposition is discovery, not trial. The credibility determinations that matter will be made by the factfinder, in person, at trial, regardless of where the deposition occurs." (ECF No. 66, at PageID 924.) That argument misses the point. The question is not whether a jury will eventually assess credibility. Rather, the issue is whether the issues in the case "will turn on the deponent's credibility." Mosley, 2023 U.S. Dist. LEXIS 96449, at *4. Although the credibility dispute does not primarily concern the ultimate legal questions presented by Plaintiff's claims, it is central to the damages and factual allegations she seeks to prove. Plaintiff is the primary, and in many instances the only, source of testimony

regarding her damages in this case. Many of those damages are inherently subjective and depend substantially on Plaintiff's own account. Her credibility therefore directly bears on the legitimacy and extent of the damages she seeks to recover. Put simply, CBU is entitled to assess Plaintiff's credibility in person as it prepares its defense and evaluates the claims asserted against it. Under these circumstances, credibility weighs strongly in favor of an in-person deposition.

Plaintiff attempts to place responsibility for the timing of the deposition entirely on CBU. That characterization ignores the broader discovery history in this case, to which this Court is no stranger. As Plaintiff stated in her Motion, the Parties have been discussing Plaintiff's deposition since April. The undersigned sought to set Plaintiff's deposition for some time during the summer as it would be easier for her to travel outside of the school calendar. Plaintiff stated that the undersigned clearly did not understand her obligations as a faculty member and that she had research work, preparation, and book-writing that would prevent her from traveling during the summer season as well. (See **Ex. A**.) Plaintiff expressly maintained that travel during the summer would be no less burdensome than it would be during the academic year. To the extent Plaintiff's Motion suggests that she would have been amendable to traveling to Memphis for a pre-semester deposition, that is inconsistent with the position that she has taken all along. Additionally, courts have not found good cause where plaintiffs have asserted having to take off work as a reason to support their requests for remote depositions. See, e.g., Steele, 2019 U.S. Dist. LEXIS 241096, at *6–7 (denying plaintiff's motion for protective order and reasoning that having a six-month-old baby and needing "to take three days off work instead of just one day" were not unreasonable hardships warranting a remote deposition). The fundamental dispute was never whether the deposition would occur before or during the academic semester. It was whether Plaintiff would appear in Memphis at all. Additionally, counsel has repeatedly offered to take Plaintiff's

deposition on a Saturday or Sunday to avoid any disruption to her work schedule – whether that be her summer schedule or her schedule during the academic semester.

In any event, Plaintiff's allegations do not establish good cause under Rule 26(c). The relevant inquiry is whether Plaintiff has demonstrated a sufficient basis to depart from the ordinary rule regarding deposition location. She has not. Plaintiff has only shown the ordinary inconvenience associated with litigation in a forum away from her residence. That showing is insufficient under the case law cited and discussed above. Even if this Court were to find that she had established good cause, CBU has set forth above how it would be prejudiced by having to conduct Plaintiff's deposition remotely (namely, the document-intensive nature of the deposition, and its inability to adequately assess Plaintiff's credibility). Accordingly, CBU would respectfully request that the Court deny Plaintiff's Motion and require her to appear in-person for the deposition.

In an effort to alleviate any scheduling concerns or to accommodate better flight pricing, CBU remains willing to conduct the deposition on a weekend and has identified several available dates. The undersigned can be available on October 9-11, or October 16-18.[3] While the current deadline for depositions is October 9, 2026, if the later dates would help alleviate Plaintiff's alleged burden, CBU would agree to conduct the deposition slightly outside of that deadline with the Court's permission and under the understanding that no other deadlines would be extended.

---

[3] A review of the academic calendar for American University, publicly available at https://www.american.edu/provost/registrar/academiccalendar/fall-2026.cfm, indicates that October 16th is fall break, which may be a convenient time for Plaintiff's deposition.

## CONCLUSION

Plaintiff has not demonstrated the good cause necessary to obtain a protective order. At most, she identifies ordinary travel expenses and scheduling inconveniences attendant to litigating in a forum other than her place of residence. Those circumstances do not justify departure from the well-established rule that a plaintiff should appear for deposition in the forum where suit is pending. Moreover, the factors courts consider in evaluating such requests, including the amount in controversy, the financial means of the distant party, the complexity of the issues involved, and whether the issues will turn on the deponent's credibility, weigh against a remote deposition.

For these reasons, CBU respectfully requests that the Court deny Plaintiff's Motion and require Plaintiff to appear for deposition in Memphis, Tennessee, as noticed by CBU. Nonetheless, to minimize any burden associated with Plaintiff's teaching obligations, CBU remains willing to conduct the deposition on a Saturday or Sunday and is presently available on October 9-11, or October 16-18, 2026. To the extent additional scheduling flexibility would assist Plaintiff, CBU is also willing to conduct the deposition slightly beyond the current deposition deadline upon leave of Court.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

By: *s/Stephen W. Vescovo*
STEPHEN W. VESCOVO (7246)
JAMIE GIBBER (39552)
2900 One Commerce Square
40 S. Main St.
Memphis, TN 38103
(901) 525-8721
svescovo@lewisthomason.com
jgibber@lewisthomason.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2026, a copy of the foregoing pleading has been delivered to the following via email:

Dr. Leigh M. Johnson
1492 Newton Street NW, Apt. A
Washington, DC 20010
(901) 679-5937
drleighmjohnson@gmail.com
*Pro se Plaintiff*

*s/ Stephen W. Vescovo*
STEPHEN W. VESCOVO

4899-0791-5470