Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**PAUL DESCHENES, REBECCA BUZALSKY, KEITH BUZALSKY, AMY SULLIVAN, SUSAN ANDERS, and ALEXA CAROLINE LEWIS,**

**Plaintiff,**

**v.**

**DTS TOWING, LLC, COBRA VAN LINES, LLC, SAV TRANS, LLC, and VISTAR TRANSPORTATION, LLC,**

**Defendants.**

---

**DTS TOWING, LLC,**

**Third-Party Plaintiff,**

**v.**

**COBRA VAN LINES, LLC, SAV TRANS, LLC, and VISTAR TRANSPORTATION, LLC,**

**Third-Party Defendants,**

**No. 2:23-cv-02623-BCL-atc**

---

**ORDER DENYING MOTION FOR PROTECTIVE ORDER**

---

Before the Court by Order of Reference is the Motion for Protective Order of Plaintiffs Paul DesChenes, Keith Buzalsky, and Alexa Caroline Lewis, filed on February 19, 2026.[1] (ECF

[1] On February 20, 2026, District Judge Mark S. Norris referred the Motion to the undersigned for determination. (ECF No. 76.) This case was subsequently transferred to District Judge Brian C. Lea on March 25, 2026.

No. 73.) Defendants DTS Towing, LLC ("DTS"); Sav Trans, LLC ("Sav Trans"); and Vistar Transportation, LLC ("Vistar") filed a Response in Opposition to the Motion on March 2, 2026. (ECF No. 78.) For the following reasons, the Motion is DENIED.

## **BACKGROUND**

Plaintiffs—each of whom are Florida residents—bring this action to recover for damages they allegedly suffered in a motor-vehicle accident on Interstate 55 in Shelby County, Tennessee, on January 24, 2023.[2] (ECF No. 43, at 1–3.) At the time of the accident, Plaintiffs had contracted with Cobra Van Lines, LLC ("Cobra")[3] to transport their personal property, consisting of hundreds of items including furniture, pictures, tools, suitcases, kitchen supplies, clothing, boxes, and other miscellaneous items. (*Id.*; ECF No. 43-1, at 2–22.)[4] Cobra, in turn, subcontracted with Sav Trans to transport Plaintiffs' personal property. (ECF No. 43, at 3.) A tractor trailer operated by Vistar collided with the one operated by Sav Trans, resulting in Plaintiffs' personal property being "ejected from the trailer and scattered across Interstate 55" and "exposed to rainfall and other elements for an extended period of time." (*Id.* at 3–4.) "DTS was called to the scene to tow the [Sav Trans] Vehicle" and "gathered the property, reloaded it into the Vehicle and the trailer from which it was ejected, and towed the Vehicle and the trailer to the DTS premises." (*Id.* at 4.) Plaintiffs allege that "DTS then removed the property from the

---

[2] Plaintiffs Susan Anders and Amy Sullivan have settled their claims in this matter and filed Stipulations of Dismissal on May 11, 2026. (ECF Nos. 80, 81.) Thus, only the claims of Plaintiffs DesChenes, Buzalsky, and Lewis remain at issue in this case. For ease of reference, "Plaintiffs" shall refer only to these three herein.

[3] Cobra is named as a defendant but has not made an appearance in this case. The Clerk of Court entered default against Cobra on April 21, 2025. (ECF No. 59.) For ease of reference, "Defendants" shall refer only to DTS, Sav Trans, and Vistar herein.

[4] Though not precisely identified in Plaintiff's Amended Complaint or in the Motion, Defendants characterize the personal property at issue as consisting, at least in part, of "family heirlooms, war memorabilia, photographs, and other sentimental items." (ECF No. 78, at 5.) For purposes of this Order, the Court presumes this characterization is correct.

damaged trailer and relocated it to another trailer on its property" and has since refused to return the property to Plaintiffs. (*Id.* at 4–5.) For relief, Plaintiffs seek compensatory damages "of at least $100,000," attorneys' fees, punitive damages, and any other relief that might be proven at trial. (*Id.* at 7.)

Vistar "now wishes to depose each Plaintiff" in person in Memphis, Tennessee. (ECF No. 74, at 2.)[5] In the Motion, Plaintiffs seek a protective order against those in-person depositions, arguing that "[r]equiring Plaintiffs to physically appear for depositions in-person in Tennessee would pose significant costs and logistical burdens on Plaintiffs, wholly unnecessary for efficient resolution of this case," and that, instead, their depositions should be conducted virtually. (ECF No. 74, at 3–4.) Defendants counter that Plaintiffs have failed to demonstrate good cause to overcome the "general rule" that plaintiffs should be required to appear in the district where they filed suit for their depositions. (ECF No. 78, at 3–6.)

## ANALYSIS

### I. Standard of Review

"[A] person from whom discovery is sought may move the court for a protective order limiting discovery." *Int'l Fid. Ins. Co. v. Vimas Painting Co.*, No. 2:07-cv-298, 2008 WL 11455038, at *2 (S.D. Ohio Mar. 5, 2008) (citing *Roll Rite Corp. v. Automated Integrated Sys. Inc.*, 186 F. App'x 590 (6th Cir. 2006)). Rule 26 provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue

[5] The Record does not reflect whether Vistar had issued a deposition notice at the time the Motion was filed or whether the Motion was filed solely in response to scheduling discussions among counsel. (*See generally* ECF Nos. 74, 78.) Furthermore, the Response to the Motion was filed on behalf of Defendants DTS, Sav Trans, and Vistar, such that the Court presumes that all three Defendants seek to depose Plaintiffs in person in Memphis, Tennessee. (*See generally* ECF No. 78.)

burden or expense." Fed. R. Civ. P. 26(c)(1). Courts have broad discretion to grant or deny protective orders under Rule 26. *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

**II. Plaintiffs Have Not Shown Good Cause for a Protective Order**

"The general rule is that the proper location of a plaintiff's deposition is in the forum where the litigation is pending." *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 737 F. Supp. 3d 611, 617 (E.D. Mich. 2024) (quoting *Scooter Store, Inc. v. Spinlife.com, LLC*, No. 10-cv-18, 2011 WL 2118765, at *2–3 (S.D. Ohio May 25, 2011)) (cleaned up). "There are sound reasons for enforcing the general rule concerning the location of a plaintiff's deposition. As a formal matter, the party noticing the deposition designates the time and place of the deposition." *Id.* (citing Fed. R. Civ. P. 30(b)(1)). And, "[a]s a practical matter, '[t]he basis for requiring plaintiff to come to the forum for the taking of his or her deposition in most cases is that plaintiff has selected the forum.'" *Id.* (quoting 8A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2112 (3d ed. 2010)). "[I]n the absence of a proper showing" of good cause, the court should not "depart from the general rule that the forum of suit is an appropriate place for the taking of a [plaintiff's] deposition." *Id.*; *see also James v. Thomas*, No. 1:24-cv-00061-RGJ-llk, 2025 WL 2945597, at *2 (W.D. Ky. Oct. 17, 2025) ("To establish good cause, the moving party must demonstrate that 'specific prejudice or harm will result from the absence of a protective order.'" (quoting *In re. Ohio Execution Protocol Litig*, 845 F.3d 231 236 (6th Cir. 2016))).

A party must therefore "establish 'a legitimate reason to take a deposition by remote means for a court to authorize such over the objection of an opposing party.'" *Mosley v. Friauf*, No. 3:22-cv-120-TRM-dcp, 2023 WL 3791393, at *2 (E.D. Tenn. June 2, 2023) (quoting

Case 2:23-cv-02632-BCL-atc Document 87 Filed 01/20/26 Page 5 of 9 PageID 671

*Kirlkand v. City of Maryville*, No. 3:19-cv-312-DCLC-hbg, 2020 WL 12863656, at *2 (E.D. Tenn. Aug. 17, 2020)). In assessing whether the party has done so, "courts consider the amount of money at stake in the case, the financial means of the distant party, the complexity of the issues involved, and whether the issues will turn on the deponent's credibility." *Id.* (quoting *Loyless v. Oliveira*, No. 1:09-cv-239, 2011 WL 13308425, at *3 (E.D. Tenn. June 24, 2011)). If the court finds the moving party's reasons legitimate, "the burden shifts to the 'opposing party to show how [it] would be prejudiced.'" *Id.* (quoting *Kirlkand*, 2020 WL 12863656, at *2).

In support of their Motion, Plaintiffs rely primarily on *Kirlkand* and *Mosley*. In *Kirlkand*, the plaintiff requested that her deposition be conducted via video conference due to the COVID-19 pandemic. 2020 WL 12863656, at *1–3. The court found that the significant health risks posed by COVID-19 in August 2020 were a legitimate reason to take the deposition by remote means. *Id.* at *2–3 (citation omitted). Upon the burden then shifting to the defendant, the court found the defendant's proffered prejudice—the lessened ability to assess the plaintiff's credibility over video versus in person—insufficient to overcome the COVID-19 risks and granted the motion for video-conference deposition. *Id.* at *2–3 (collecting cases discussing the availability of virtual depositions in the context of COVID-19). Considering that *Kirlkand* is confined nearly entirely to the context of the COVID-19 pandemic, it provides little guidance to the Court here, as Plaintiffs have not raised health concerns as a "legitimate reason" to overcome the presumption in favor of in-person, in-forum depositions.[6]

---

[6] Plaintiffs also briefly cite to, but do not otherwise discuss, *Learning Resources, Inc. v. Playgo Toys Enterprises.*, 335 F.R.D. 536 (N.D. Ill. June 16, 2020), and *Lundquist v. First National Insurance Company of America*, No. 18-cv-5301-RJB, 2020 WL 3266225 (W.D. Wash. June 17, 2020). Like *Kirland*, both *Learning Resources* and *Lundquist* are essentially confined to the context of the COVID-19 pandemic and are of limited usefulness to the analysis herein.

*Mosley* also involved a plaintiff's request that his deposition take place over video conference—not due to COVID-19, but because an in-person deposition would be "burdensome and quite expensive" and because the deposition was set for less than two weeks in the future. 2023 WL 3791393, at *2. The court found the plaintiff's reasons—the "significant" amount in controversy (between $500,000 and $750,000 "against a single defendant")[7], the estimated costs of the trip, the "critical" impact to the plaintiff of losing a week of income, the lack of complexity of the issues (legal malpractice), and credibility undisputedly not being an issue—sufficiently legitimate to shift the burden to the defendant to demonstrate prejudice. *Id.* at *2–3. And because the defendant identified no prejudice whatsoever, arguing only that "Plaintiff is not a third-party witness, but the party with the burden of proof," the court granted the plaintiff's motion for a deposition via video conference. *Id.* at *3.

Here, Plaintiffs similarly assert that good cause exists to depart from the general rule because they "are more than a thousand miles away from Tennessee" and "[t]raveling to Memphis would impose significant travel costs on Plaintiffs, including airfare, hotel accommodations, meals and lost wages"; the amount in controversy (approximately $200,000) is not significant; the legal issues in this case are not complex; and their "[c]redibility is not at issue." (ECF No. 74, at 3–4.)

As to financial burden, Plaintiffs provide no indication of any undue expenses they may face beyond "[t]he ordinary inconvenience of travel" incident to bringing a case in a foreign jurisdiction. *James*, 2025 WL 2945597, at *2 (holding that a barebones assertion of financial hardship is, standing alone, insufficient to overcome the presumption that the plaintiffs must

---

[7] Plaintiffs argue that *Mosley* stands for the proposition that $500,000 is a "threshold" that must be reached before an amount in controversy might be "significant." (ECF No. 74, at 3–4.) *Mosley* does not, however, create any such bright-line rule.

appear in the forum for a deposition). Plaintiffs do not even distinguish between themselves with respect to their respective financial circumstances; such a blanket, collective assertion does not demonstrate a legitimate reason for a protective order. *See Chrysler*, 737 F. Supp. 3d at 618–19 ("[T]he fact that depositions by remote means may be an economical and appropriate tool in some instances, at least where the parties agree on the means, or where extraordinary circumstances such as the medical infirmity of a deponent make an in-person examination unreasonably risky, does not mean that good cause has been shown to compel the taking of depositions by remote means across the board for all plaintiffs, based merely on the routine inconvenience and expense that is incident to participation in litigation by any party who chooses to file suit in a forum distant from their residence."); *Steele v. Norfolk S. Ry. Co.*, No. 18-cv-13946, 2019 WL 13109924, at *3 (E.D. Mich. Dec. 5, 2019) (holding that the plaintiff's assertions about the significant costs and burdens of travel to the forum, having to take three days off of work, and having a six-month old baby at home were insufficient to demonstrate a "clearly defined and serious injury" that might justify an exception to the general rule concerning in-person, in-forum depositions) (citations omitted).[8]

As to the amount in controversy, Plaintiffs' assertion of "approximately $200,000" is inaccurate. As Defendants point out (ECF No. 78, at 5–6), Plaintiffs also seek attorneys' fees, punitive damages, and any other relief that might be proven at trial (ECF No. 43, at 7). The

---

[8] Plaintiffs briefly assert, without further argument, that they were "forced to sue here because their property was being wrongfully held here." (ECF No. 74, at 2.) Though it may be true that the Western District of Tennessee is the only proper forum for this case, they have chosen to avail themselves of this Court and "should be expected to be required to return . . . periodically in order to prosecute [their] case." *Shah v. Fortive Corp.*, No. 1:22-cv-312, 2025 WL 2687755, at *2 (S.D. Ohio Sept. 19, 2025) (denying a motion for a remote deposition protective order, even though the plaintiff lived in Singapore and had "little choice but to file suit in this district").

potential recovery could thus very well be in excess of $500,000. Though any award of damages may ultimately be borne by multiple Defendants, the value of this case is not insignificant.

As to the complexity of the issue involved, this case, though arising from a single motor-vehicle accident, involves multiple plaintiffs, multiple defendants, third-party claims, counter claims, a defaulted defendant, and potential compensatory damages involving hundreds of items of personal property. This case is certainly more complex than the single-plaintiff-single-defendant legal malpractice case presented in *Mosley*.

Finally, as to credibility, Plaintiffs are incorrect that their credibility is not at issue. As Defendants forcefully argue, "[a]lthough the credibility dispute does not primarily concern the underlying liability question, it is central to Plaintiffs' claimed damages":

> Plaintiffs are the only sources of the valuations for the personal property they allege was destroyed in the underlying motor vehicle accident—including family heirlooms, war memorabilia, photographs, and other sentimental items that only they can identify and describe to the jury. Their credibility, therefore, directly bears on both the legitimacy of their asserted losses and the accuracy of their claimed valuations.

(ECF No. 78, at 5.)[9]

In summary, Plaintiffs have failed to sufficiently identify legitimate reasons for conducting their depositions remotely. They assert only nonspecific financial hardship, the value of the case is not insignificant, the case is fairly complex, and the credibility of Plaintiffs is

---

[9] Plaintiffs counter that credibility should be irrelevant to the analysis, as "courts have flatly rejected the ability to 'observe in-person Plaintiff's demeanor and responses' as a legitimate need for assessing witness credibility." (ECF No. 74, at 4 (quoting *Kirlkand*, 2020 WL 12863656, at *3).) Other courts, however, have indeed rejected requests for remote depositions where the assessment of a witness's credibility is particularly relevant, as a remote deposition may limit a party's "ability to evaluate [certain] critical, potentially dispositive factual questions." *James*, 2025 WL 2945597, at *3; *see also United States v. M/Y Amadea*, No. 23 Civ. 9304 (DEH), 2024 WL 4799887, at *5 (S.D.N.Y. Nov. 15, 2024) (acknowledging that "[t]aking depositions via remote means has become much more common in recent years," but ordering an in-person deposition for a "key witness" whose "credibility is therefore a matter of critical importance").

central. As such, Plaintiffs have not shown good cause for a protective order, and their Motion is DENIED. Plaintiffs shall attend in-person depositions in Memphis, Tennessee, which shall take place by July 18, 2026.

All other discovery-related deadlines in the Second Amended Scheduling Order (ECF No. 71) have expired. Though Defendants included a request to amend certain of those deadlines in their Response to the Motion (ECF No. 78, at 6–7), such a request is not before the undersigned, and Defendants give no indication whether Plaintiffs consent to or oppose the requested deadline extensions. More importantly, "[t]he Court will not entertain this request here, and counsel . . . is reminded that 'it is not proper to include a separate request for relief in a response' to a motion." *Hunt v. Allstate Indem. Co.*, No. 3:24-cv-01067, 2025 WL 4302399, at *1 n.1 (M.D. Tenn. Nov. 21, 2025) (quoting *Cox v. Erie Ins. Exch.*, No. 1:18-CV-01196-JDB-jay, 2019 WL 3021218, at *1 n.1 (W.D. Tenn. July 10, 2019)). To the extent some or all of the parties seek relief from the expired deadlines in the Second Amended Scheduling Order, they must file a separate motion after consultation.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Protective Order (ECF No. 73) is DENIED.

SO ORDERED this 18th day of June, 2026.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE